William B. Crow, OSB No. 610180
bcrow@schwabe.com
SCHWABE, WILLIAMSON & WYATT
Suites 1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204-3795
Telephone:  (503) 222-9981
Facsimile:  (503) 796-2900


     Attorneys for Defendant Payless ShoeSource, Inc.

William A. Rudy (Admitted pro hac vice)
wrudy@lathropgage.com
(Additional attorneys listed at signature)
LATHROP & GAGE L.C.
2345 Grand Blvd., Suite 2800
Kansas City, Missouri 64108-2612
Telephone:  (816) 292-2000
Facsimile:  (816) 292-2001


     Of Counsel for Defendant Payless ShoeSource, Inc.


## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON


| | |
|---|---|
| ADIDAS AMERICA, INC., and ADIDAS-SALOMON AG, | No. CV01-1655 KI (Lead Case) Related Case  CV03-1116 KI |
|     Plaintiffs, | **LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR** |
|   v. | |
| PAYLESS SHOESOURCE, INC., | [Memorandum 1 of 3] |
|     Defendant. | By Defendant Payless ShoeSource, Inc. |

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................. 1

II.   DISCUSSION ...................................................................................... 5

    A.    The Court May Set Aside or Reduce the Jury's Damages Award Because it is Erroneous and Contrary to the Clear Weight of the Evidence. ........................ 5

    B.    The Jury's Award of $30 Million as a "Reasonable Royalty" is Contrary to law, Speculative and Arbitrary ........................................................................... 6

        1.    The Reasonable Royalty Award Fails Because it "Double Counts" Damages in Favor of adidas. ................................................................ 8

        2.    The Reasonable Royalty Award Fails Under These Circumstances. ......... 9

        3.    The Court Should Set Aside the Jury's Reasonable Royalty Award Because it Exceeds Payless' Profit Margin and Therefore Fails as a Matter of Law. ...................................................................................... 11

    C.    The Court Should Set Aside the Jury's $137 Million Profits Award ................... 13

        1.    The Jury was Required to Find "Willful Infringement" by Clear and Convincing Evidence ................................................................................ 13

        2.    The Jury's Profits Disgorgement Award Violates the Lanham Act's Requirement That Relief be Compensation to adidas, and not a Penalty to Payless. ........................................................................................ 14

        3.    The Method for Calculating Payless' Profits  Offered by adidas' Expert to the Jury was Erroneous. ......................................................... 18

    D.    The Court Should Vacate or Remit the Jury's Award of Punitive Damages. ...... 21

        1.    The Jury's Punitive Damages Award Is Unconstitutional – And Must Therefore Be Set Aside – Under The U.S. Supreme Court's Opinion in *State Farm* And Its Progeny. ................................................ 21

        2.    In the Alternative, the Punitive-Damages Award Must Be Reduced Because It Is Grossly Excessive, Which Likewise Violates Applicable Due-Process Principles ......................................................... 27

    E.    The Jury's $305 Million Verdict is Fundamentally Inequitable. ......................... 30

III.  CONCLUSION .................................................................................... 31

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

TABLE OF AUTHORITIES

Cases                                                                                      Page

*A&H Sportswear, Inc.* v. *Victoria's Secret Stores, Inc.*,
    166 F.3d 197 (3d Cir. 1999) .................................................................. 9

*Accord Nuttin v. RAM Southwest, Inc.*,
    69 Fed. Appx. 454 (Fed. Cir. 2003) ................................................... 3

*ALPO Petfoods, Inc.* v. *Ralston Purina Co.*,
    913 F.2d 958 (D.C. Cir. 1990) ................................................. 15, 16

*Alsides v. Brown Inst. Ltd.*,
    592 N.W.2d 468 (Minn. Ct. App. 1999) ................................... 23

*Balance Dynamics Corp. v. Schmitt Indus.*,
    204 F.3d 683 (6th Cir. 2000) ................................................. 15, 16

*Bell* v. *Clackamas County*,
    341 F.3d 858 (9th Cir. 2003) ..................................................... 5

*Belleville v. Davis*,
    262 Or. 387 P.2d 744 (1972) ................................................. 25

*Blissett v. Eisensmidt*,
    940 F. Supp. 449 (N.D.N.Y. 1996) ......................................... 29

*BMW of North America, Inc. v. Gore*,
    517 U.S. 559, 575 (1996) ....................................................... 27

*Champion Spark Plug Co. v. Sanders*,
    331 U.S. 125 (1947) ............................................................. 14

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990) ............................................................. 15

*Collegenet, Inc. v. XAP Corp.*,
    483 F. Supp. 2d at 1065 ........................................................ 15

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
    532 U.S. 424 (2003) ............................................................. 27

*Distinctive Printing and Packaging Co. v. Cox*,
    443 N.W.2d 566, 574 (Neb. 1989). ....................................... 23

*Faberge Inc. v. Saxony Product, Inc.*,
    605 F.2d 426 (9th Cir. 1979) ................................................. 14

*Fedders Corp. v. Elite Classics,*
    279 F.Supp.2d 965 (S.D. Ill. 2003) ............................................................................... 23

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
    386 U.S. 714 (1967) ........................................................................................................ 15

*Gilbrook* v. *City of Westminster,*
    177 F.3d 839 (9th Cir. 1999) .......................................................................................... 5

*Go Medical Industries Pty., Ltd. v. Inmed Corp.,*
    471 F.3d at 1274 (Fed. Cir. 2006) ........................................................................... 13, 26

*Goddard v. Farmers Ins. Co.,*
    179 P.3d 645 (Or. 2007) ........................................................................................22, 23, 24

*Greisz v. Household Bank,*
    8 F.Supp.2d 1031 (N.D. Ill. 1998) ............................................................................... 23

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    889 F.2d 197 n.1 (9th Cir. 1989) ............................................................................ 22, 26

*Hopkins v. Dow Corning Corp.,*
    33 F.3d 1116 (9th Cir. 1994), ......................................................................................... 5

*Hughes Tool Co. v. Dresser Indus., Inc.,*
    816 F.2d 1549 (Fed. Cir. 1987 ................................................................................ 11, 12

*J.S. McCarthy Co., Inc. v. Brausse Diecutting & Converting Equipment, Inc.,*
    340 F.Supp.2d 54 (D. Me. 2004) ................................................................................. 23

*Juicy Couture, Inc.* v. *L'Oreal USA,* Inc.,
    2006 WL 1359955 (S.D.N.Y. May 18, 2006) ................................................................ 9

*Julian-Ocamp*o v. *Air Ambulance Network, Inc.,*
    No. 00-1262, 2001 WL 34039480 at *1 (D. Or. Dec. 13, 2001)...................................... 6

*Karahalios v. Nat'l Fed'n of Fed. Employees,*
    489 U.S. 527 (1989).........................................................................................................17

*Lindemann Maschinenfabrik v. American Hoist & Derrick Co,*
    895 F.2d 1403 (Fed. Cir.1990) ..................................................................................... 11

*Lindy Pen Co.* v. *Bic Pen Corp.,*
    982 F.2d 1400 (9th Cir. 1993) ...................................................6, 7, 9, 13, 14, 15, 16, 18

*M2 Software, Inc.* v. *Viacom Inc.,*
    223 Fed. Appx. 653 (9th Cir. 2007)...................................................................... 7, 9, 13

*Maier Brewing Co.* v. *Fleischmann Distilling Corp.*,
    390 F.2d 121 (9th Cir. 1968)..................................................................14, 16, 17

*Micro Chemical, Inc. v. Lextron, Inc.*,
    161 F. Supp.2d 1187 (D. Colo. 2001) ........................................................ 11

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993) ............................................................ 29

*Mitchell v. Griffin TV, L.L.C.*,
    60 P.3d 1058 (Okla. App. 2002)................................................................ 25

*Moore-Davis Motors, Inc. v. Joyner*,
    556 S.E.2d 137 (Ga. App. 2001) ............................................................... 23

*Murray* v. *Laborers Union, Local No. 324*,
    55 F.3d 1490 (9th Cir. 1994)....................................................................... 5

*Nintendo of Am. Inc. v. Dragon Pacific Int'l*,
    40 F.3d 107 (9th Cir. 1994).......................................................................... 3

*Northwest Airlines, Inc. v. Transport Workers Union of Am.*,
    451 U.S. 77 (1981)..................................................................................... 17

*PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    417 F.2d 659 (9th Cir. 1969)...................................................................... 13

*Rite-Hite Corp. v. Kelly Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) .............................................................. 11, 12

*Sands, Taylor & Wood* v. *Quaker Oats Co.*,
    978 F.2d 947 & n.19 (7th Cir. 1994) ................................................... 7, 9, 14

*Seasons Coal Co. v. Cleveland*,
    10 Ohio St. 3d 77 (Ohio 1984) ................................................................. 25

*Shimko* v. *Guenther*,
    505 F.3d 987 (9th Cir. 2007)....................................................................... 5

*Silver Sage* Ptrs. v. Cit*y of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001)....................................................................... 5

*Sky Fun 1, Inc. v. Schuttloffel*,
    8 P.3d 570 (Colo. App. 2000)................................................................... 23

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)............................................................6, 17, 30

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
  538 U.S. 408 (2003)................................................................22, 23, 24, 27, 29

*Stephenson v. Capano Development, Inc.,*
  462 A.2d 1069 (Del. 1983)...............................................................25

*Symantec Corp.* v. *CD Micro Inc.,*
  286 F. Supp. 2d 1278 (D. Or. 2003) ....................................... 15, 30

*Texas Indus. v. Radcliff Materials, Inc.,*
  451 U.S. 630, 645-46 (1981) ................................................ 17

*Trovan, Ltd.* v. *Pfizer, Inc.,*
  2000 WL 709149 (C.D. Cal. May 24, 2000).........................7, 10, 14

*U.S.* v. *Kellington,*
  217 F.3d 1084 (9th Cir. 2000) ......................................... 5

*Watec Co., Ltd. v. Liu,*
  403 F.3d 645 (9th Cir. 2005) ....................................... 5

<u>Statutes & Other Authorities</u>

15 U.S.C.A. § 1117(a) .........................................................3, 10, 15, 17

23 Ok. Stat. Ann. § 9.1 (2008) ......................................... 24

35 U.S.C. § 284 ............................................................. 10

Ga. Code Ann. § 10-1-373 (1994)........................................ 23

Haw. Rev. Stat. §§ 481A-4 (1993).......................................... 23

Lanham Act § 35(a) ......................................................... 15

McCarthy on Trademarks and Unfair Competition § 30:85 (4th ed. 2006).................... 7, 9

Me. Rev. Stat. Ann. tit. 10 § 1213 (1996)................................. 23

Minn. Stat. Ann. § 325D.45 (1995)........................................ 23

Neb. Rev. Stat. § 87-303 (1995)........................................... 23

Ohio Rev. Code § 2315.21................................................. 25

Defendant Payless Shoesource, Inc. ("Payless") respectfully moves, pursuant to Federal Rules of Civil Procedure 50 and 59, for judgment as a matter of law, a new trial, and/or remittitur. For the Court's convenience and to clarify the issues, Payless has separated its arguments into three supporting Memoranda (not exceeding the aggregate page limit for the three motions), organized by topic.

This first Memorandum addresses the various grounds that make it appropriate, if not mandatory, for the Court to vacate or reduce the $305 million damages award because it is unsupportable, unwarranted, and excessive as a matter of law and equity. It also explains why the $137 million punitive-damages award is unconstitutional. The second Memorandum explains that the entire damages award cannot stand because adidas failed to prove the fact of damage, which is required for a trademark plaintiff to recover monetary damages, rather than purely injunctive relief. In the third Memorandum, Payless addresses failures in adidas' proof of liability and willfulness, and explains why these issues require the Court either to enter judgment in Payless' favor or to order a new trial

## I.    INTRODUCTION

The $305 million jury verdict in this case should not stand because it is confiscatory and punitive. It bears no relationship to either any actual injury suffered by adidas or the actual profits that Payless earned from its sale of shoes found to be infringing, which were $19.7 million – less than 1/15[th] of the amount of the verdict. Even without the $137 million punitive damages component, the award of $167 million for Payless' sales of approximately 30 million pairs of shoes totals more than all of the profits Payless earned in during 2006, when it sold 177 million pairs of shoes. (Sickler, Tr. at 1606:7-1606:8), attached to the concurrently filed Declaration of John Shaeffer as Exhibit 1. This amounts to almost six times the average per-

shoe profit actually earned by Payless.  When the additional $137 million of punitive damages awarded by the jury is included, the resulting award – which amounts almost to half of Payless' market capitalization – is one of the largest jury awards ever rendered in this Court and perhaps the largest jury award ever in a trademark case

The actual damages award contains numerous flaws, which stem in large measure from the fact that adidas did not even attempt to quantify any actual damages caused by Payless' conduct.  adidas instead utilized a hypothetical "reasonable royalty"[1] calculation as a surrogate measure of its actual damage, but then presented a royalty calculation that *exceeded* Payless' expected profits from the shoe sales that adidas' expert supposedly relied on in calculating the royalty.  To address this failing adidas' expert testified that Payless would have raised the price of these shoes, but offered no opinion on the impact this increase would have had on the revenues subject to the royalty, leaving the jury to guess the amount of royalty to award.  The resulting reasonable royalty theory is contrary to applicable case law, rests on conjecture, speculation and guesswork, and cannot properly support the jury's $30 million award of "actual damages."

The jury's award of $137 million in disgorgement of profits on adidas' unjust enrichment theory is also flawed as a matter of law and inappropriate as a matter of equity.  Because the jury did not find willfulness by clear and convincing evidence, adidas is not entitled to disgorgement of Payless' profits at all.  While the jury was instructed regarding the clear-and-convincing-

---

[1] Many courts find that a hypothetical royalty – *i.e.*, a royalty that does not reflect a license that the parties would in fact have entered into or a measure of compensation from an existing license – is not an available damages remedy in a trademark or trade dress case.  We are aware of only one case that has permitted such an award and it is distinguishable.  The hypothetical "reasonable royalty" is a construct imported from patent law, under a statute that provides a different way of measuring damages and does not permit disgorgement under any circumstances.  *See* 35 U.S.C. § 284.

evidence standard with respect to punitive damages, it was not instructed concerning willfulness in its disgorgement instruction. There is nothing in the record to show or suggest that the jury found that adidas proved by clear and convincing evidence that Payless willfully intended to cause confusion. The Court also excluded from the jury's consideration of willfulness the fact that for more than three years Payless was selling the shoes found to be infringing pursuant to an order from this District Court permitting it to do so – a fact that if it does not preclude willfulness for that period as a matter of law certainly must have materially affected any assessment of it.

In addition, adidas admits that it did not request disgorgement as a form of compensatory damages, but to prevent "unjust enrichment." While deterrence can be part of a remedy, Congress expressly limits awards under the Lanham Act to those that are compensatory, and courts have no authority to expand those remedies to permit a pure deterrence award. *See* 15 U.S.C. § 1117. The jury apparently adopted adidas' various flawed theories of recovery because it was swayed by adidas' theory of copying and rushed to punish Payless. For example, even though the jury was instructed otherwise, the verdict demonstrates that the jury not only accepted adidas' retained expert Jay Sickler's "Alternative A" theory of Payless' profits in full, but also added a $30.5 million reasonable royalty, which is by definition a portion of any profits. This constitutes an impermissible double recovery.[2] Furthermore, although adidas' expert witness as to a reasonable royalty admitted that he had overstated his royalty calculation, the jury did not

---

[2] *See Nintendo of Am. Inc. v. Dragon Pacific Int'l*, 40 F.3d 107, 1010 (9th Cir. 1994) ("The recovery of both plaintiff's lost profits *and* disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."). *Accord Nuttin v. RAM Southwest, Inc.*, 69 Fed. Appx. 454 (Fed. Cir. 2003) ("There is significant authority for the proposition that the plaintiff's lost profits and the defendant's profits are ***mutually exclusive categories of recovery*** for trademark infringement, and that a plaintiff must choose between one or the other.") (collecting cases) (emphasis added)).

adjust its finding to address this error.  And, although the jury found no infringement with respect to at least one accused shoe lot, it did not exclude that lot from its damage calculation.

Finally*,* the punitive award also cannot stand because the award is contrary to governing federal and state law, violates constitutional principles of federalism and due process and is unsupported by the weight of the evidence introduced at trial.  Punitive damages are not under any circumstances available on adidas' federal claims, but only on certain of its state law claims. adidas only asserted state claims under the laws of Oregon and a few other states, not all of which even permit punitive damages or allow them under the same standards.  The United States Supreme Court has made clear that under fundamental principles of federalism, the laws of one state cannot properly be applied extraterritorially so as to punish a defendant for its actions in other states.  adidas did not offer evidence that would have enabled the jury to determine the extent of Payless' infringing conduct in the specific states under whose laws adidas brought claims that might permit punitive damages, but only throughout the United States as a whole. Accordingly, the jury's $137 million punitive damages award is unconstitutional and must be set aside because it is based on Payless' sales of infringing shoes in all fifty states.

This unprecedented $305 million verdict comes in a case where adidas did not offer evidence that it had suffered any quantifiable harm to its brand or mark but only evidence that its brand has increased significantly in value during the relevant period; where adidas acknowledged that it had no evidence that it lost a single sale as a result of Payless' conduct; where adidas offered no evidence of any actual consumer confusion but only of a likelihood of confusion and did not even claim any confusion in consumer purchasing decisions; where for much of the period Payless sold the shoes found to be infringing in accordance with an Order of the Court authorizing it to do so; and where the damages awarded are disproportionate to *any* financial

measure the Court may choose to employ as a reference.  The Court should exercise its power to ensure that any final judgment is equitable by vacating the jury's verdict and entering judgment notwithstanding the verdict to award no damages to adidas.  In the alternative, the Court should either remit the award to an amount no greater than $19.7 million or remand for a new trial on damages.

## II.    DISCUSSION

### A.    The Court May Set Aside or Reduce the Jury's Damages Award Because it is Erroneous and Contrary to the Clear Weight of the Evidence.

Judgment as a matter of law for Payless is warranted "if there is no legally sufficient basis for a reasonable jury to find in favor of [adidas]." *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003).  A jury award must be supported by "substantial evidence," which "is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).  Because the jury's damages verdict in this case is not supported by substantial evidence, Payless' motion for judgment as a matter of law should be granted.  *See Murray v. Laborers Union, Local No. 324,* 55 F.3d 1490, 1495 (9th Cir. 1994).

After the jury has returned a monetary award, courts are required to "determine whether the jury's verdict is within the confines set by . . . law."  *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1126 (9th Cir. 1994), cert. denied, 513 U.S. 1082 (1995).

Even where a verdict is supported by substantial evidence, the Court may grant a new trial where the verdict is "contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Shimko v. Guenther,* 505 F.3d 987, 993 (9th Cir. 2007); *see also Silver Sage Ptrs. v. City of Desert Hot Springs*, 251 F.3d 814, 819

5

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

(9th Cir. 2001). In making this determination, the court may weigh the evidence and evaluate the credibility of witnesses. *See U.S. v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000).

Remittitur is appropriate where a jury's verdict is excessive. *See Watec Co., Ltd. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005) (remittitur appropriate in trademark infringement case where damages award not supported by the evidence). "If the court concludes that a damages award is excessive, it may either grant the defendant's motion for a new trial, or deny the motion, conditioned upon the prevailing party's acceptance of a remittitur." *Julian-Ocampo v. Air Ambulance Network, Inc.*, No. 00-1262, 2001 WL 34039480 at *1 (D. Or. Dec. 13, 2001).

The Lanham Act requires the Court ensure that the award comports both with principles of equity and that any monetary recovery be compensatory, not a penalty. 15 U.S.C. § 1117(a) ("The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . Such sum in either of the above circumstances shall constitute compensation and not a penalty."). Thus, the Court has even more discretion than in an ordinary remittitur motion, as its decision on the proper award should be informed by "principles of equity" in order to reach a "just," non-punitive result. *Id.*; *see also Southland Sod Farms*, 108 F.3d 1134, 1146 (9th Cir 1997). *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (refusing to award profits because it "would amount to a punishment in violation of the Lanham Act which mandates that a remedy 'shall constitute compensation not a penalty.'").

**B.    The Jury's Award of $30 Million as a "Reasonable Royalty" is Contrary to law, Speculative and Arbitrary.**

Rather than offer evidence of an amount of any actual damages, adidas relied instead upon the surrogate measure of a hypothetical "reasonable royalty." (Trial, Tr. at 102:3-22, Ex. 1) In support of the calculation of this royalty, adidas offered the expert testimony of David Drews. The $30.6 million component of the verdict which represents the "reasonable royalty" proposed

by Mr. Drews, as a proxy measure for harm actually suffered by adidas, fails in at least two ways.

First, coupled with the jury's disgorgement award, it "double counts" damages in a manner contrary to the Court's instructions.

Second, a "reasonable royalty" is unavailable as a matter of law where, as here, the plaintiff cannot prove any actual confusion, lost sales, or a prior history of licensing between the parties. *See Lindy Pen Co.*, 982 F.2d at 1410-11 (requiring proof of actual confusion or diverted sales to permit recovery of defendant's profit as surrogate measure of actual damages); *Trovan Ltd. v. Pfizer*, No. 98-0094, 2000 WL 709149 (C.D. Cal. May 24, 2000) (rejecting reasonable royalty as measure of damages in trademark case where no evidence that licensor intended to license trademark); *see also Sands, Taylor & Wood v. Quaker Oats Co.*, 978 F.2d 947, 963 & n.19 (7th Cir. 1994) ("*Quaker Oats I*") (only case to allow award of hypothetical royalty in order to *limit* damages award based upon defendant's profits that the court viewed as "a windfall to plaintiff"); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:85 (4th ed. 2006) (hypothetical royalty is disfavored remedy, only available where court can use prior licensing history as basis for award).

Third, the award cannot stand because it far exceeds Payless' profit margin for these shoes and required the jury to speculate on the amount Payless might have raised the price of its shoes in order to avoid losing money. The Ninth Circuit holds that damages under the Lanham Act may not be based upon conjecture, speculation or guesswork. *See, e.g.*, *M2 Software, Inc. v. Viacom Inc.*, 223 Fed. Appx. 653, 655 (9th Cir. 2007); *Lindy Pen*, 982 F.2d at 1407.

7

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

1.      **The Reasonable Royalty Award Fails Because it "Double Counts" Damages in Favor of adidas.**

As its sole measure of "actual damages," adidas may not collect a "reasonable royalty" *in addition to* disgorgement of Payless' profits.  To allow it to do so would be a clear double recovery – a point admitted by Mr. Sickler under cross-examination.  (Sickler, Tr. at 1626:14-20, Ex. 1.)  The Court instructed the jury not to duplicate its damages awards based on Payless' supposed profits.  *See* Instruction No. 46 ("You may not include in any award of profits any amount that you took into account in determining actual damages.") [Dkt. No. 860].

Yet this is what happened.  As part of its verdict on damages, the jury adopted Mr. Sickler's "Alternative A" as its measure of profits Payless made from its sales of the accused shoes ($137,003,578) (*see* Sicker, Tr. at 1579:13-16, Ex. 1) *in addition to* the hypothetical "reasonable royalty" proposed by Mr. Drews ($30.61 million).  In other words, the verdict awards adidas *all* of the profits the jury found to be derived from Payless' sales of the challenged shoes *plus* a reasonable royalty on top of that.  Thus, the verdict gives adidas every dollar the jury found Payless made plus a royalty – an unacceptable double counting of damages.

In error, the jury believed that this was acceptable based upon Mr. Sickler's testimony that adidas would receive a double recovery only if it:

> is awarded the entire $209 million that I've testified to in this case. If they are awarded something different – you know, a different amount of profits that we've calculated under our two scenarios [alternatives A/B], or something different than that, then there is an opportunity for the profits to be awarded *and for a reasonable royalty to be awarded*.

(Sickler, Tr. at 1628:10-17, Ex. 1) (emphasis added).  This is not correct.  After finding infringement, the jury was instructed to determine Payless' profits on its sale of the accused shoes.  (*See* Instruction No. 46 [Dkt. No. 860]; Verdict, at 5 (Question 10) [Dkt. No. 861].)  It determined that amount to be $137,003,578.  (Verdict, at 5 [Dkt. No. 861].)  As Payless' profit

8

subject to disgorgement to adidas, based upon Mr. Sickler's own testimony concerning "alternative A," this represented the jury's determination of Payless' statutory profits from its sales of the accused shoes.  (Sickler, Tr. at 1579:8-16, Ex. 1 ("[F]or all alleged infringing lots, the profits that are determined in this case, under alternative A, are now $137,003,578 dollars.")) In order for the two verdict components to be non-cumulative, the jury would have had to find that Payless' total profits were $167.61 million – a figure nowhere in the record.

## 2.    The Reasonable Royalty Award Fails Under These Circumstances.

A "reasonable royalty" has never been held to be a proper measure of trademark damages by any federal court in the Ninth Circuit.  *See M2 Software, Inc.*, 223 Fed. Appx. at 654-55. While authorized by statute in patent cases, when a "reasonable royalty" is available in a trademark case, it is only available as a measure of damages in atypical circumstances.  *See, e.g.*, *Quaker Oats I*, 978 F.2d at 963-65; MCCARTHY §§ 30:85-87.  This is not such a case because there was no evidence that adidas would have granted a license to Payless, and no evidence, therefore, that adidas in fact lost any licensing revenue.

To use defendant's profits as a surrogate measure for "actual damages" in this Circuit, a plaintiff must at least prove actual confusion, a diverted sale, or some prior apposite licensing history.  *See Lindy Pen Co.*, 982 F.2d at 1410-11 (allowing use of defendant's profits as proxy for plaintiff's actual damages).  "[W]hen the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated."  *See Juicy Couture, Inc. v. L'Oreal USA*, Inc., 2006 WL 1359955 (S.D.N.Y. May 18, 2006) (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3d Cir. 1999)) (Cote, J.).  "[I]n the

absence of a legitimate proposed basis on which to calculate a royalty, awarding a reasonable royalty would be impermissibly speculative". *M2 Software, Inc.*, 223 Fed. Appx. at 655.

In this respect the Lanham Act is different than the Patent Act, which by statute authorizes a plaintiff to recover a "reasonable royalty" as adequate compensation for infringement irrespective of the plaintiff's actual licensing practices. *Compare* 15 U.S.C. § 1117(a) *with* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but *in no event less than a reasonable royalty* for the use made of the invention by the infringer . . ." (emphasis added)). By further contrast, the Patent Act – unlike the Lanham Act – does not permit an award of the infringer's profits under any circumstances.

In seven years of litigation, adidas has never cited a single case indicating that a hypothetical "reasonable royalty" is an appropriate proxy for actual damages in a trademark case such as this one – *e.g.*, where adidas has no evidence of any sales lost to Payless; concedes there is no evidence of actual purchasing confusion between its shoes and Payless' shoes; concedes there is no prior licensing history between the parties; and admits it would have *refused* to license its THREE STRIPE MARK to Payless, even if Payless had sought to do so. *See, e.g.*, *Trovan, Ltd*. v. *Pfizer, Inc.*, 2000 WL 709149 (C.D. Cal. May 24, 2000) (rejecting hypothetical royalty because the "Ninth Circuit does not recognize reasonable royalties as a measure of damages where there is no evidence that a party intended to license their trademark"). The record shows that adidas did not offer any evidence at trial of actual market confusion or diverted or lost sales, (*see, e.g.*, Ford, Tr. at 1105:14-17; Joachimsthaler, Tr. at 556:5-7, 558:12-15; Pham, Tr. at 1378:14-23, Ex. 1), and adidas' own witnesses testified that adidas would not have offered Payless a non-exclusive license. (Drews, Tr. at 1467:12-14, Ex. 1.).

Given the evidence offered at trial by adidas – and, to be precise, the evidence *not* offered

at trial by adidas – there is no legal basis upon which to award adidas a hypothetical "reasonable

royalty" as a proper measure of its unproved actual damages.

> **3.    The Court Should Set Aside the Jury's Reasonable Royalty Award
> Because it Exceeds Payless' Profit Margin and Therefore Fails as a
> Matter of Law.**

Federal courts recognize – and common sense confirms – that a reasonable and rational

business would not agree to a royalty rate that exceeds the profit margin that it anticipates on the

relevant product.  *See Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549, 1558 (Fed. Cir.

1987) ("[A] reasonable royalty must be fixed so as to leave the infringer a reasonable profit");

*Lindemann Maschinenfabrik v. American Hoist & Derrick Co*, 895 F.2d 1403, 1408 (Fed.

Cir.1990) (finding it "absurd" that a licensee would negotiate a license for more than anticipated

profits); *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1577 (Fed. Cir. 1995); *Micro Chemical, Inc.*

*v. Lextron, Inc.*, 161 F. Supp.2d 1187, 1209 (D. Colo. 2001) ("[N]o reasonable person would

enter into a license in which they had agreed to pay more than their expected profit.").

Confronted with an article in which he himself had articulated that same assertion, Drews

similarly acknowledged this basic principle.  Drews, Tr. (at 1439:16-1443:8, Ex. 1).

The trial record shows that, during the relevant time period, Payless' profit margin on

sales of all shoes was 5 percent, and its actual profit margin on the 30 million pairs of accused

shoes that it sold was about 5.8 percent.  (Sickler, Tr. at 1605:2-13; Epperson, Tr. at 2864:22-

2865:7, Ex. 1); *see also Rite-Hite Corp. v. Kelly Co.*, 56 F.3d at 1577 (recognizing that actual

profit margin is indicative of anticipated profit margin).  Ignoring this undisputed evidence, Mr.

Drews nevertheless opined that a hypothetical negotiation between adidas and Payless prior to

any infringement would have resulted in Payless paying a royalty rate of 7.8 percent for a non-

exclusive license, *plus* an $11 million sourcing fee.  (Trial, Tr. at 1396:1-9; 1467:12-14, Ex. 1).
The jury, although it rejected Mr. Drews' contention regarding the sourcing fee, accepted his
calculation of a "reasonable royalty" rate, and awarded adidas $30.6 million based on Payless'
sales revenues of $393 million.  *See* Verdict, at 5 [Dkt. No. 861].

      The Court should set this result aside because it is contrary to controlling legal principles.
The royalty rate of 7.8 percent adopted by the jury would have *exceeded* Payless' anticipated
profits for the accused shoe lots, as reflected in Payless' actual profit margin at the time of about
5 percent.  (Sickler, Tr. at 1605:2-13, Ex. 1.)  "It is simply beyond reality to infer that
management" at Payless "would have negotiated a royalty which, it was evident at the time,
would destroy their business."  *Rite-Hite Corp*, 56 F.3d at 1577.  A "reasonable royalty" that
exceeds anticipated profits is not reasonable at all, but is "ipso facto" arbitrary.  *See Hughes Tool
Co.*, 816 F.2d at 1558.

      Faced with evidence that his hypothetical license agreement would have created a
money-losing situation, Mr. Drews argued that adidas would have required Payless to increase
the price of its two-striped and four-striped shoes, and that Payless would have agreed to do so.
(Drews, Tr. at 1443:9-1444:22, Ex. 1.)  This conjecture has no evidentiary foundation in the trial
record.  Moreover, Mr. Drews acknowledged that any price increase would have affected both
the number of shoes sold by Payless and its resulting revenues.  (Drews, Tr. at 1443:14-1445:20,
1444:23-1445:3, Ex. 1.)  He did not analyze, and had no facts from which to determine, how
much Payless' prices might have increased, or what impact such increases might have had on its
sales and revenues.  (Drews, Tr. at 1444:3-1445:20, Ex. 1.)  Drews had no idea what the numbers
would have been, assuming his assumptions were accepted.  (Drews, Tr. at 1444:23-25, Ex. 1.)
Thus, his testimony regarding the amount of royalties that adidas would have earned had the

12

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON
ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

parties agreed to a royalty rate of 7.8 percent was purely speculative, and left the jury with no

evidentiary basis for adopting the $30.6 million royalty figure that Drews advanced.

Under these circumstances, the jury's award cannot stand. *See Lindy Pen*, 982 F.2d at

1408 ("Many courts have denied a monetary award in infringement cases when damages are

remote and speculative."); *M2 Software*, 223 Fed. Appx. at 655 ("In the absence of a legitimate

proposed basis on which to calculate a royalty, awarding a reasonable royalty would be

impermissibly speculative"); *Go Medical*, 471 F.3d 1264, 1274 (Fed. Cir. 2006) (rejecting

trademark rate as "arbitrarily pulled out of thin air"); *PSG Co. v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.*, 417 F.2d 659, 663 (9th Cir. 1969) ("Damages cannot be based on speculation or

guesswork.") (citations omitted).

C.     **The Court Should Set Aside the Jury's $137 Million Profits Award.**

1.     **The Jury was Required to Find "Willful Infringement" by Clear and**
       **Convincing Evidence.**

To award disgorgement of profits for unjust enrichment a jury must find that

infringement was willful. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (jury

required to find willful trademark infringement before awarding infringer's profits where holder

did not seek profits as a measure of his own lost sales); *Collegenet, Inc. v. XAP Corp.*, 483 F.

Supp. 2d at 1065 (to obtain recovery of profits under equitable theories such as unjust

enrichment, "the plaintiff must establish the defendant engaged in 'willful misconduct'").

Federal law is equally clear that a finding of willfulness must be supported by clear and

convincing evidence. *See Collegenet*, 483 F. Supp. 2d at 1065 ("A finding of willful misconduct

under the Lanham Act must be supported by clear and convincing evidence.").

Over Payless' objection, the jury was instructed that, "[i]n order for adidas to be entitled

to recover Payless' profits from the sales of the infringing shoes, adidas has the burden of

13

proving by *a preponderance of the evidence* that Payless acted willfully or in bad faith."
Instruction No. 44 (emphasis added) [Dkt. No. 860]; (Trial, Tr. at 3251:7-9, Ex. 1); Def.'s Br.
Regarding Availability of and Standard for Punitive Damages [Dkt. No. 850]. The instruction
did not state – as it must – that such a finding of willfulness must be supported by clear and
convincing evidence. The omission of that critical requirement is prejudicial error and requires
setting aside the unjust enrichment award.

The jury's award of punitive damages does not cure this error. The jury instruction
regarding punitive damages did not include an instruction regarding "willfulness" because the
Court expressly understood willfulness to require a different finding than for punitive damages.
Accordingly, there is no basis for concluding that the jury found that adidas proved willfulness
by clear and convincing evidence. Without making such a finding, the jury could not properly
have awarded adidas any of Payless' profits. *Adray*, 76 F.3d at 988 (jury required to find willful
trademark infringement before awarding infringer's profits). For this reason, the Court must set
aside the unjust enrichment award.

> **2.    The Jury's Profits Disgorgement Award Violates the Lanham Act's
> Requirement That Relief be Compensation to adidas, and not a
> Penalty to Payless.**

The jury's award violates the Lanham Act's express limitation that any award under the
statute, whether for recovery of defendant's profits or for damages actually suffered by plaintiff,
must be compensatory and cannot be a penalty.[3] The Act requires that "[s]uch sum in either of

---

[3]  As the Court is aware disgorgement, in particular, is an equitable remedy within the
Court's purview. *See Lindy Pen Co., Inc.*, 982 F.2d at 1405-09; *see also Trovan, Ltd.* v. *Pfizer,
Inc.*, 2000 WL 709149 (C.D. Cal. May 24, 2000) (plaintiff's election to seek unjust enrichment
"take[s] the matter away from the jury and into the hands of the Court" (citing *Sands v. Taylor*,
978 F.2d 947, 963 (7th Cir. 1992)). In the trademark context, an award of profits for any reason
*other than as a measure of plaintiff's actual damage* is subject to the rules of equity and is
therefore a decision for the Court. *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131

14

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON
ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

the above circumstances shall constitute compensation and not a penalty." Lanham Act § 35(a),

15 U.S.C.A. § 1117(a); *Lindy Pen*, 982 F.2d at 1407 (refusing to award profits because it "would

amount to a punishment in violation of the Lanham Act which mandates that a remedy 'shall

constitute compensation not a penalty'"); *ALPO Petfoods, Inc.* v. *Ralston Purina Co.*, 913 F.2d

958, 969 (D.C. Cir. 1990) (damages under Lanham Act must be linked to defendant's conduct

"lest the award become speculative or violate section 35(a)'s prohibition against punishment");

*Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 694 (6th Cir. 2000) (plaintiff denied

defendant's profits based upon Act's prohibition of awarding a penalty).

adidas admitted that it sought Payless' profits only to deter Payless' unjust enrichment,

and not as a form of compensatory damages.  (Trial, Tr. at 102:3-22, Ex. 1); *see also* Pl.'s Mem.

Opp. Def.'s Rule 50 Motion, at 15 [Dkt. No. 839].  adidas further acknowledged that the only

means for it to recover profits under an unjust enrichment theory was through its Lanham Act

claims.  Because the Lanham Act defines the outer limits on the Court's authority to award

monetary relief, *see, e.g.*, *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 721

(1967) ("Congress intended § 35 of the Lanham Act to mark the boundaries of the power to

award monetary relief in cases arising under the Act."), any award of Payless' profits must be

compensatory and non-punitive.  *Collegenet, Inc. v. XAP Corp.*, 483 F. Supp. 2d at 1065.

---

(1947) (equity does not necessitate profit disgorgement upon a finding of infringement); *Faberge Inc. v. Saxony Product, Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) ("The award of profits under the statute is made 'subject to the principles of equity.'  Section 1117 'confers a wide scope of discretion upon the district judge in the fashioning of a remedy.'" (quoting *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1969)); *see also Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) ("[W]e have characterized damages as equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits.'").  This Court has so held.  *Symantec Corp.* v. *CD Micro Inc.*, 286 F. Supp. 2d 1278, 1280 (D. Or. 2003).

Where the proposed disgorgement of profits does not derive from evidence of actual harm to the plaintiff, the award amounts to a penalty only, which the Lanham Act prohibits. *See Collegenet, Inc. v. XAP Corp.*, 483 F. Supp. 2d at 1065. In *Collegenet*, plaintiff sought disgorgement of defendant's profits based on defendant's willful misconduct. *Id.* at 1064. The court, however, found that plaintiff could not prove that the amount of its lost profits was the same as the amount of defendant's profits. *Id.* at 1068. Accordingly, the court refused to award defendant's profits to plaintiff, concluding that "a disgorgement of XAP's profits would constitute a prohibitive penalty against XAP rather than appropriate compensation to CollegeNET." *Id.* The same is true here – even more so. adidas did not claim or introduce evidence that it lost any sales to Payless or any sales at all as a result of the infringement.

Finally, while it is true that the Lanham Act is designed to make infringement unprofitable and that an award of profits may serve as a deterrent, any unjust enrichment award remains limited by the statute, and the court must ensure that the award is compensatory in nature. *See, e.g., Maier Brewing Co.* v. *Fleischmann Distilling Corp.*, 390 F.2d at 121; *see also Lindy Pen Co.* v. *Bic Pen Corp.*, 982 F.2d at 1407 (refusing to award profits because it "would amount to a punishment in violation of the Lanham Act which mandates that a remedy 'shall constitute compensation not a penalty'"); *ALPO Petfoods, Inc.* v. *Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) (damages under Lanham Act must be linked to defendant's conduct "lest the award become speculative or violate section 35(a)'s prohibition against punishment"); *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 694 (plaintiff denied defendant's profits based upon Act's prohibition of awarding a penalty). Although Payless does not dispute that the Lanham Act provides for disgorgement of profits based on an unjust enrichment theory as a remedy, the Act's own terms limit the breadth of this remedy.

16

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR

adidas may not circumvent this limitation by arguing that the Court has the "discretion to fashion relief, including monetary relief, based on the totality of the circumstances." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d at 1146. This discretion does not permit a court to ignore the Lanham Act's requirement that awards be compensatory to the plaintiff, and not a penalty against the defendant. *See Maier*, 390 F.2d at 120 (quoting 15 U.S.C.A. § 1117(a): "[s]uch sum in either of the above circumstances shall constitute compensation and not a penalty."). The Supreme Court has repeatedly recognized that courts are not free to fashion remedies beyond those permitted by a congressionally created statutory scheme. *Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 97 (1981) ("The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs"); *Texas Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 645-46 (1981) (court is not allowed to "fashion a new rule or to provide a new remedy which Congress has decided not to adopt"); *Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 533 (1989) ("[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate").

In light of the Lanham Act's clear prohibition of penal remedies, the jury's verdict in favor of disgorgement of Payless' profits is invalid. adidas did not claim that Payless' profits served as a proxy for its own damages, and admitted at trial that it sought Payless' profits to prevent Payless' "unjust enrichment" – *not* as a measure of its "actual damages." (Trial, Tr. at 102:3-22, Ex. 1; *see also* Apr. 22, 2008 Pls. Mem. in Opposition to Def. Rule 50 Motion, at 15 [Dkt. 839].) adidas introduced no evidence to quantify its claimed actual damages. There is thus no basis in the evidence to treat disgorgement of Payless' profits as reasonable compensation to adidas other than by speculation.

As explained in the next section, at trial it was *undisputed* that Payless' allegedly infringing lots of shoes accounted for only *1.7%* of Payless' sales revenue, and that Payless' profits from the sale of these shoes was only about $19.7 million using standard GAAP to measure profits. (Sickler, Tr. at 1563:3-6, 1603:22-1605:17, Ex. 1.) The jury, however, awarded adidas "profits" of more than $137 million – almost ***seven times that*** amount. The jury's award amounts to over 14 percent of Payless' company-wide profits for the *entire nine-year period*. (Epperson, Tr. at 2872:3-7, Ex. 1.) This large disparity between the jury's verdict and Payless' actual profits attributable to its sales of the accused shoes further demonstrates that the jury verdict is punitive rather than compensatory, and cannot stand as a matter of law. The verdict is, in addition to all else, an impermissible "windfall" to adidas. *See Lindy Pen*, 982 F.2d at 1405 ("When awarding profits, the court is cautioned that the 'Plaintiff is not . . . entitled to a windfall.'").

### 3. The Method for Calculating Payless' Profits Offered by adidas' Expert to the Jury was Erroneous.

The evidence in the trial record establishes that Payless' profits from its sale of the contested shoes totaled **$19.7 million** for the relevant nine-year period. (Sickler, Tr. at 1563:3-6, 1603:22-1605:17, Ex. 1.) This represents a profit of about $0.94 per pair of infringing shoes sold, on sales of around 30 million pairs. Nonetheless, adidas' expert, Jay Sickler, told the jury that Payless earned as much as $208 million in profits on its sale of the accused shoes – 10.5 times its actual profits, and about a *53% profit margin* on these shoe sales. (Sickler, Tr. at 1574:12-1575, Ex. 1.) Mr. Sickler based his testimony, however, on a legally incorrect standard of profit, and not on any dispute as to the underlying facts. In his testimony, Mr. Sickler acknowledged that, if he were to employ standard GAAP measures to account for Payless'

proven costs, Payless earned a profit of only $19.7 million from its sales of the accused shoes – a 5 percent profit margin.[4] (Sickler, Tr. at 1603:22-1605: 17, Ex. 1.)

Thus, the trial record does not support the jury's finding that Payless' profits exceeded $137 million. Because the jury was not permitted to ignore the proper measure of profit based upon the undisputed facts, its award of profits may not stand. To the extent that the Court determines that Payless acted with willfulness, and, in its discretion, concludes that disgorgement is appropriate, the Court should apply the *correct* standard for calculating profit, rather than excluding expenses that are relevant to Payless' allegedly infringing sales.

While incorrect as a matter of law – because it is improper to exclude undisputed elements of cost from a profit calculation – the jury's acceptance of Mr. Sickler's testimony also led to inequitable, punitive and nonsensical results. Even though the accused shoes accounted for only 1.7% of Payless' sales revenues (Sickler, Tr. at 1563:3-6, Ex. 1), in Mr. Sickler's analysis they somehow were responsible for over 21% of Payless' profits for nine years. (Epperson, Tr. at 2871:2-22, Ex. 1.) Likewise, his opinion that Payless earned as much as $208 million in profits on the sale of 30 million pairs of accused shoes cannot be squared with his acknowledgment that, in 2006, Payless earned only $166 million in profits on sales of 177 million pairs of shoes. (Sickler, Tr. at 1606:7-1607:8, Ex. 1.) While the undisputed factual record shows that Payless earns, on average, about $0.94 per pair of shoes sold, Mr. Sickler's testimony was that Payless should pay adidas disgorgement at the rate of $6.93 per pair.[5]

---

[4] Mr. Sickler also conceded that it is common under GAAP for companies to allocate costs across all revenues (*id.*), even though he did not do so for the jury in presenting his $208 and $137 million "alternatives."

[5] Mr. Sickler admitted that he was unaware of anything "special" about the accused shoes which could warrant their different treatment from other shoes sold by Payless. (Sickler, Tr. at 1604:14-1605:1, Ex. 1.)

Perhaps recognizing that his testimony was wrong as a matter of finance, accounting and common sense, Mr. Sickler testified that his opinion was based on a "very specific narrow section of law that deals with trademark" based upon two copyright cases provided to him by adidas' counsel.  (Sickler, Tr. at 1611:13-25, 1612:4-1613:7, Ex. 1.)  Yet Mr. Sickler concedes he is not an expert on the law, and the law does not authorize a punitive award that fails to account for costs that no one disputes Payless actually incurred.  Mr. Sickler offered another alternative method of determining Payless' profits that deducted certain additional other costs of good sold, which was the figure employed by the jury for both its disgorgement and punitive-damages awards.  (Sickler, Tr. at 1578:8-16; 1579:8-16; 1580:4-20; 1587:7-1588:8, Ex. 1.)  While somewhat less egregious than his $208 million figure, this "alternative" calculation still overstated Payless' supposed profit margin on the accused shoes – *36.8%*, or $137,003,578 of profits – by continuing to disregard undisputed costs that, according to GAAP, must be considered when determining profit.

Accepting this result as the jury did would mean that, even though the accused shoe sales amounted to only 1.7% of Payless' revenues over nine years, they contributed 14% to Payless' bottom-line – nearly *triple* the profit margin Payless earned on the sale of all its other products.  (Epperson, Tr. at 2872:3-7, Ex. 1.)  If this were true, it is hard to imagine Payless would have sold anything *other* than the accused shoes for nine years.

Because it is grounded in a false assessment of Payless' actual profits from its sale of the accused shoes, the Court should disregard the $137 million component of the verdict and remit the "profits that should be awarded to adidas" to an amount no greater than $19.7 million.  *See* Verdict at 5 (Question 10) [Dkt. No. 861].

20

**D.      The Court Should Vacate or Remit the Jury's Award of Punitive Damages.**

The jury in this case awarded more than $137 million in punitive damages based on Payless' sales of accused shoe lots in *all 50 states*, as well as in the District of Columbia and Puerto Rico.  With respect to those claims for which adidas sought punitive damages, however, the laws of *only five states* permit the award of punitive damages.  As the Supreme Court has made clear, the laws of one state cannot punish a defendant for its actions in another state.  Thus, the punitive-damages award in this case is limited in scope to Payless' actions in the five states whose laws are pertinent to adidas' request for punitive damages.

Given these circumstances, two decisions that adidas made at trial make it impossible for the Court to allow any portion of the punitive-damages award to remain intact.  First, adidas elected not to present the jury with any evidence regarding the amount of harm that resulted from Payless' conduct in any one of the five states whose laws would permit an award of punitive damages in the circumstances.  As a result, the jury had no way of determining whether, or in what amount, Payless' conduct in a given state could support an award of punitive damages.  Second, adidas did not request a verdict form that specified the amount of punitive damages awarded pursuant to each of those five states' laws.  As a result, the amount of punitive damages awarded with respect to Payless' conduct in any given state is a mystery.  Because the evidentiary record does not support any part of the jury's award of punitive damages, the award is invalid and must be vacated.

**1.      The Jury's Punitive Damages Award Is Unconstitutional – And Must Therefore Be Set Aside – Under The U.S. Supreme Court's Opinion in *State Farm* And Its Progeny.**

The Constitution and settled principles of federalism provide that a state's ability to punish misconduct ends at that state's borders.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538

U.S. 408, 421 (2003). "A State [does not] have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *Id.* A "basic principle of federalism is that . . . *each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction.*" *Id.* at 422 (emphasis added). Oregon's Supreme Court has expressly recognized this principle. *Goddard v. Farmers Ins. Co.*, 179 P.3d 645, 659 (Or. 2007) ("a state may not legitimately 'punish a defendant for unlawful acts committed outside of the State's jurisdiction'") (quoting *State Farm*, 538 U.S. at 421). Awards of punitive damages for extra-jurisdictional conduct are constitutional *only* by finding liability under the laws of the jurisdiction in which that conduct occurred. *State Farm*, 538 U.S. at 421-22 ("Any proper adjudication of conduct that occurred outside [the state] to other persons would require their inclusion, and, to those parties, the [state] courts, in the usual case, would need to apply the laws of their relevant jurisdiction.").

In order to properly apply this precedent to the jury's punitive-damage award, it is necessary to identify the legal support for that award. Because the Lanham Act does not provide for punitive damage awards, *see Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 200 n.1 (9th Cir. 1989) (punitive damages are not recoverable under the Lanham Act), adidas based its request for punitive damages solely on its two common-law claims for trademark and trade dress infringement (Claims Ten and Eleven) and its two unfair and deceptive trade practice claims (Claims Eight and Nine). (Trial, Tr. at 2936:12-2939:2, Ex. 1); Pretrial Order [Dkt. No. 754]). These claims arise under only a handful of state laws. The question, then, is whether these state laws can validate the jury's $137 million punitive-damages award. For reasons grounded in constitutional principles of federalism and due process, they cannot.

adidas' claims for common-law trademark and trade dress infringement are based solely on Oregon law.  *See* Jury Instruction No. 48 [Dkt. No. 860]; Trial Tr. (2936:16-2939:2, Ex. 1.). Because *State Farm* and *Goddard* make clear that Oregon's common law of trademark and trade dress infringement have no extraterritorial effect with regard to punitive damages, the jury's award of punitive damages under this law is limited to the extent to which adidas introduced evidence that Payless' infringing conduct occurred within Oregon.

adidas' state-law claims for unfair and deceptive trade practices, which are the only other claims under which adidas sought punitive damages, both adidas' Third Amended Complaint and the Pretrial Order show that adidas invoked only *thirteen* states' unfair and deceptive trade practice statutes:  Colorado, Delaware, Georgia, Hawaii, Illinois, Maine, Minnesota, Nebraska, New Mexico, New York, Oregon, Ohio, and Oklahoma.  *See* Pretrial Order, at 19-21 [Dkt. No. 754].  adidas then dropped its Oregon-law claim during trial, leaving only *twelve* states' statutes.

To make matters worse, half of those twelve states (Georgia, Hawaii, Illinois, Maine, Minnesota, and Nebraska) provide exclusively for injunctive relief and for *no damages whatsoever*, let alone punitive damages.[6]  And, adidas' claim under the Colorado law cannot support any portion of the punitive-damages awarded in this case because Colorado requires a plaintiff to prove its claims "beyond a reasonable doubt" before obtaining exemplary damages. *Sky Fun 1, Inc. v. Schuttloffel*, 8 P.3d 570, 576 (Colo. App. 2000), rev'd on other grounds, 27

---

[6] *See* Ga. Code Ann. § 10-1-373 (1994); *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 139-40 (Ga. App. 2001); Haw. Rev. Stat. §§ 481A-4 (1993); *Fedders Corp. v. Elite Classics*, 279 F.Supp.2d 965, 972 (S.D. Ill. 2003); *Greisz v. Household Bank*, 8 F.Supp.2d 1031, 1044 (N.D. Ill. 1998); Me. Rev. Stat. Ann. tit. 10 § 1213 (1996); *J.S. McCarthy Co., Inc. v. Brausse Diecutting & Converting Equipment, Inc.*, 340 F.Supp.2d 54, 61-62 (D. Me. 2004); Minn. Stat. Ann. § 325D.45 (1995); *Alsides v. Brown Inst. Ltd.*, 592 N.W.2d 468, 476 (Minn. Ct. App. 1999); Neb. Rev. Stat. § 87-303 (1995); *Distinctive Printing and Packaging Co. v. Cox*, 443 N.W.2d 566, 574 (Neb. 1989).

F.3d 361 (Colo. 2001).  The jury neither received instruction nor issued a verdict as to this standard of proof.  As such, the jury could not properly have awarded punitive damages based on Colorado law, which drops the number of states whose statutes could have supported an award of punitive damages to five.

These five remaining state statutes do not allow the jury to punish Payless for its conduct outside of their respective states, yet it is undeniable that the jury sought to do just that on the jury's award of Payless' profits from two- and four-striped shoes throughout the United States totaled $137,003,578.  The punitive damages award matched the profits award dollar for dollar, thus awarding punitive damages based on Payless' conduct throughout the United States.  Such an award is unconstitutional under *State Farm* and *Goddard* and must therefore be set aside.[7]

Even among these five remaining states, the jury's award is highly suspect.  Oklahoma, for example, has an elaborate system for determining punitive damages whereby, in order to recover more than $500,000 in such damages, a court must find on the record and out of the presence of the jury that there is evidence beyond a reasonable doubt that the defendant acted intentionally and with malice *and engaged in conduct life-threatening to humans*.  23 Ok. Stat. Ann. § 9.1 (2008) (emphasis added).  The evidence here obviously does not support the requisite finding.

Ohio also caps punitive damages.  Except where the defendant is found to have acted either "purposely" or "knowingly," as defined under Ohio law, punitive damages are limited to

---

[7] This award is similarly problematic because the jury's unjust enrichment award itself was punishing in nature.  While this $137 million award purports to disgorge the profits Payless earned on the sale of 30 million pairs of infringing shoes, this conclusion is belied by the fact that in 2006 Payless profits were only about $166 million on the sale of 177 million pairs of shoes.  The effect of the punitive damage award on top of the punishing unjust enrichment award amounts to an impermissible double punishment.  (Sickler, Tr. at 1606:7-1606:8, Ex. 1.)

an amount equal to two times the actual damages awarded. Ohio Rev. Code § 2315.21. Because the jury was not instructed as to the requisite mental states, any award of punitive damages authorized by Ohio's UDTP statute cannot more than double the amount of actual damages caused by Payless' conduct in Ohio.

Finally, even under the few state laws that remain, adidas cannot obtain punitive damages. As Oregon's courts have long recognized, "an award of punitive damages is not proper in the absence of proof that a plaintiff is entitled to an award of actual damages." *Belleville v. Davis*, 262 Or. 387, 405, 498 P.2d 744, 752 (1972); *cf. Seasons Coal Co. v. Cleveland*, 10 Ohio St. 3d 77, 82 (Ohio 1984) ("Exemplary or punitive damages may not be awarded in the absence of proof of actual damages."); *Mitchell v. Griffin TV, L.L.C.*, 60 P.3d 1058, 1067 (Okla. App. 2002); *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1077 (Del. 1983) ("award of punitive damages can not be made unless the plaintiff also receives compensatory damages"). In this case, the jury's awards of damages based on a hypothetical reasonable royalty and disgorgement of profits to prevent unjust enrichment do not constitute actual damages sufficient to justify an award of punitive damages.

adidas concedes that it did not seek profits as a measure of its actual damage. (Trial, Tr. at 102:3-22, Ex. 1.) In fact, in granting adidas' motion *in limine* on apportionment, the Court accepted adidas' position that it was not seeking profits as a measure of its damage, but rather as an award intended to deter wrongful conduct. (Trial, Tr. at 102:3-22, Ex. 1.) Thus, the award of profits cannot provide the necessary foundation for the jury's punitive-damages award.

The remainder of the jury's award is based on the jury's finding of what adidas would have earned under a hypothetical licensing agreement. Payless has moved the Court to vacate the reasonable royalty award as arbitrary or speculative. If the Court does so, then adidas will

25

clearly have no measure of actual damage that could support an award of punitive damages. *See Go Medical Industries Pty., Ltd. v. Inmed Corp.*, 471 F.3d at 1274 (appropriate for trial court to reduce royalty amount to zero because calculation was arbitrary).

Even if the reasonable royalty award survives post-trial review, however, that award cannot support an award of punitive damages. *In Go Medical Industries*, the court distinguished the loss of actual royalty revenue, which is evidence of actual damage, from a royalty award based on a hypothetical negotiation, which is merely a measure of damage and therefore does *not* constitute actual damage. 471 F.3d at 1274 (royalty award subject to downward equitable adjustment because it is not actual damage but a measure). Similarly here, adidas is not arguing that it lost any actual royalty payments. As in *Go Medical*, the hypothetical royalty is a stand-in for adidas' damages, not evidence of that adidas actually suffered harm.

Although in certain circumstances the Ninth Circuit permits a plaintiff to employ surrogate measures to prove the amount of its damages (*see Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d at 209), it has never allowed an award of punitive damages in a trademark case in which the only actual-damages award was based on a reasonable royalty. *See Go Medical Industries Pty., Ltd. v. Inmed Corp.*, 471 F.3d at 1274 (royalty award subject to downward equitable adjustment because it is not actual damage but a measure). Nor has Oregon or any of the other states whose laws might otherwise permit an award of punitive damages in the circumstances.

The jury's punitive-damages award is unconstitutional. adidas' right to punitive damages under its common-law infringement claims is limited to acts of infringement occuring in Oregon. Adidas' unfair and deceptive trade practice claims provide a right to punitive damages for conduct in those five states whose statutes permit awards of punitive damages. adidas did not

present any evidence to support a punitive damages award on a state-by-state basis, let alone in the small number of states that might allow such damages in this case.  For these reasons, the record in this case cannot sustain an award of punitive damages to adidas, and the Court must vacate the award entirely.

    **2.**        **In the Alternative, the Punitive-Damages Award Must Be Reduced Because It Is Grossly Excessive, Which Likewise Violates Applicable Due-Process Principles.**

In determining whether a punitive-damages award comports with Constitutional due-process principles, the Supreme Court has held that such awards must be reasonably proportional to the gravity of the defendant's offenses.  In order to determine proportionality, courts must examine whether the defendant's conduct rises to a level of reprehensibility that necessitates an additional measure of damages as punishment or deterrence, as well as "the relationship between the penalty and the harm to the victim caused by the defendant's actions."  *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 435 (2003).  In *State Farm*, the Court similarly stated that "punitive damages should only be awarded if the defendant's culpability, *after having paid compensatory damages*, is so reprehensible as to warrant the imposition of further sanctions *to achieve punishment or deterrence*."  *State Farm Mut. Aut. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (emphases added).[8]

Applying these principles to this case, it is clear that the jury's $137 million punitive-damages award is excessive and must therefore be reduced substantially.  For example, although adidas did not establish any actual harm from Payless' actions, the jury awarded punitive

---

[8] In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996), the Supreme Court likewise laid out three guideposts for courts to consider when reviewing Constitutional challenges to punitive-damages awards:  (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

damages totaling $137 million.  The resulting ratio between punitive and actual damages is therefore infinite, thus running afoul of the Supreme Court's holding in *State Farm* that, "[w]here compensatory damages are sustained," a one-to-one ratio between compensatory and punitive damages would, in most cases, "reach the outermost limit of the due process guarantee." 538 U.S. at 425-26 (stating that compensatory damages of $1 million were "substantial").

Even if adidas had established – and the jury had awarded – actual damages, the jury's award is more than sufficient to preclude an additional award of punitive damages.  The jury awarded $30 million based upon a hypothetical royalty for allegedly infringing sales and $137 million for "unjust enrichment."  Such an enormous award, exclusive of punitive damages, would send a clear warning against future wrongdoing to any defendant.  In these circumstances, it is difficult to see the need for an additional $137 million in deterrence.

Moreover, in assessing the constitutionality of the jury's punitive-damages award, the $30 million award of actual damages is the wrong comparator.  At most, the jury could validly have awarded punitive damages for the harm to adidas due to Payless' activities in Delaware, New Mexico, New York, Ohio, and Oklahoma.  Thus, it is only the actual damages, if any, attributable to Payless' activities in these states that the Court must use as the numerator to the $137 million punitive-damages denominator.  The trial record does not contain any evidence that would permit the Court to calculate the relevant ratio in any non-speculative fashion.[9]

---

[9] Although speculative, even a cursory, "back-of-the-napkin" analysis shows that $137 in punitive damages is wildly disproportionate to the actual damages that might have occurred in the five relevant states.  For example, if the punitive damages were apportioned equally among the five states ($27.4 million per state), approximately 25% of the actual damages that the jury awarded ($7 million) would have had to occur in a single state before the ratio of compensatory damages to punitive damages dropped to even 4-to-1.

The evidentiary record does not show the degree of reprehensibility that is prerequisite to such an extreme punishment. First, the harm to adidas was economic, not physical, and nothing in Payless' conduct "evinced an indifference to or a reckless disregard of the health or safety of others." *See State Farm*, 538 U.S. at 419. Far from being financially vulnerable, adidas presented evidence to show that it is a major force in the footwear and apparel industries. Second, there is no evidence in the record of this case that the harm was "the result of intentional malice, trickery, or deceit." *Id.* at 419. Payless produced the shoes at issue in reliance on its legal counsel's interpretation of a 1994 settlement agreement between the two parties and therefore had a colorable basis for believing that its actions were permissible. Earlier in this litigation, both a federal Magistrate Judge and District Judge agreed with Payless' interpretation of the settlement agreement. This fact – which never went to the jury – demonstrates that Payless' challenged actions were neither willful nor malicious violations of adidas' rights. The record does not support a finding that Payless' conduct was so reprehensible that an *additional* $137 million penalty is necessary.

The high proportion of the punitive-damages award to Payless' overall net worth is yet another marker that the award is excessive. If not vacated or reduced, it threatens Payless' future financial viability, which alone is ground for remittitur. An award of punitive damages "should not be in an amount that would result in the financial ruin of the defendant." *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 240-41 (S.D.N.Y. 1993). "Nor should it constitute a disproportionately large percentage of a defendant's net worth." *Id.*; *see also Blissett v. Eisensmidt*, 940 F. Supp. 449 (N.D.N.Y. 1996) (same).

### E.    The Jury's $305 Million Verdict is Fundamentally Inequitable.

Because of the punitive impact of the jury's damages verdict, it is appropriate for the Court to employ "the preferred approach" under Ninth Circuit trademark law and to "fashion relief, including monetary relief, based on the totality of the circumstances." *Southland Sod Farms*, 108 F.3d at 1146; *see also Symantec Corp.* v. *CD Micro Inc.*, 286 F. Supp. 2d 1278, 1280 (D. Or. 2003) (noting that "[t]he statute grants [the Court] the discretion to consider the equities and circumstances of the case").

The Court should use its inherent equitable power to do what is right and reduce the jury's disproportionate damages verdict.  At least nine different equitable considerations support a reduction of the verdict on remittitur:

- This is not a case in which the adidas demonstrated any quantifiable damages, and further acknowledged that it has no proof of any lost sales as a result of Payless' conduct.

- Payless acted in good faith for at least a substantial portion of the period of infringement. For over three of the years at issue, Payless operated under the auspices of a Court order – endorsed by a Magistrate and District Judge from this Court – finding that it had the legal right to sell these shoes.

- Given that two judges agreed with Payless' position before the Ninth Circuit disagreed, there is no justification for concluding that Payless acted willfully at any time prior to the Ninth Circuit's decision.

- Payless makes legal, low-cost products for low- and middle-income customers with restricted budgets.  An excessive award would chill both its ability and willingness to manufacture and sell affordable products for consumers who are unable to afford premium brands.

- The jury's $305 million verdict represents about half of Payless' current market capitalization of $643 million as of May 9, 2008.

- The $137 million disgorgement component of the verdict materially overstates Payless' profit:  $137 million is 20% of profit from *nine years* of shoe sales.  The actual profit Payless made on the accused shoes was $19.7 million.  The verdict thus overstates Payless' actual profit by $117.3 million.

- Because the jury compounded the excess disgorgement ($117.3 million) with punitive damages of $137 million, the "effective" punitive damages award is $254.3 million – almost *thirteen times* Payless' actual profits on sales of these shoes.

- Along with failing to prove that it suffered any injury whatsoever, let alone harm sufficient to warrant a potentially destabilizing verdict against Payless, during the period in question adidas' sales soared; its brand grew stronger; and the company thrived.

- The magnitude of this award is unprecedented and unwarranted by all of the facts taken as a whole.

## III.    CONCLUSION

For the foregoing reasons, Payless respectfully requests that the Court enter a judgment notwithstanding the verdict in the amount of zero.  Alternatively, Payless requests that the Court reduce the monetary award to $19.7 million, or, in the alternative, order a new trial. Additionally, Payless respectfully requests that the Court set aside the jury's award of punitive damages.  Alternatively, Payless requests that the Court reduce the punitive damage award so that it comports with constitutional due process principles as set forth above or, in the alternative, order a new trial.  Payless adopts and incorporates the arguments contained in its separate Fed. R. Civ. P. 59 motions for new trial on the issue of damages and remittitur filed simultaneously with the instant motion.

DATED: May 12, 2008                    SCHWABE, WILLIAMSON & WYATT

By ____/s/ William B. Crow_____
  William B. Crow, OSB No 610180
  Telephone:  (503) 222-9981

LATHROP & GAGE L.C.
  William A. Rudy (admitted pro hac vice)
  William R. Hansen (admitted pro hac vice)
  Phillip S. Lorenzo (admitted pro hac vice)
  Telephone: (816) 292-2000

Attorneys for Defendant Payless ShoeSource, Inc.

31

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2008, I caused to be served a copy of the foregoing

LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT

AS A MATTER OF LAW ON THE JURY'S DAMAGE on the following person(s) in the

manner indicated below at the following address(es):

Stephen M. Feldman; sfeldman@perkinscoie.com          Counsel for plaintiffs
Thomas R. Johnson; trjohnson@perkinscoie.com
Perkins Coie LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128

Jerre B. Swann; jswann@kilpatrickstockton.com          Of counsel for plaintiffs
William H. Brewster; bbrewster@kilpatrickstockton.com
R. Charles Henn, Jr.; chenn@kilpatrickstockton.com
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309

☒      by CM/ECF

☐      by Electronic Mail

☐      by Facsimile Transmission

☐      by First Class Mail

☐      by Hand Delivery\

☐      by Overnight Delivery


                        /s/ William B. Crow
                        An Attorney for Defendant

32