William B. Crow, OSB No. 610180
bcrow@schwabe.com
SCHWABE, WILLIAMSON & WYATT
Suites 1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204-3795
Telephone:  (503) 222-9981
Facsimile:  (503) 796-2900

      Attorneys for Defendant Payless ShoeSource, Inc.

William A. Rudy (Admitted *pro hac vice*)
wrudy@lathropgage.com
(Additional attorneys listed at signature)
LATHROP & GAGE L.C.
2345 Grand Blvd., Suite 2800
Kansas City, Missouri 64108-2612
Telephone:  (816) 292-2000
Facsimile:  (816) 292-2001

      Of Counsel for Defendant Payless ShoeSource, Inc.

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC., and<br>ADIDAS-SALOMON AG,<br><br>           Plaintiffs,<br><br>v.<br><br>PAYLESS SHOESOURCE, INC.,<br><br>           Defendant. | No. CV01-1655 KI (Lead Case)<br>Related Case  CV03-1116 KI<br><br>**LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL (i) DUE TO PLAINTIFF'S FAILURE TO PROVE THE FACT OF ACTUAL DAMAGE, AND (ii) ON THE ISSUE OF WILLFULNESS**<br><br>[Memorandum 2 of 3]<br><br>By Defendant Payless ShoeSource, Inc. |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    PAYLESS IS ENTITLED TO RELIEF ON DAMAGES AS A RESULT OF
       ADIDAS' FAILURE TO INTRODUCE SUFFICIENT EVIDENCE OF
       ACTUAL HARM .................................................................................................. 3

       A.     Standard ................................................................................................... 3

       B.     Payless is Entitled to Relief on adidas' Damage Claims Because the Jury's
              Finding That adidas was Damaged Has No Legally Sufficient Basis and is
              Against the Weight of the Evidence. .................................................... 4

              1.     adidas did not Prove the Fact of Damage .................................. 4

                     a.     Dr. Joachimsthaler's Testimony Does Not Support a Finding of the Fact of
                            Damage. ............................................................................ 7

                     b.     Dr. Pham's Testimony Does not Support a Finding of the Fact of Damage
                            to adidas. ........................................................................ 11

                     c.     adidas Offered No Other Evidence to Support a Finding of  the Fact of
                            Damage. ........................................................................... 13

                     d.     The Evidence Establishes That adidas' Brand has been Strengthened – not
                            Harmed – Over the Past Several Years, and adidas Offered No Evidence
                            to Quantify how much Payless' Conduct Caused its Brand to Diminish. . 13

                     e.     adidas Did Not Offer Evidence That the Value of its Brand Would Have
                            Grown at a Different Rate if Payless Had Not Sold the Accused Shoes. . 15

                     f.     adidas' Failure to Quantify the Harm to its Brand is Fatal to its Damages
                            Claim. .............................................................................. 17

                     g.     Drs. Pham and Joachimsthaler's Speculation Unduly Prejudiced Payless at
                            Trial. ................................................................................ 17

              2.     The Jury's Excessive Damages Award to adidas is Based  Upon
                     Speculation. ........................................................................... 18

       C.     The Court Should Overturn the Jury's Finding of Willfulness. .......................... 19

              1.     Payless Should Have Been Able to Inform the Jury That Two
                     Federal Judges Agreed that Payless did not Infringe. .............................. 19

i

2.      The Court's Prior Summary Judgment Rulings on the 1994
        Settlement Agreement Preclude as a Matter of Law a Finding of
        Willful Infringement During the Three Year Period When the
        Rulings Were in Effect.......................................................................... 24

3.      The Jury's Willfulness Finding Lacks A Legally Sufficient Basis
        and is Against the Weight of the Evidence as to Those Lots adidas
        did not Accuse of Imitating or Being Inspired by its Shoes.................... 25

III.    CONCLUSION.......................................................................................... 27

## TABLE OF AUTHORITIES

<u>Cases</u>

*Aktiebolaget Electrolux v. Armatron Intern., Inc.*,
    999 F.2d (1st Cir. 1993) ........................................................................ 4, 13

*Bell v. Clackamas County*,
    341 F.3d 858 (9th Cir. 2003) ....................................................................... 3

*Bigelow v. RKO Radio Pictures, Inc.*,
    327 U.S. 251 (1946) .................................................................................. 18

*Bosley Medical Institute, Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ....................................................................... 6

*Camel Hair and Cashmere Inst. v. Associated Dry Goods Corp.*,
    779 F.2d 6 (1st Cir 1986) ............................................................................ 4

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579 (1993) ............................................................................... 9, 17

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
    94 F.3d 376 (7th Cir. 1996) ........................................................................ 6

*Eckel Indus., Inc. v. Primary Bank*,
    26 F. Supp. 2d 313 (D.N.H. 1998) ............................................................... 4

*Gibson Guitar Corp. v. Paul Reed Smith Guitars*,
    LP, 423 F.3d 539 (6th Cir. 2005) ................................................................ 6

*Gilbrook v. City of Westminster*,
    177 F.3d 839 (9th Cir. 1999) ....................................................................... 3

*Gracie v. Gracie*,
    217 F.3d 1060 (9th Cir. 2000) ................................................................... 25

*Haddad v. Lockheed Cal. Corp.*,
    720 F.2d 1454 (9th Cir. 1983) ..................................................................... 4

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ............................................................... 5, 8, 13

*Invicta Plastics (USA) Ltd. v. Mego Corp.*,
    523 F. Supp. 619 (S.D.N.Y. 1981) .............................................................. 5

*Lang v. Ret. Living Publ'g Co., Inc.*,
    949 F.2d 576 (2d Cir.1991) ......................................................................... 6

*Libman Co. v. Vining Industries, Inc.*,
    69 F.3d 1360 (7th Cir. 1995) ........................................................................... 6

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ...........................................................4, 18, 25

*Maier Brewing Co. v. Fleischman Distilling Corp.*,
    390 F.2d 117 (9th Cir. 1968) ........................................................................ 25

*McClaran v. Plastic Industries, Inc.*,
    97 F.3d 361 (9th Cir. 1996) ...................................................................... 5, 18

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) .......................................................................... 4

*Montgomery Ward & Co. v. Duncan*,
    311 U.S. 243 (1940 ......................................................................................... 4

*Moseley v. V Secret Catalogue, Inc.*,
    537 U.S. 418 (2003) ........................................................................................ 7

*Murray v. Laborers Union, Local No. 324*,
    324, 55 F.3d 1490 (9th Cir. 1994) ............................................................... 18

*Pioneer Leimel Fabrics, Inc. v. Paul Rothman Industries*,
    25 U.S.P.C.2d at 1107 (E.D. Pa. 1992) ..................................................... 7, 12

*Sealy, Inc. v. Easy Living, Inc.*,
    743 F.2d 1378 (9th Cir. 1984) ...................................................................... 25

*Shimko v. Guenther*,
    505 F.3d 987 (9th Cir. 2007) .......................................................................... 3

*Trovan, Ltd. v. Pfizer, Inc.*,
    2000 WL 709149 (C.D. Cal. May 24, 2000) ................................................. 5

*U.S. v. 99.66 Acres of Land*,
    970 F.2d 651 (9th Cir. 1992) .......................................................................... 4

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*,
    906 F.2d 1202 (7th Cir.1990) ....................................................................... 13

*Zazu Designs v. L'Oreal, S.A.*,
    979 F.2d 499 (7th Cir. 1992) ........................................................................ 18

<u>Statutes</u>

Fed. R. Civ. P. 50 ............................................................................................... 1

## I.    INTRODUCTION

This is the second of three briefs being filed by Payless in support of its post-trial motions for Judgment as a Matter of Law ("JMOL"), a new trial and/or remittitur.  This Memorandum addresses the discrete issues of Payless' entitlement to judgment as a matter of law or a new trial, pursuant to Fed. R. Civ. P. 50(a) and (b) and 59 due to adidas' failure to prove the *fact* of actual harm and on the issue of willfulness.

As discussed elsewhere, the jury's staggering monetary award in this case – perhaps the largest trademark award in history – bears no relation to any harm suffered by adidas, dwarfs any profit earned by Payless, and threatens profound consequences for Payless' business and the discount retail industry generally.  The grounds addressed in this Memorandum contributed in large measure to the excessive and inequitable size of the jury's damages award.

The jury's award to adidas cannot stand, first, because adidas failed to introduce sufficient evidence to support a finding that it ever suffered *actual harm* from Payless' infringement.  By limiting its claims to those relating to confusion and dilution outside the point of sale context, adidas had to meet a higher threshold to prove that actual damage occurred because the likelihood that actual injury could occur is suspect at best.  adidas' proof at trial on this element was absent.  Proof of gain to Payless – *i.e.*, profits from selling the accused shoes – is not evidence of harm to adidas; indeed, adidas conceded it was not presenting evidence that it lost even one sale to Payless.  adidas introduced no evidence to show that one consumer ever refrained from purchasing an adidas shoe because of Payless, or formed a negative impression of adidas or its brand because of Payless' shoes.  adidas also offered no evidence that the value of its brand was diminished by even one penny by Payless' infringement.

To the contrary, adidas' evidence of harm was limited to the opinions of its two consumer psychology experts, Drs. Pham and Joachimsthaler, who spoke only generally to the *types* of harm that *could* flow from the likely confusion that another adidas expert, Dr. Ford, discussed based upon his certain studies. This was *not* competent evidence that adidas had, in fact, suffered any concrete harm to its brand, THREE STRIPE MARK or otherwise. Indeed, adidas' experts *acknowledged* that such studies could have been done to determine whether adidas had suffered any actual harm from the infringement or dilution, but adidas *did not do them*. Because of this critical failure of adidas' proof at trial, Payless is entitled to judgment as a matter of law.

The jury's finding of willfulness and the resulting monetary award should be vacated for three reasons (in addition to the instructional error on the burden for proving willfulness, addressed in Payless' Memorandum No. 1).

First, the jury was neither told nor instructed that for more than three years of the alleged infringement period for which the jury was asked to assess the reasonableness of Payless' conduct – October 2002 until January 2006 – Payless had a federal court order in its favor declaring that it had the legal right to sell the non-SUPERSTAR inspired shoes the jury later found to be infringing. The law *precludes* a finding of willfulness from October 2002 through January 2006 because Payless was doing nothing more than that what this Court's Order authorized. It was therefore error to allow the jury to consider and assess willfulness for the entire period of the alleged infringement. The jury's finding of willfulness and its monetary award are not specific as to time or conduct, and should be vacated.

Even if the issue of Payless' willfulness during the period of time the Court's summary judgment Order was in effect was properly before the jury, Payless was prejudiced because it could not inform the jury that it was acting reasonably and in good faith – pursuant to the Court

Order's terms – for a significant portion of the alleged infringing period. Two respected judges

of this Court previously determined that Payless was correct, and adidas could not bring any

claim for trademark and trade dress infringement against Payless as a matter of law, but Payless

could not inform the jury of this crucial fact. As a consequence, the jury concluded that Payless

earned ill-gotten profits for many years, as opposed to just two years, based upon its sale of two-

and four-stripe shoes. This merits post-trial relief as well.

## II.    PAYLESS IS ENTITLED TO RELIEF ON DAMAGES AS A RESULT OF ADIDAS' FAILURE TO INTRODUCE SUFFICIENT EVIDENCE OF ACTUAL HARM

### A.    Standard

Judgment as a matter of law for Payless is warranted "if there is no legally sufficient

basis for a reasonable jury to find in favor of [adidas]." *Bell* v. *Clackamas County*, 341 F.3d 858,

865 (9th Cir. 2003). A jury award must be supported by "substantial evidence," which "is such

relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it

is possible to draw two inconsistent conclusions from the evidence." *Gilbrook* v. *City of*

*Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). Because the jury's damages verdict in this case

is not supported by substantial evidence, Payless' motion for judgment as a matter of law should

be granted. *See Murray* v. *Laborers Union, Local No. 324,* 55 F.3d 1490, 1495 (9th Cir. 1994).

Federal Rule of Civil Procedure 59, moreover, empowers the Court to grant a new trial if

"the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious

evidence, or to prevent a miscarriage of justice." *Shimko v. Guenther*, 505 F.3d 987, 993 (9th

Cir. 2007). "Historically recognized grounds" supporting the grant of a new trial "include, but

are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages

are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v.*

*M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  A new trial is warranted on the basis of an incorrect evidentiary ruling "if the ruling substantially prejudiced a party."  *U.S. v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992), citing *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1457-59 (9th Cir. 1983).

> **B.**    **Payless is Entitled to Relief on adidas' Damage Claims Because the Jury's Finding That adidas was Damaged Has No Legally Sufficient Basis and is Against the Weight of the Evidence.**

Judgment as a matter of law or a new trial is warranted because the jury's verdict has no legally sufficient basis, is excessive and against the weight of the evidence.  Even though proof of the fact of damage is a prerequisite to any award of monetary damages, adidas never offered evidence at trial to establish that necessary precondition.

> **1.    adidas did not Prove the Fact of Damage.**

Tort law principles govern remedies in trademark infringement actions; consequently, like tort cases, damages "must be established with reasonable certainty."  *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993).  In trademark cases there is "a clear distinction between the showing required to establish a right to injunctive relief and that required to establish a right to damages."  *Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d at 5 (1st Cir. 1993); *see Eckel Indus., Inc. v. Primary Bank*, 26 F. Supp. 2d 313, 317 (D.N.H. 1998) ("To show actual harm, plaintiff must show both that the defendant's deceptive act created confusion and that the plaintiff's injury was caused by consumer reliance on the misleading act.") (quoting *Camel Hair and Cashmere Inst. v. Associated Dry Goods Corp.*, 779 F.2d 6, 12 (1st Cir 1986)).

The Ninth Circuit recognizes the distinction between the proof necessary to establish liability and the proof necessary to establish a right to damages. *Lindy Pen Co.,* 982 F. 2d at 1410. To obtain monetary relief in a trademark action, "a plaintiff must prove both the fact and the amount of damage." *Id.* The fact of actual damage to plaintiff must first be proven by the preponderance of the evidence; then, the amount of damages must be proven to a "reasonable certainty." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). The *fact* of damage *may not be proven* by mere reference to an *amount* of damages claimed.[1] *Trovan, Ltd*. v. *Pfizer, Inc.*, Case No. CV-98-00094 LGB MCX, 2000 WL 709149, *8 (C.D. Cal. May 24, 2000).

adidas has not come close to meeting the reasonable certainty threshold for establishing any economic injury caused by Payless' infringement. At trial, adidas offered nothing other than speculative expert opinion testimony on damage theories, based upon conjectured and unsubstantiated hypotheses. Accordingly, the Court should grant Payless relief because the jury verdict was not based upon any reasonable evidence of adidas' damages. *See, e.g.*, *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F. Supp. 619, 624 (S.D.N.Y. 1981) ("[D]amages will not be awarded in the absence of credible evidence demonstrating injury to plaintiff resulting from defendant's sales."); *see also McClaran v. Plastic Industries, Inc.*, 97 F.3d 361 (9th Cir. 1996).[2] By limiting its claims to confusion and dilution occurring in the initial-interest and post-sale context, adidas has increased its burden to demonstrate that it suffered any actual damage. A review of reported case law indicated few, if any, instances where a plaintiff proved a

---

[1]    Yet this is what the damages instruction proposed by adidas and delivered to the jury did: It allowed the jury to find the "fact of damage" by finding that the evidence supported the award of a "reasonable royalty."

[2]    In *McClaran,* the court vacated a monetary award in a trademark infringement action because the jury's award of compensatory damages was speculative and the plaintiff "did not show with reasonable certainty that he suffered any damages from [defendant's] infringement." *Id.*

compensable harm or that the defendant acted with willfulness in either the initial interest or post sale context. The reason is obvious. "The Lanham Act is concerned with customer confusion when choosing to purchase, or not purchase, the items, not public confusion at viewing them from afar." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996); *see also Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360, 1364 (7th Cir. 1995) ("Either consumers are confused at the point of sale, or they become confused later and this carries over to the next time they are in the market for the product."). This is why courts require the additional element of proof of impact upon a purchasing decision before liability may be found in any initial-interest or post-sale confusion case. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("[T]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally.") (quoting *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir.1991) (internal quotation marks and citation omitted) (emphasis added)); *Gibson Guitar Corp. v. Paul Reed Smith Guitars*, LP, 423 F.3d 539, 552-53 (6th Cir. 2005) (recognizing that consumers may be more likely to purchase the branded product if the infringing product is seen in the post-sale context).

adidas has not claimed damages in the form of lost sales. adidas did not introduce evidence that it had suffered even a single lost sale as a result of the existence of the alleged infringing shoes. (*See, e.g.*, Joachimsthaler, Tr. at 556:5-7, Attached as Shaeffer Dec. Ex. 1 to the Declaration of John Shaeffer at XXX.) Rather, adidas claimed only that its "brand," *i.e.*, its reputation and goodwill, was somehow injured by Payless' conduct. (*See* Jury Instr. No. 42, [Dkt. No. 860].) In support of this theory, it proffered testimony from two experts: Dr. Erich Joachimsthaler and Dr. Michele Pham, who each purported to testify regarding the alleged damage to adidas' brand that *might* result, in theory, from the sale of infringing shoes. (*See*

Pham, Tr. at 1273:22-24; Joachimsthaler, Tr. at 498:1-3, Shaeffer Dec. Ex. 1 at XX and XX.)
Neither witness, however, provided anything other than speculation with respect to any *actual*
damage to *adidas* in *this* case caused by *Payless*.

adidas could not recover money damages on its federal dilution claims for the further
related reason that it failed to prove *actual* dilution to its brand and/or THREE STRIPE MARK,
as opposed to likely dilution.  Under the actual dilution standard, "the mere fact that consumers
mentally associate the junior user's mark with a famous mark is *not sufficient* to establish
actionable dilution."  *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003) (emphasis
added).  adidas could not, as a matter of law, establish its entitlement to actual dilution damages
by suggesting through Drs. Pham and Joachimsthaler - as it did at trial - that consumers
"*mentally*" and "*subconsciously*" might associate two and four stripes with adidas' THREE
STRIPE MARK.  *Pioneer Leimel Fabrics, Inc. v. Paul Rothman Industries*, 25 U.S.P.Q.2d 1096,
1107 (E.D. Pa. 1992) ("[A] verdict may not be based on an expert's false assumptions or
theoretical speculations.").  Because Drs. Pham and Joachimsthaler provided nothing other than
theoretical speculation as to the *fact* of adidas' damage, their testimony may not form the proper
basis for a monetary dilution award.

        a.      Dr. Joachimsthaler's Testimony Does Not Support a Finding of the
Fact of Damage.

Dr. Joachimsthaler testified that he formed his opinion that the adidas brand had been
injured by relying ***exclusively*** on the likelihood of confusion studies performed by Dr. Ford.
(Joachimsthaler, Tr. at 557:2-7, Shaeffer Dec. Ex. 1).  He did not conduct any studies of his own,
talk to consumers or assess any other data whatsoever.  (*See, e.g., id.* at 555:10-19, 557:2-7,
558:16 – 559:2, Shaeffer Dec. Ex. 1.)  The only evidence that he relied on—Dr. Ford's
surveys—did not, by Dr. Ford's own unequivocal admission, address the issue of whether

Payless' conduct had caused any actual injury to adidas.  Dr. Ford testified that his surveys could *not* provide the jury with evidence that anyone (1) perceived the tested (two and four stripe) shoes to be of low quality, (2) would be more or less likely to purchase the test shoes after viewing them, or (3) thought less of three-striped shoes after having seen the two and four-stripe shoes.  (*See* Ford, Tr. at 1116:1 – 1117:4, Shaeffer Dec. Ex. 1.)  Yet Dr. Joachimsthaler somehow relied upon Dr. Ford's survey as the basis for his conclusory opinion that Payless' sales of its two and four stripe shoes harmed the adidas brand.

By relying **solely** on the purported existence of a likelihood of confusion (allegedly established by Dr. Ford's surveys), Dr. Joachimsthaler erroneously assumed that injury to adidas followed as a direct result of a likelihood of confusion.  This presumes too much.  Without even addressing the merits of Dr. Joachimsthaler's opinions, those opinions could not have provided the jury with a legally sufficient basis to conclude that Payless' actions caused the adidas brand to suffer any compensable injury.[3]

Turning to the substance of Dr. Joachimsthaler's opinions, his testimony further demonstrates the complete lack of evidence concerning the fact of any actual damage to adidas resulting from the purported likely confusion.  Dr. Joachimsthaler opined that damage may occur in four separate ways.  However, even though Dr. Joachimsthaler offered four bases for *possible* damage claims, he failed to identify exactly how adidas *in fact suffered damage* as a result of his

---

[3]        While some courts have held that proof of "actual" confusion by way of survey evidence may suffice to establish an entitlement to monetary damages, those cases are inapposite.  These few cases address either false advertising claims or point-of-sale confusion where, unlike post-sale or initial interest confusion, it is more likely as a matter of law and logic that the alleged confusion impacts a purchasing decision.  Here, Dr. Ford testified that his surveys neither assess nor address any such actual confusion or damage to adidas.  There is no factual basis in the record to presume otherwise.

In addition, the Ninth Circuit has held that "[i]n a suit for damages under section 43(a) . . . actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case."  *Harper House, Inc. v. Thomas  Nelson, Inc.*, 889 F.2d at  210 (emphasis added).

conjectural damage theories.  (Joachimsthaler, Tr. at 529:7 – 531:24, 533:5-8, 558:12-559:13, Shaeffer Dec. Ex. 1).

First, Dr. Joachimsthaler indicated that the accused shoes diluted the adidas brand because "there are shoes out there that simply are not adidas shoes, but wear the four stripes instead of the three stripes.  That dilutes – that just dilutes the awareness of the brand." (Joachimsthaler, Tr. at 529:17-21, Shaeffer Dec. Ex. 1.)  This opinion, not grounded in survey evidence or any other objective standard, represents the total of Dr. Joachimsthaler's first opinion on the issue of adidas' alleged damages.  He admits he did not participate in any conversations with consumers and conducted no assessment whatsoever of the value of the adidas brand – not even a rough assessment of any potential decrease in adidas brand awareness.

On this score, Dr. Joachimsthaler's own (unrebutted) prior testimony refutes any possible suggestion of brand awareness dilution.  *He testified that adidas has the strongest sports brand – even stronger than Nike*:  Referring to the Sporting Goods Business Research Report, he stated, "that study shows that the number one most widely recognized sports brand now, among 10- to 65-year olds, is adidas, *which is amazing.  Of course, Nike comes after us.*"  (*Id.* at 521:3-6 (emphasis added)); *see also id.* at 521:10-15, 522:6-21, Shaeffer Dec. Ex. 1); Pl. Ex. 496-C.  Any contradictory conclusory opinion testimony, therefore, lacks credibility in light of this objective evidence.

Second, Dr. Joachimsthaler offered similar hyperbole to support adidas' theory that customers could experience brand confusion:

> So by having Payless shoes that are confused, like being adidas shoes, who don't have the same performance, technology, and innovation associations, it just damages the brand.  This is so obvious.  *It just does* because – because those – those levels of quality and levels of performance, innovation are just not the same that adidas has produced.

(Joachimsthaler, Tr. at 530:10-16, Shaeffer Dec. Ex. 1) (emphasis added)[4].

Again, Dr. Joachimsthaler had no conversations with consumers, made no assessment of the associations consumers hold about Payless and made no reference to the "big consumer data" he so heavily relied upon in touting the strength of the adidas brand.  (*See id.* at 533:19-21, Shaeffer Dec. Ex. 1.)  Dr. Joachimsthaler conceded he is not aware of even a single instance where a consumer erroneously associated a Payless shoe with adidas, let alone transferred any associations about Payless to his or her associations of adidas.  (*Id.* at 559:8-13, Shaeffer Dec. Ex. 1.)

Third, Dr. Joachimsthaler testified that adidas may have suffered damage as a result of quality issues he associated with Payless shoes:

> The quality levels of Payless shoes, four stripes, are nowhere – nowhere near what adidas is trying to create as adidas in their repertoire.  That undermines the things.

(Joachimsthaler, Tr. at 530:19-22, Shaeffer Dec. Ex. 1.)

Yet Dr. Joachimsthaler offered nothing other than conjecture of a quality disparity between adidas' shoes and Payless' shoes, or what impact or effect this hypothetical disparity would actually have on the adidas brand.[5]  Dr. Ford's surveys, which formed the basis for Dr. Joachimsthaler's opinions, do not provide any evidence that consumers perceive Payless' shoes to have low quality.  adidas offered no evidence that consumers could perceive any quality

---

[4]    This type of "it just does" expert conclusion is the quintessential *ipse dixit* statement that is unhelpful and confusing to the jury under revised Federal Rules of Evidence 702 and 704 and the Supreme Court's interpretation of those Rules in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

[5]    Dr. Joachimsthaler performed no analysis of whether the Payless shoes were, in fact, of lower quality than adidas.  Dr. Ford performed no analysis of whether consumers perceived any quality difference between adidas' shoes and Payless' shoes.  The only witness who discussed the quality of the shoes was Teston, who *admitted* that none of the defects he found were perceptible in a post-sale environment. He further conceded that all of the defects he noted were so-called "B-Grade" defects, meaning they were so minor that they could be sold with "little or no damage to the adidas brand." (*See* Def. Tr. Shaeffer Dec. Ex. 2562.)

difference between its shoes and Payless' shoes in either a post-sale or initial interest context. (*See* Teston, Tr. at 1225:1-3, 1239:13-18, Shaeffer Dec. Ex. 1.)  And while Dr. Joachimsthaler testified that the ability to set "premium price points" is one measure of the perceived quality of a brand, he admitted he had no evidence that adidas either lost the ability to set premium price points, or that such ability was in any way impaired by Payless' sale of its shoes.  (*See* Joachimsthaler, Tr. at 555:10 – 556:4, Shaeffer Dec. Ex. 1.)

Finally, Dr. Joachimsthaler speculated that adidas may have been harmed by weakened "emotional bonds" between the customer and the shoe company:

> When there are brands out there that are not adidas brands, but they are confused as such, it undermines the bond and that relationship, that emotional connection on loyalty that people have with that particular brand.

(Joachimsthaler, Tr. at 531:20-24, Shaeffer Dec. Ex. 1).  This is groundless speculation.  Dr. Joachimsthaler had no conversations with consumers about their loyalties and made no assessment of adidas' repeat sales activity.  With respect to actual evidence on the issue of loyalty, Dr. Joachimsthaler admitted he was not aware of a loss of a single adidas sale or a loss of a single member of the adidas brand community as a result of Payless' sales of its shoes.  (*Id.* at 556:5-7, 558:12-15, Shaeffer Dec. Ex. 1.)  There is no evidence anywhere in the trial record that consumers' brand loyalty to adidas *actually* decreased.   Indeed, the undisputed evidence is that adidas' sales and brand value consistently *increased* without interruption during the *entire period* of alleged infringement.

> b.    Dr. Pham's Testimony Does not Support a Finding of the Fact of Damage to adidas.

adidas also elicited testimony from Dr. Pham.  Similar to Dr. Joachimsthaler, Dr. Pham offered platitudes with no demonstrable basis in objective reality.  Also like Dr. Joachimsthaler, Dr. Pham possessed no knowledge of any actual brand dilution, did not conduct any independent

tests or studies to assess the alleged dilution of the adidas brand, and did not otherwise look at data associated with adidas and Payless. (Pham, Tr. at 1378:14-23, Shaeffer Dec. Ex. 1.) Dr. Pham formed his opinions on "literature" divorced from the facts of this case. (*Id.* at 1373: 25 – 1374:3, 1378:24 – 1379:6, Shaeffer Dec. Ex. 1.) Dr. Pham nonetheless opined in a conclusory manner that adidas sustained damage as a result of a loss of the uniqueness of its shoes, a lessening of perceived quality, and a "transference" of negative associations from the Payless brand to the adidas brand. (*Id.* at 1324:19 – 1326:23, Shaeffer Dec. Ex. 1).

Yet evidence of hypothetical harm is not proof of actual damage. Dr. Pham's opinions and theories were all of an indefinite nature. Dr. Pham's opinions go no further than textbook theory and have no rational application to the facts of this case. Dr. Pham qualified all of his opinions with "if" and/or "may." For example, he testified that "***if*** a consumer is walking in front of a Payless store and mistakenly believes that they have seen an adidas shoe," the characteristics of the Payless brand "***may*** transfer over" to the adidas brand. (*Id.* at 1326:13-21, Shaeffer Dec. Ex. 1) (emphasis added); *see also* (*id.* at 1324:24 – 1325:3, 1325:7-12, Shaeffer Dec. Ex. 1). He further admitted that he did not know the specific effect of a consumer seeing a "variant" (*i.e.*, two or four stripes) of a three-stripe stimulus. (Pham, Tr. at 1339:22 – 1340:14, Shaeffer Dec. Ex. 1.) Whatever this testimony about hypothetical and/or subconscious transference might establish, it did not establish ***actual*** dilution or ***actual*** damage. Dr. Pham, like Dr. Joachimsthaler, therefore failed to provide evidence of actual harm suffered by adidas as a result of Payless' sales of its shoes. Dr. Pham's inability to furnish evidence of actual dilution or damages negates any suggestion that he could offer testimony to form a reasonable basis for a damage award. *See Pioneer Leimel Fabrics, Inc. v. Paul Rothman Industries*, 25 U.S.P.C.2d at 1107 ("a verdict may not be based on an expert's false assumptions or theoretical speculations").

c.    adidas Offered No Other Evidence to Support a Finding of the Fact of Damage.

None of adidas' other witnesses provided evidence of the fact of damage. Like its experts, adidas' fact witnesses at best offered vague and conclusory testimony that the accused shoes make things "difficult" for adidas. adidas' head of design for the Originals Division testified that seeing the accused shoes was "defeating" and "kind of makes it difficult to you know – to do what we're trying to do." (Klein, Tr. at 589:15 – 590:18, Shaeffer Dec. Ex. 1.) This testimony cannot be considered substantial evidence of actual damage to the adidas brand, and is certainly an insufficient basis for an award of $167.6 million in so-called "compensation."

In *Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d 1, 6 (1st Cir. 1993), the court found that self-serving statements lacking a concrete factual basis do not "present a colorable claim of actual damages." Like adidas, the plaintiff in *Aktiebolaget Electrolux* offered conclusory and self-serving testimony that the accused mark had "a monumental and significant effect on [its] ability to sell [its] product." *Id.* The court found this testimony insufficient and found "no justification to award damages." *Id.* at 6-7.

The same is true of the evidence in this case. Actual damages may not be presumed or "infer[red]," even where there is actual confusion. *Harper House, Inc.*, 889 F.2d at 210 (reversing lower court presumption of damages based on evidence of actual confusion); *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir.1990) (proof of actual confusion causing "actual injury, *i.e.*, loss of sales or present value (goodwill)" is necessary). There is neither proof of actual confusion nor actual damage to adidas in the record.

d.    The Evidence Establishes That adidas' Brand has been Strengthened – not Harmed – Over the Past Several Years, and adidas Offered No Evidence to Quantify how much Payless' Conduct Caused its Brand to Diminish.

Highlighting the counterfactual and fanciful nature of adidas' claimed injury, the ***only*** evidence submitted to the jury addressing the ***actual*** strength and value of the adidas brand established that adidas' sales and brand value have ***both increased*** at a significant rate since Payless began selling the accused shoes.  There is no evidence to establish by any standard, much less by a preponderance, that adidas suffered any harm to its brand.  The only objective evidence offered by adidas' own witnesses *establishes the opposite*.  Because adidas has failed to prove the fact of damage, the monetary award is improper.

Numerous adidas' witnesses testified that its brand is very strong.  (*See e.g.* Joachimsthaler, Tr. at 522:15 – 523:18; Pham, Tr. at 1277:4-17, Shaeffer Dec. Ex. 1; Def. Ex. 4000 at 51:16 – 52:10).  The head of the Originals Division for adidas testified that "[w]e've seen significant [sales] growth year on year since 1999."  (Def. Ex. 4000 at 53:18-22).  As Dr. Joachimsthaler testified, the actual, quantifiable value of the adidas brand ***increased*** by approximately $500 million dollars from 2000 to 2006, and continued to increase another 11% from 2006 to 2007.  (Joachimsthaler, Tr. at 550:10 – 551:9, Shaeffer Dec. Ex. 1).

The absence of evidence from adidas speaks volumes.  If, as hypothesized by adidas' experts, adidas' brand experienced psychic damages through subconscious transference of adverse mental images in the marketplace, that effect should have been borne out in a marginal analysis of the growth in strength of the adidas brand.  adidas should have quantitative evidence establishing how much more it had to spend to bolster its brand strength as a direct result of Payless' infringing conduct.  Yet adidas did not have any such evidence.  One of adidas' damages experts, Drews, specifically admitted that adidas did *no* "research, investigation, or valuation effort" to determine whether adidas' brand would have increased more if Payless had not sold infringing shoes.  (Drews, Tr. at 1430: 5-15, Shaeffer Dec. Ex. 1).

In addition, adidas failed to offer any testimony that Payless' two and four stripe shoes (as opposed to the numerous other two and four stripe shoes sold by other competitors) were responsible for adidas' claimed brand dilution.  And even though adidas has filed numerous lawsuits against other, so-called "generic" sellers of striped shoes and has alleged in those lawsuits that their two and four stripe shoes have caused adidas' brand to be diluted, adidas never attempted at trial to distinguish or otherwise quantify how much alleged dilution was caused by Payless' shoes versus these other striped shoes.  In fact, even though Dr. Pham was aware of other two and four stripe shoes in the marketplace, he never accounted for this fact in forming his opinions about Payless' conduct.  (Pham, Tr. at 1375: 7-9, Shaeffer Dec. Ex. 1.)

> e.    adidas Did Not Offer Evidence That the Value of its Brand Would Have Grown at a Different Rate if Payless Had Not Sold the Accused Shoes.

Because the uncontroverted evidence demonstrated that adidas' brand had grown in value since Payless began selling the accused lots, adidas could not recover monetary damages unless it could establish that its brand would have increased by an even greater value if the accused lots did not exist.  However, no witness testified that the value of the adidas brand *would* have increased more in the absence of the accused shoes, and adidas made no effort to quantify any such hypothetical increase.  At trial, adidas' retained damage calculation expert, David Drews participated in the following dialogue with counsel:

> Q.    So if the jury was going to be considering any injury to goodwill by looking at the value of the adidas' [sic] brand, the only evidence they had before them is that the brand has increased in value?

> A.    Well, it has increased in value in – in a complete sense, but that doesn't mean that it couldn't have increased in value more than that if the infringement activity had not taken place.

> Q.    But you haven't done any research, investigation, or valuation effort to determine if that's a fact, have you?

A.     That's correct.

(Drews, Tr. at 1430:5-15, Shaeffer Dec. Ex. 1).  No other witness testified to the amount by

which the adidas brand was allegedly damaged as a result of Payless' conduct.

In addition, according to Drs. Joachimsthaler and Pham, the effect of the accused shoes

on the adidas brand is imperceptible in brand valuation data.  Dr. Joachimsthaler stated that "the

proportions are just totally off the mark" when assessing the effect of the accused shoes, which

are sold in one distribution channel in one country, within global valuations like the Interbrand

study [a known brand valuation study].  (Joachimsthaler, Tr. at 553:9-14; *see also* Pham, Tr. at

1330:13-19, Shaeffer Dec. Ex. 1).  Notwithstanding this problem with the objective data, Dr.

Joachimsthaler made no attempt to otherwise quantify any actual damage.

When asked whether he could determine if adidas had suffered a loss to its brand value,

Dr. Joachimsthaler stated:

A.     * * * If you were to give me the U.S. numbers and the performance of
adidas in retail, in retail, not overall, in retail, in the United States, perhaps
even by a particular segment of consumers, then you probably have a
chance of looking at some of these numbers.

Q.     Have you reviewed those numbers –

A.     No.

Q.     -- in coming up with your conclusions in this case?

A.     No.

Q.     Why didn't you review those?

A.     Because those numbers do not really exist.

Q.     You can't determine the retail sales in the United States for adidas?

A.     Of course you can.

(Joachimsthaler, Tr. at 553:15 – 554:5, Shaeffer Dec. Ex. 1).  Dr. Joachimsthaler failed to perform the required analysis.

The same is true of Dr. Pham, who could not quantify the damage he purported to testify about because he believes that the alleged confusion and resulting damage to adidas was invisible and occurred on a "subconscious" – e.g., imperceptible – level.  (Pham, Tr. at 1379:21 – 1380:3, 1323:18 – 1324:8, Shaeffer Dec. Ex. 1).  Consequently, there is no evidence that the value of adidas' brand would have grown at a different rate if Payless had not sold its shoes.

> f.      adidas' Failure to Quantify the Harm to its Brand is Fatal to its Damages Claim.

adidas does not contend that it ever lost a single sale as a result of Payless' conduct. adidas hinged its damage theory on damages allegedly sustained to its brand due to the presence of "confusing" two and four stripe shoes in the marketplace.  No witness, however, took the objective data establishing that adidas' mark and brand had increased in value and determined that the brand would have been worth a single dollar more "but for" Payless' infringing conduct. Absent sufficient evidence of at least $1 of quantitative harm actually caused to adidas by Payless' conduct, adidas has failed to meet its burden to prove the fact of damage.

The testimony of David Drews does not help adidas.  Drews acknowledged during his examination that his calculation of a hypothetical royalty was "not specific to the value of the brand overall" and did not assess whether adidas' trademarks are in fact worth less as a result of Payless' sale of the accused shoes.  (Drews, Tr. at 1428:21 – 1429:7, Shaeffer Dec. Ex. 1). Drews admitted that his royalty calculation did not have any "direct correlation" to the amount by which adidas' brand had been damaged.  (*Id.* at 1430:16-20, Shaeffer Dec. Ex. 1).

> g.      Drs. Pham and Joachimsthaler's Speculation Unduly Prejudiced Payless at Trial.

Drs. Pham and Joachimsthaler were allowed to testify at trial even though their fact of injury testimony was unreliable and not supported by any objective evidence or data. Over Payless' *in limine* objection to the reliability of their proffered opinions, Drs. Pham and Joachimsthaler offered testimony which did not come close to satisfying the reliability threshold mandated by *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) and its progeny [*See* Dkt. Nos. 554, 555, 563-66]. Because Drs. Pham and Joachimsthaler were adidas' sole "injury causation" witnesses – and because their testimony about damages relied upon their subjective feelings about brand strength, not any objective data or studies – their testimony was unreliable and misleading, rendering its presentation to the jury unduly prejudicial to Payless. Judgment as a matter of law is appropriate under these circumstances or, in any case, the Court should grant a new trial to rectify the error.

### 2. The Jury's Excessive Damages Award to adidas is Based Upon Speculation.

In order to recover monetary damages, adidas must establish those damages with "reasonable certainty." *Lindy Pen*, 982 F.2d at 1407; *see also McClaran*, 97 F.3d at 361. "Compensatory damages must rest on 'a just and reasonable estimate of the damage based on relevant data.' Allowance for uncertainty is one thing, and rank speculation another." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992) (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)) (citations omitted).

adidas offered nothing more than rank speculation to support its damages calculations. In the end, the only evidence adidas presented concerning the quantum of the actual damage it allegedly suffered established that the damage (if any) was at best ***imperceptible***—and even that evidence was mired in speculation. Yet the jury awarded $137 million for "unjust enrichment," a number that approximates about one-third (1/3) of the total increase in value of the adidas

brand between the years 2000 and 2006 (according to the Interbrand study).  (*See*

Joachimsthaler, Tr. at 550:10 – 551:9, Shaeffer Dec. Ex. 1).  That number also is nearly 4% of

the total value of the adidas brand, which includes approximately 6,000 other trademarks that are

not even at issue in this case.  (*See id.* at 550:10-13, Shaeffer Dec. Ex. 1).  Even the $30.6

million award based upon a hypothetical royalty for alleged infringing sales represents 6% of the

total increase of the entire adidas brand between the years 2000 and 2006.  These figures find no

reasonable support in the record.

### C.    The Court Should Overturn the Jury's Finding of Willfulness.

#### 1.    Payless Should Have Been Able to Inform the Jury That Two Federal Judges Agreed that Payless did not Infringe.

The jury determined that Payless engaged in willful infringement and that Payless earned

$137 million in profits during the nine-year time period at issue.  This finding, as well as the

jury's resultant determination of unjust enrichment and punitive damages, must be set aside

because Payless was barred from informing the jury that – up until 2006 – two federal court

judges in this lawsuit determined that Payless had the absolute right to make shoes with two and

four straight-edged stripes without violating adidas' trademark.  The Court, through Chief

District Judge Haggerty and Magistrate Judge Jelderks, agreed with Payless' long-held

interpretation of the meaning and effect of the 1994 Settlement Agreement.  Payless'

interpretation of the Agreement was also central to Payless' advice of counsel defense.

Preventing the jury from learning this critical fact and from learning that Payless' interpretation

of the 1994 Settlement Agreement was the exact same interpretation reached by both the federal

magistrate and federal district court judge originally assigned to this case, taints the jury's

willfulness finding.

As established at trial through the testimony of Stephen Horace, one of the outside attorneys who conducted shoe reviews on the accused footwear, this interpretation of the Agreement was communicated to Payless' buyers in connection with the sale of non-Superstar inspired accused shoes until at least the Ninth Circuit's decision on January 5, 2006. That this pivotal fact was withheld from the jury in considering whether Payless' actions were reasonable improperly deprived Payless of a critical defense to willfulness.

The unrebutted testimony of Stephen Horace and Peter Knops show that Payless' decision to market each of the shoes in question was preceded by an analysis designed to ensure that the shoes were permitted under the terms of the 1994 Settlement Agreement. (*See, e.g.,* Horace, Tr. at 2342:23-2344:11, Shaeffer Dec. Ex. 1 and Trial Shaeffer Dec. Ex. 1069, Knops Depo. at 48:24-52:22, Shaeffer Dec. Ex. 2). This analysis included a determination of whether the particular shoe at issue complied with the Agreement. (*See, e.g.*, Horace, Tr. at 2379:22-2381:11 and 2578:7-20, Shaeffer Dec. Ex. 1; and Trial Shaeffer Dec. Ex. 1069, Knops Depo. at 142:5-143:9, Shaeffer Dec. Ex. 2). That Agreement states:

> Payless further agrees that it will not, except as otherwise provided herein, order or sell athletic shoes bearing two or four parallel double-serrated stripes of contrasting color running diagonally from the outsole forward to the lacing area.

(Def. Shaeffer Dec. Ex. 2612).

Payless believed that the meaning of the Settlement Agreement language was clear: that the parties agreed in 1994 that Payless could continue marketing shoes with two and four parallel stripes of contrasting color running diagonally from the outsole forward to the lacing area, provided that those stripes did not have double-serrated edges. (*See, e.g.*, Horace, Tr. at 2317:24-2318:22, Ex.1; and Pl. Shaeffer Dec. Ex. 1069, Knops Depo. at 28:23-30:1, Shaeffer Dec. Ex. 2). Accordingly, outside shoe review counsel for Payless determined that if a shoe had

two or four parallel, non-serrated stripes, it was in compliance with the Agreement and did not

violate adidas' rights in the THREE STRIPE MARK.  (*See, e.g.*, Horace, Tr. at 2396:1-5,

Shaeffer Dec. Ex. 1).  In addition, adidas did not contend at trial that any of the shoes sold by

Payless constituted a breach of that Agreement.  (Backman, Tr. 943:18-22, Ex.1).

The reasonableness of Payless' interpretation of the Agreement was confirmed by two

separate federal judges in this very case.  On March 25, 2002, Payless filed its Amended Motion

for Summary Judgment, arguing that the non-Superstar inspired accused shoes fully complied

with the 1994 Settlement Agreement and that adidas' non-contractual claims were barred by the

earlier settlement.  [Dkt. No. 24-26].  On October 8, 2002, Magistrate Judge Jelderks confirmed

Payless' interpretation of the Agreement, holding:

> the agreement can only be reasonably interpreted as insulating Payless from any
> liability premised solely on the use of [two or] four stripes so long as Payless did
> not sell shoes bearing the kind of [double-serrated] stripes specifically prohibited
> under the agreement….The agreement can only be reasonably interpreted as
> imposing on Payless an ongoing obligation to refrain from selling shoes bearing
> the stripes prohibited under the agreement, and imposing on Adidas a reciprocal
> ongoing obligation to refrain from taking legal action against Payless based solely
> on its use of stripes.

(Findings and Recommendations/Order [Dkt. No. 51,  at pp. 14-15]).

On January 6, 2003, the District Court adopted the Magistrate Judge's recommendations.

[Doc. No. 62].  The Court explained that it had "given the file of this case a de novo review" and

had "carefully evaluated * * * the entire Record."  *Id.* at 2.  Based on that independent analysis

the Court ruled:

> The Magistrate Judge correctly concluded that…the terms of [the 1994]
> Agreement were clearly intended to apply to…future models of Payless athletic
> shoes….Defendant agreed not to order or sell certain-styled shoes in the
> future…The parties' Agreement was plainly forward-looking and not limited to
> the products in dispute in the 1994 litigation…This court concurs that the
> Agreement "can only be reasonably interpreted as imposing on Payless an
> ongoing obligation to refrain from selling shoes bearing the stripes prohibited

> under the agreement, and imposing on [a]didas a reciprocal ongoing obligation to
> refrain from taking legal action against Payless based solely on its use of stripes."

*Id.* at 3.  These rulings stood for three years until the Ninth Circuit reversed on January 5, 2006.

Prior to that ruling on appeal, Payless reasonably and in good faith relied upon the advice of

counsel and the rulings of two noted jurists that the accused shoes complied with the 1994

Settlement Agreement, and that adidas' non-contractual claims were barred by the earlier

settlement.  [Dkt. No. 24-26].

In connection with its *in limine* motion rulings, the Court precluded Payless from

advising the jury about any aspect of the Ninth Circuit appeal or the above-referenced summary

judgment rulings.  (Trial Tr. at 46:25-49:9; 882:18-884:11 and 1984:7-1986:14, Shaeffer Dec.

Ex. 1).  Even when adidas' in-house counsel mentioned the appeal in her direct examination

(Backman, Tr. at 867:15-868:13, Shaeffer Dec. Ex. 1), the Court refused to allow Payless'

counsel to cross-examine her about any issues relating to the appeal or the events which lead up

to it.  (Trial Tr. at 882:18-884:11, Shaeffer Dec. Ex. 1).  This was clear error and prejudicial to

Payless.

Payless adduced evidence at trial that at least until the time of the Ninth Circuit's opinion,

Payless, as well as the attorneys conducting shoe reviews for Payless, relied in good faith on this

interpretation of the 1994 Agreement when reviewing the shoe designs in question.  The

testimony at trial of Stephen Horace and Peter Knops made clear that, in their opinion, the

Agreement expressly permitted the use of two and four non-serrated parallel stripes, an opinion

that was incorporated into Payless' shoe design process.  (*See, e.g.*, Horace, Tr. at 2317:24-

2318:22 and 2379:22-2381:11, Shaeffer Dec. Ex. 1; and Trial Shaeffer Dec. Ex. 1069, Knops

Depo. at 28:23-30:1 and 142:5-143:9, Shaeffer Dec. Ex. 2).

Moreover, not only was this evidence critical to Payless' defense, it was relevant and admissible to rebut adidas' *specific* challenge to the reasonableness of this interpretation by Payless and its outside shoe review counsel.  adidas invited such evidence – *i.e.*, it opened the door – in its trial counsel's opening statement:

160

1   Payless' position, what they're going to say to
2   you is that they believe that because this agreement
3   prohibited three stripes and two and four with serrated
4   edges, that two and four without serrated edges was okay,
5   that they were allowed to do that, that that was
6   permissible.
7         Well, you're going to have to see what kind of
8   evidence there is on that.  And, interestingly, Payless
9   did a memo right after this agreement and they circulated
10  it internally.  And it said, "We have these limitations
11  on us.  We can't sell three stripes.  We can't sell two
12  and four serrated edges.  We will get in big trouble if
13  we do."
14        And then the next paragraph didn't say anything.
15  There wasn't a paragraph that said, "But we're allowed to
16  sell two and four stripes if they're not serrated."  It
17  wasn't there.  It didn't exist.  It didn't exist in '94.
18        **After they got sued in this case, you'll start**
19  **hearing conversation about "Hmm, maybe we should argue**
20  **that the agreement allowed this.  Maybe we should say**
21  **there is something implicit in the agreement."**
22        **There is nothing explicit.  The agreement doesn't**
23  **provide for that.  There is no defense there.**  But look
24  at that 1994 memo.  If they had this great expansive
25  right to sell two- and four-striped shoes, you would have

161

1   expected it to be there.
2         **With this evidence of the rights that adidas has,**
3   **the obvious copying and willfulness on the part of**
4   **Payless, what will be the evidence that you will hear**
5   **about why Payless says its conduct wasn't willful?  The**
6   **principal evidence you will hear, the explanation will be**
7   **"We relied on our lawyers.  They told us we could do it,**
8   **that it was okay."**

(Trial, Tr. at 160:1–161:8, Shaeffer Dec. Ex. 1) (emphasis added).  adidas thus raised the 1994

Agreement, denigrated Payless' interpretation and, in essence, challenged Payless to come

forward with evidence showing that its interpretation was reasonable.

Yet Payless was prohibited from doing so at trial.  In the face of this direct challenge, it

was critical that Payless be permitted to respond.  Yet Payless could not inform the jury of the

most critical information about the reasonableness of that interpretation – that both Magistrate

Judge Jelderks and Chief Judge Haggerty agreed that Payless' interpretation of the Agreement

was correct.  Such a confirmation from two separate jurists would have constituted significant

evidence validating that Payless' sale of these shoes was based on a reasonable belief that the

sale of the accused shoes was permitted.  The Court's contrary ruling precluding this evidence

prejudiced Payless' ability to counter adidas' arguments, and made Payless look like a bad faith,

willful trademark infringer.  This, at a minimum, warrants a new trial.

> **2.    The Court's Prior Summary Judgment Rulings on the 1994
> Settlement Agreement Preclude as a Matter of Law a Finding of
> Willful Infringement During the Three Year Period When the
> Rulings Were in Effect.**

In addition, the Court's previous rulings themselves provide an independent basis for

vacating or modifying the jury's willfulness finding and award.[6]  These rulings, which entered

judgment in Payless' favor on adidas' trademark claims relating to two and four striped

footwear, were the operative and controlling "law of the case" for almost three years until the

Ninth Circuit reversed on January 5, 2006.  During this three-plus year period, Payless had an

absolute good faith right to rely on the summary judgment holding that the 1994 Agreement

---

[6]    This applies with equal force to the jury's punitive damages award, which was derived from the profits award.  Because Payless had a legal right to rely on the summary judgment in its favor, there is no basis to find that its conduct reflected malice, oppression or bad faith.

permitted it to make 2- and 4- stripe shoes without infringing adidas' trademark.  For any of the non-Superstar inspired accused shoes sold during that three year period when the Court's summary judgment order was in effect (*i.e.*, those accused shoes which were the subject of trademark claims only), Payless – as a matter of law – could not be found to have willfully infringed adidas' trademark rights.

However, the jury's profits disgorgement award includes those profits Payless earned on its sale of non-Superstar inspired two- and four-stripe shoes during this three year period when the summary judgment order governed.[7]  This is evidenced by the fact that the jury's award of $137,003,578 in Payless profits matches exactly the "Alternative A" calculation proffered by adidas' profits damages expert, Jay Sickler, on *all* of the accused Payless lots (which would include sales made from 2003 through 2005).  (Sickler, Tr. at 1578:3-1580:20, Shaeffer Dec. Ex. 1; and Trial Ex. 997 and 998).  The jury's finding of willfulness, and its award of disgorgement of profits on the sale of shoes during the time that Payless had an enforceable judgment in its favor, cannot stand.

### 3. The Jury's Willfulness Finding Lacks A Legally Sufficient Basis and is Against the Weight of the Evidence as to Those Lots adidas did not Accuse of Imitating or Being Inspired by its Shoes.

The jury's finding that Payless willfully infringed adidas' trademark rights on 267 of 268 possible lots is plainly lacking any support as to those approximately 112 "Category A" lots which adidas did not accuse of imitating any of its shoes.  (Pfannenstiel, Tr. at 1733:6-1738:8, Shaeffer Dec. Ex. 1).  As illustrated by the testimony of Steve Horace and other Payless witnesses, many, if not most, of the lots falling into this category were inspired by shoes other than adidas shoes and contained design features similar to shoes previously sold by Payless and

---

[7]    Again, Payless was denied the opportunity to present this argument to the jury.

footwear companies other than adidas. (*See, e.g.*, Horace, Tr. at 2458:1-2459:22, Shaeffer Dec. Ex. 1; Trial Shaeffer Dec. Ex. 1069, Knops Depo. at 176:14-178:6; 189:17-192:17, Shaeffer Dec. Ex. 2; and Pfannenstiel, Tr. at 1738:11-1748:4, Shaeffer Dec. Ex. 1.) Moreover, adidas offered no evidence that in developing or purchasing these lots that Payless ever attempted to copy or imitate any adidas shoe or design. The sole basis for adidas' trademark infringement claims on these shoes was that they had two- and four- parallel stripes.

The Ninth Circuit defines willful infringement as incorporating a "deliberate intent to deceive. Courts generally apply forceful labels, such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets that standard." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d at 1405; *Maier Brewing Co. v. Fleischman Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968); *see also Gracie v. Gracie*, 217 F.3d 1060, 1068-69 (9th Cir. 2000) (defining willfulness as acting "'willfully,' or deliberately and in bad faith in order to trade upon [plaintiff's] good will"); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984) (finding defendant's conduct to be "willful, deliberate, bad faith infringement of [plaintiff's] trademarks that was intended to and in fact did result in deception of the public").

Given the absence of any evidence that Payless copied, imitated or was otherwise inspired by any adidas shoes, or features of its shoes, in developing this category of accused lots, no reasonable jury could find that by selling shoes with two and four parallel stripes Payless engaged in the deliberate, false, misleading or fraudulent conduct needed to demonstrate willfulness under the Lanham Act and controlling Ninth Circuit law.

The lack of willful intent as to these lots is further established by the significant evidence Payless adduced at trial as to the widespread and longstanding sale and use by Payless and numerous third parties of shoes with two and four parallel stripes. (*See, e.g.*, Pfannenstiel, Tr. at

1638:2-1654:15; 1673:20-1676:15; 1709:16-1723:16 and 1727:6-1733:4, Shaeffer Dec. Ex. 1).

The jury's finding of willful infringement as to these lots is contrary to law, unsupported by the

record and insufficient as a matter of law to establish by clear and convincing evidence that

Payless acted with a deliberate intent to deceive.


## III.    CONCLUSION

Because the jury's damages verdict has no legally sufficient basis, is excessive, against

the weight of the evidence and the product of erroneous evidence, the Court should enter

judgment as a matter of law in Payless' favor or vacate the verdict and order a new trial.

DATED:                        SCHWABE, WILLIAMSON & WYATT

                              By ____/s/ William B. Crow_____
                                 William B. Crow, OSB No 610180

                              LATHROP & GAGE L.C.

                                 William A. Rudy (admitted pro hac vice)
                                 William R. Hansen (admitted pro hac vice)
                                 Phillip S. Lorenzo (admitted pro hac vice)
                              Attorneys for Defendant Payless ShoeSource, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2008, I caused to be served a copy of the foregoing **LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL (i) DUE TO PLAINTIFF'S FAILURE TO PROVE THE FACT OF ACTUAL DAMAGE, AND (ii) ON THE ISSUE OF WILLFULNESS** on the following person(s) in the manner indicated below at the following address(es):

Stephen M. Feldman; sfeldman@perkinscoie.com          Counsel for plaintiffs
Thomas R. Johnson; trjohnson@perkinscoie.com
Perkins Coie LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128

Jerre B. Swann; jswann@kilpatrickstockton.com          Of counsel for plaintiffs
William H. Brewster; bbrewster@kilpatrickstockton.com
R. Charles Henn, Jr.; chenn@kilpatrickstockton.com
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309

☒       by CM/ECF

☐       by Electronic Mail

☐       by Facsimile Transmission

☐       by First Class Mail

☐       by Hand Delivery\

☐       by Overnight Delivery


          /s/ William B. Crow
          An Attorney for Defendant