**Stephen M. Feldman,** OSB No. 932674
sfeldman@perkinscoie.com
**Thomas R. Johnson,** OSB No. 010645
trjohnson@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone:  (503) 727-2000
Facsimile:  (503) 727-2222

      Attorneys for Plaintiffs

**Jerre B. Swann**; jswann@kilpatrickstockton.com
**William H. Brewster**; bbrewster@kilpatrickstockton.com
**R. Charles Henn Jr.**; chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

      Of Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.** and **ADIDAS-SALOMON AG**, <br><br>     Plaintiffs, <br><br> v. <br><br> **PAYLESS SHOESOURCE, INC.**, <br><br>     Defendant. | No. CV01-1655 KI (Lead Case) <br> RELATED CASE to CV03-1116 KI <br><br> **PLAINTIFFS' MEMORANDUM (No. 1 of 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS'S DAMAGES CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR** <br><br> By Plaintiffs adidas America, Inc. and adidas AG |

i-   PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
    OPPOSITION TO DEFENDANT'S MOTION FOR
    JUDGMENT AS A MATTER OF LAW
21184-0010/LEGAL14297341.2

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 4

A.  Legal Standards Governing The Payless Post-Trial Motions ............................. 4

    1.  Rule 50(b) JMOL Standard ........................................................... 4

    2.  Rule 59 New Trial Standard ........................................................... 5

    3.  Remittitur Standard ....................................................................... 7

B.  The Jury's "Reasonable Royalty" Award as a Measure of Damage was Amply Supported and Comports with Well-Settled Precedent .......................... 8

    1.  A Reasonable Royalty is a Recognized Measure of adidas's Damages ........................................................................................ 8

    2.  Both Payless's and adidas's Evidence Overwhelmingly Supports the Jury's Reasonable Royalty Determination ...................................... 10

    3.  The Reasonable Royalty Award Does Not "Double Count" ................. 12

    4.  The Reasonable Royalty Award Does Not Fail Because of Payless's Profit Margin ................................................................. 16

C.  adidas Presented Not Only Sufficient But Overwhelming Evidence to Support the Jury's Accounting for Profits Award ............................................. 18

    1.  Ninth Circuit Case Law Supports adidas's Position as to Proper, Allowable Deductions .................................................................. 18

    2.  The Court's "Preponderance of the Evidence" Instruction on Willfulness is Not Error ................................................................ 20

    3.  The Profits Award Was Just Compensation for adidas .......................... 22

    4.  Payless's Cry for GAAP Accounting Procedures To Be Used in Determining Profits and Costs is Contrary to Precedent and This Court's Jury Instruction ............................................................... 24

D.  The Punitive Damages Award Was Proper in Light of the Overwhelming Evidence of Payless's Reckless Disregard for adidas's Rights ......................... 25

    1.  The Punitive Damages Award Was Properly Based on State Punitive Damages Law ................................................................. 25

    2.  The Punitive Damages Award Was Not Constitutionally Excessive Under the Due Process Clause ....................................................... 28

    3.  Payless's Argument that the Punitive Damages Award Gives Extraterritorial Effect Is Unfounded ................................................ 32

III. CONCLUSION ................................................................................................. 35

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Republic Ins. Co. v. Union Fidelity Life Ins. Co.*, 470 F.2d 820 (9th Cir. 1972).........................................................................................................27, 28

*Angle v. Sky Chef, Inc.*, 535 F.2d 492 (9th Cir. 1976)............................................. 7

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996).............................................. passim

*Brady v. Gebbie*, 859 F.2d 1543 (9th Cir. 1988)..................................................... 7

*Britton v. Maloney*, 196 F.3d 24 (1st Cir. 1999)................................................... 13

*Butte Copper & Zinc v. Amerman*, 157 F.2d 457 (9th Cir. 1946)............................ 5

*Chalmers v. City of Los Angeles*, 762 F.2d 753 (9th Cir. 1985)............................. 7

*Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*, 700 P.2d 677 (Or. Ct. App. 1985).......................................................................................................... 28

*CollegeNET, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058 (D. Or. 2007)................. 21

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)........................................ 5

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001)......... 27

*Crooks v. Pay Less Drug Stores NW, Inc.*, 285 Or. 481 (1979)........................... 27

*D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245 (9th Cir. 1982).............................................................................................................. 8

*Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336 (9th Cir. 1984) ...................... 6

*EEOC v. Pape Lift, Inc.*, 115 F.3d 676 (9th Cir. 1997)........................................... 6

*El Ranco, Inc. v. First Nat'l Bank of Nev.*, 406 F.2d 1205 (9th Cir. 1968)........... 27

*Fin. Programs, Inc. v. Falcon Fin. Servs., Inc.*, 371 F. Supp. 770 (D. Or. 1974) ...... 28

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985).................... 19

*Friendship Auto Sales, Inc. v. Bank of Willamette Valley*, 716 P.2d 715 (Or. 1986).................. 27

*Galdamez v. Potter*, No. Cv. 00-1768-PK, 2006 WL 2385290, *2 (D. Or. Aug. 17, 2006)................................................................................................................... 6

*Garvin v. Greenbank*, 856 F.2d 1392 (9th Cir. 1988) ............................................ 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................................................................ 9, 12

*Go Medical Industries v. Inmed Corp.*, 471 F.3d 1264 (Fed. Cir. 2006) .............. 31

*Goddard v. Farmers Ins. Co.*, 179 P.3d 645 (Or. 2008).......................27, 29, 33, 34

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004) ............. 17

*Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000)................................................... 20

*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273 (S.D.N.Y. 2002) ........ 12

*Halbach v. Med-Data, Inc.*, 192 F.R.D. 641 (D. Or. 2000) .................................. 26

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251 (1916) ............... 12

*Harrods, Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658 (E.D. Va. 2001)................................................................................................................... 21

*Head v. Glacier Northwest, Inc.*, No. CV02-373-RE, 2006 WL 752530, *1 (D. Or. Mar. 20, 2006).............................................................................................. 7

*Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549 (Fed. Cir. 1987)........... 17

*Innes v. Maritime Overseas Corp.*, 33 Fed. Appx. 282 (9th Cir. 2002)................. 7

*Intel Corp. v. Terabyte Int'l*, 6 F.3d 614 (9th Cir. 1993)...................................... 18

*Interstellar Starship Svcs., Ltd. v. Epix, Inc.*, 184 F.3d 1107 (9th Cir. 1999) ............. 28

*Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222 (9th Cir. 2001) .......... 5

*Julian-Ocampo v. Air Ambulance Network, Inc.*, No. Civ. 00-1262-KI, 2001 WL 34039480, *1 (D. Or. Dec. 13, 2001)............................................................ 8

iii-  PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES
### (continued)

Page

*Kamar Int'l, Inc. v. Russ Berrie and Co.*, 752 F.2d 1326 (9th Cir. 1984) .................................. 19
*Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) (*en banc*) .................................... 29
*Lambert v. Ackerly*, 180 F.3d 997 (9th Cir. 1999) (*en banc*) ............................................... 7
*Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987) .................... 5, 6, 7
*Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356 (9th Cir. 1986) ............................ 7
*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968) ............. 13, 22
*McLean v. Runyon*, 222 F.3d 1150 (9th Cir. 2000) ..................................................................... 4
*Mosean v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984) ................................... 5
*Nash v. Lewis*, Civ. No. 04-6291-PA, 2007 WL 4565162, *1 (D. Or. Dec. 19,
    2007) ..................................................................................................................................... 6
*Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991) ............................................................... 27
*Parrott v. Carr Chevrolet, Inc.*, 17 P.3d 473 (Or. 2001) .......................................................... 27
*Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007) ............................................... 29, 33, 34
*Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir. 1982) ......... 8, 9, 13, 26
*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986) .................................. 13
*Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir. 1986) ........................... 8, 13
*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ............................................. 4
*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) .................................. 17
*Roy v. Volkswagen of Am.*, 896 F.2d 1174, *amended by*, 920 F.2d 618 (9th Cir.
    1990) ..................................................................................................................................... 6
*Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340 (7th Cir. 1994) ....................... 8, 9, 23
*Sands, Taylor and Wood v. Quaker Oats Co.*, No. Civ.A-84-8075, 1993 WL
    204092 at *4 (N.D. Ill. June 8, 1993) ............................................................................ 9, 12
*Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378 (9th Cir. 1984) ............................................... 22
*Settlegoode v. Portland Pub. Schools*, 371 F.3d 503 (9th Cir. 2004) ......................................... 5
*Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385 (9th Cir. 1987), *op.
    amended on other grounds*, 817 F.2d 609 (9th Cir. 1987) .................................................... 8
*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir.
    2001) ................................................................................................................................ 5, 6, 8
*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ....................................................... 13
*Standard Acc. Ins. Co. v. Winget*, 197 F.2d 97 (9th Cir. 1952) ................................................. 5
*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .......................................... 27
*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989) .............................. 17
*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162 (4th Cir. 2006) ............................................. 21
*Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29 (1944) ....................................................... 6
*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) ....... 5, 26, 27, 31
*TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993) ....................................... 27
*Union Oil Co. v. Terrible Herbst, Inc.*, 331 F.3d 735 (9th Cir. 2003) ........................................ 6
*United States v. Butler*, 74 F.3d 916 (9th Cir. 1996) .............................................................. 14
*United States v. LaHue*, 261 F.3d 993 (10th Cir. 2001) ......................................................... 14
*United States v. Schaff*, 948 F.2d 501 (9th Cir. 1991) ............................................................ 14
*Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984) ............................................................... 5
*Wallace v. City of San Diego*, 479 F.3d 616 (9th Cir. 2007) .................................................. 5, 6
*Wilhelm v. Associated Container Transp. Ltd.*, 648 F.2d 1197 (9th Cir. 1981) .......................... 6
*Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001) ...................... 4
*Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529 (N.D. Cal. 1993) ............................. 19

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

15 U.S.C. § 1117 ................................................................................................. 18
15 U.S.C. §1117(a) .................................................................................8, 18, 22
O.R.S. § 646.638(1) ........................................................................................... 27

**Regulations and Rules**

Fed. R. Civ. P. 50(b) ............................................................................................ 4

**Other Authorities**

5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION
    ("MCCARTHY") (4th ed. 2007) ....................................................................... 9
Random House Dictionary of the English Language 1418 (Unabridged Ed. 1971) ..................... 5
Restatement (Third) of Unfair Competition, § 37, cmt. h (1995) ............................... 3, 19

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") respectfully submit this memorandum in opposition to the motion by Defendant Payless ShoeSource, Inc. ("Payless" or "Defendant"), under Federal Rules of Civil Procedure 50 and 59, as to the damages award of the jury in favor of adidas in this action.[1]

## I.    INTRODUCTION

Following a three-week trial and seven years of litigation, a nine-person jury unanimously found that Payless willfully and maliciously infringed adidas's Three-Stripe Mark and Superstar Trade Dress. Specifically, the jury found Payless created a likelihood of confusion and caused actual dilution, and that the willful infringement involved approximately 30 million pairs of athletic shoes (representing 267 separate infringing footwear lots), which accounted for sales by Payless in excess of $393 million dollars.

Pursuant to this Court's instructions, the jury determined adidas was entitled to monetary relief[2] consisting of: (a) "damages," in the form of a 7.78% reasonable royalty totaling $30.6 million; (b) a $137 million accounting for profits based on willful infringement; and (c) a punitive damages award of $137 million – identical to the disgorged profits – based on clear and convincing evidence that Payless "acted with malice, or in wanton and reckless disregard of adidas's rights . . . ." Dkt. No. 860, at 56 (Instruction No. 48).

The jury's monetary award was formulated after thorough consideration of the supporting evidence, including the parties' accounting data and financial information, as well as testimony from accounting and damages experts. Even though the jury found for adidas on *all* counts, the monetary relief represented only about 66% of the profit award sought by adidas ($137 million

---

[1] Payless submitted three post-trial memoranda pursuant to Federal Rules of Civil Procedure 50 and 59, which are referred to as "Payless Memo #__." adidas responds in three opposing memoranda, each corresponding to the topics discussed in Payless's briefs, and referred to as "adidas Memo #__."

[2] Section 35 of the Lanham Act, 15 U.S.C. §1117(a), which governs the award of monetary remedies in trademark infringement cases, permits plaintiff, "subject to the principles of equity, to recover (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action." The punitive damages award was made under state law, including principally the jury's findings of common law trademark infringement and unfair competition.

versus $208 million); and less than 75% of the reasonable royalty ($30.6 million versus $41.7 million).  The verdict was by no means excessive; Payless had total footwear sales during the relevant time period of over $23 billion.  In response to the jury verdict, Collective Brands touts that it still will make over $100 million in profit in the first quarter of 2008.

Payless Memo #1 asks this Court to set aside or otherwise override the jury's damages verdict.  Although Payless likewise offered expert testimony as to the content of a hypothetical negotiation, it now challenges the "reasonable royalty" method of determining damages both on foundational grounds and as applied by the jury.  A reasonable royalty is an appropriate measure of "damage," and a royalty rate less than 8% is well within the range of both parties' historical license agreements and the expert testimony.  Payless's expert, who curiously is not referenced in Payless's briefing, developed a reasonable royalty rate, but failed to account for important components, including, *inter alia*:  the parties' relative bargaining positions and the strength of adidas's marks.  A royalty of less than 8% is not contrary to the clear weight of the evidence or grossly excessive.

Payless further contends the reasonable-royalty award impermissibly "double counts" damages.  But there is no double recovery.  The reasonable royalty compensated adidas for actual damages in terms of what adidas would have received if Payless licensed the marks at issue – a marketplace measure based on a "hypothetical negotiation."  The jury then found willfulness supporting an accounting for profits.  Having been instructed by the Court that "You may not include in any award of profits any amount that you took into account in determining actual damages" (Dkt. No. 860, at 54; Instruction No. 46), and having had both parties argue as to how those calculations should be made, the jury then awarded additional and separate monetary relief in the form of Payless's profits as determined under trademark law and the jury instructions.  The royalty measure is separate from the accounting for profits focused on unjust enrichment.  The former compensates adidas for damage and injury, including its Three-Stripe Mark and Superstar Trade Dress; the latter relates to Payless profits and sales.  The jury award

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

did not include Payless's "full profits" (of $208 million), and thus no evidence exists to suggest double counting. Finally, having received the jury instruction and verdict form it requested (without additional monetary information), Payless itself *invited* any error and is not entitled to any relief.

In its final argument against a reasonable royalty, Payless claims the royalty would have exceeded Payless's profit margins. This claim, based on old patent law cases, collapses in the face of recent, contrary case law. Moreover, the entire argument is based on a faulty assumption about Payless "profits," which the jury rejected in making its award. Additionally, the only evidence in the record makes clear that Payless could, and did, raise its prices dramatically during the relevant time frame with no known impact on sales; while a price increase may or may not have been required, the record supports the jury's royalty determination.

Payless's arguments regarding the accounting for profits award are untenable. First, under the Lanham Act and Ninth Circuit decisions, the evidentiary standard to find "willfulness" is "preponderance," not "clear and convincing." Of course, even if the higher evidentiary standard applied, the jury found willfulness – specifically, "malice," "wanton and reckless disregard" and "particularly aggravated" conduct – by clear and convincing evidence in awarding punitive damages. Second, the amount of the jury's profit award comports fully with the Lanham Act goal of deterring willful infringement. In this case, the footwear lots at issue were "driving sales" and were the company's "top lots" – responsible not only for an undisputed $393 million in sales, but also whatever other revenue was generated by those purchases. Finally, Payless's repeated cry for application of "normal accounting" practices to allow additional cost deductions is entirely misplaced; "although *normal* accounting practice may allocate overhead and general expenses over all products such an allocation is not necessarily appropriate for purposes of determining the net profits for which the defendant must account." Restatement (Third) of Unfair Competition, § 37, cmt. h (1995) (emphasis added). The jury properly followed the instruction that "Payless has the burden of proving the expenses by a

3-   PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
      OPPOSITION TO DEFENDANT'S MOTION FOR
      JUDGMENT AS A MATTER OF LAW
      21184-0010/LEGAL14297341.2

                                          **Perkins Coie** LLP
                                    1120 N.W. Couch Street, Tenth Floor
                                         Portland, OR  97209-4128
                                          Phone:  503.727.2000
                                          Fax:  503.727.2222

preponderance of the evidence," and that deductions only could take place for "costs that Payless incurred in the production, distribution or sale *of the infringing products*" (Jury Instruction No. 46), not all products. Payless failed to prove further deductions.

Finally, Payless challenges the jury's punitive-damages award, contending it violates due process and is unconstitutionally inclusive of wrongful acts Payless performed in other States. These federal Constitutional claims, which do not call into question the common-law basis for the jury's punitive damages award, fail for numerous reasons. First, because Payless previously did not object to the relevant jury instructions, these objections are procedurally defective. Second, an analysis under the Supreme Court "guideposts" demonstrates the jury's punitive damages award is not unconstitutionally excessive. Finally, Payless's claim that the punitive damages unconstitutionally punish extraterritorial harms is without merit; Payless's state-by-state statutory analysis is wholly irrelevant to the jury's finding of common law infringement and unfair competition. Moreover, the cited line of cases stemming from *Gore* addresses concerns simply not at issue in this case.

## II.    ARGUMENT

### A.    Legal Standards Governing The Payless Post-Trial Motions

#### 1.    Rule 50(b) JMOL Standard

"A judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits *only* a conclusion contrary to the jury's verdict." *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000) (emphasis supplied) (reversing and remanding to reinstate jury verdict). As the Ninth Circuit summarized:

> A district court may set aside a jury verdict and grant judgment as a matter of law "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); Fed. R. Civ. P. 50(b). When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

4- PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

21184-0010/LEGAL14297341.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Settlegoode v. Portland Pub. Schools*, 371 F.3d 503, 510 (9th Cir. 2004) (reversing JMOL).[3]

"In light of these bedrock principles delineating the trial judge's limited role in reviewing a jury's factual findings," *Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222,1227 (9th Cir. 2001), the meaning of "substantial evidence" needs to be clearly stated, and not misconstrued:  "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."  *Id.  Accord Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (affirming denial of JNOV) ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985) (same).[4]

## 2.    Rule 59 New Trial Standard

"[A] trial court may grant a new trial if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'"  *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (reversing grant of new trial).  *Accord Roy v. Volkswagen of*

---

[3]  *Accord Wallace v. City of San Diego,* 479 F.3d 616, 624, 630-31 (9th Cir. 2007) (reversing JMOL and new trial)*; Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (reversing JMOL) ("although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe"); *Garvin v. Greenbank*, 856 F.2d 1392, 1400 (9th Cir. 1988) (reversing JNOV) ("the record gives every indication that the court mistakenly substituted its judgment for that of the jury); *Walker v. KFC Corp.*, 728 F.2d 1215, 1223 (9th Cir. 1984) (affirming denial of JNOV  "[g]iving the plaintiffs the benefit of all reasonable inferences"); *Moseian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984) (reversing JNOV) ("The standard is no less exacting, and probably more exacting, when a court sets aside a jury verdict.").

[4]  In the context of JMOL, the quantum necessary for "substantial evidence" is best described as "sufficient" or "adequate" with all inferences in the non-movant's favor.  The Ninth Circuit first referenced "substantial" evidence in *Butte Copper & Zinc v. Amerman*, 157 F.2d 457, 458 (9th Cir. 1946) ("if there is substantial, relevant evidence in favor of the party against whom the motion for directed verdict is made, it is error for the trial court to grant the motion directing the verdict").  *See also Standard Acc. Ins. Co. v. Winget*, 197 F.2d 97 (9th Cir. 1952) (applying directed verdict standard to JNOV).  The Ninth Circuit language in *Butte* was based on language adopted from the Supreme Court decision in *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 216 (1938): "'Substantial evidence' is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Thus "substantial" in this context does not mean "ample or considerable"; rather, it means "real or actual."  Random House Dictionary of the English Language 1418 (Unabridged Ed. 1971).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Am.*, 896 F.2d 1174, 1176, *amended by*, 920 F.2d 618 (9th Cir. 1990) (reversing grant of new

trial); *Wilhelm v. Associated Container Transp. Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981)

(affirming denial of new trial motion).

> When considering a motion for a new trial, a stringent standard applies
> when the motion is based on insufficiency of evidence. A new trial may
> be granted on this ground only if the verdict is against the "great weight"
> of the evidence or "it is quite clear that the jury has reached seriously
> erroneous result."

*Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984) (citations omitted)

(reversing grant of new trial because "the jury's verdict, rather than being clearly contrary to the

weight of the evidence, was a more-than-defensible resolution of the case"). *Accord EEOC v.*

*Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (reversing grant of new trial on selected

issues). Similarly, a new trial based on the exclusion of evidence "is only warranted when an

erroneous evidentiary ruling 'substantially prejudiced' a party." *Nash v. Lewis*, Civ. No. 04-

6291-PA, 2007 WL 4565162, *1 (D. Or. Dec. 19, 2007) (denying motion for a new trial).

    The "district court may not grant a new trial simply because it would have arrived at a

different verdict." *Silver Sage Partners*, 251 F.3d at 819 (reversing grant of new trial because

"jury's award was not against the clear weight of the evidence"). "[T]he trial court must have a

firm conviction that the jury has made a mistake," *Landes Const. Co*, 833 F.2d at 1372

(affirming refusal to grant new trial) (*citing Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29,

35 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely

because the jury could have drawn different inferences or conclusions or because judges feel that

other results are more reasonable")). *Accord Wallace v. City of San Diego,* 479 F.3d at 630-31

(same); *Union Oil Co. v. Terrible Herbst, Inc.*, 331 F.3d 735, 742-43 (9th Cir. 2003) (same) ("It

is not the courts' place to substitute our evaluations for those of the jurors"); *Galdamez v. Potter*,

No. Cv. 00-1768-PK, 2006 WL 2385290, *2 (D. Or. Aug. 17, 2006) (denying motion for new

trial, noting: "While the court might have come to a different result had this been a bench trial, it

6-    PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
21184-0010/LEGAL14297341.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

cannot be said that the jury's verdict was clearly erroneous or against the great weight of the evidence"). "Doubts about the correctness of the verdict are not sufficient grounds for a new trial." *Landes Const.*, 833 F.2d at 1372; a*ccord Head v. Glacier Northwest, Inc.*, No. CV02-373-RE, 2006 WL 752530, *1 (D. Or. Mar. 20, 2006) (denying new trial motion because "definite and firm conviction required"). In summary, "the jury's verdict should be accepted if it is one which could reasonably have been reached." *Angle v. Sky Chef, Inc.*, 535 F.2d 492, 494 (9th Cir. 1976) (affirming denial of new trial motion) ("Taking all of the evidence along with favorable inferences therefrom into consideration, we must conclude that there is reasonable evidence to support the jury's verdict.").

### 3.    Remittitur Standard

The Ninth Circuit repeatedly has held that, in reviewing a jury's damage award, a court "must uphold the jury's finding of the amount of damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir. 1986) ("But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not 'play Monday morning quarterback' and supplant the jury's evaluation of the complex and conflicting evidence with our own") (quotations omitted). *Accord Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1999) (*en banc*) (reversing reduction punitive damages and reinstating full jury award); *see also Innes v. Maritime Overseas Corp.*, 33 Fed. Appx. 282, 284 (9th Cir. 2002) (affirming denial of remittitur of punitive damage award); *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988) (affirming denial of new trial or remittitur); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760 (9th Cir. 1985) ("An otherwise supportable verdict must be affirmed unless it is 'grossly excessive' or 'monstrous' or 'shocking to the conscience.'").

"A trial court reviewing a damages award attacked as excessive must consider the evidence of damages in a light most favorable to the prevailing party." *Julian-Ocampo v. Air*

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Ambulance Network, Inc.*, No. Civ. 00-1262-KI, 2001 WL 34039480, *1 (D. Or. Dec. 13, 2001) (citing *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987), *op. amended on other grounds*, 817 F.2d 609 (9th Cir. 1987)); *Silver Sage Partners*, 251 F.3d at 819 (reversing remittitur as an abuse of discretion). Moreover, a remittitur only may reduce "the judgment to the *maximum amount* sustainable by the proof." *Julian-Ocampo*, 2001 WL 34039480, *1 (citing *D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982) (citations omitted) (emphasis added).

**B.    The Jury's "Reasonable Royalty" Award as a Measure of Damage was Amply Supported and Comports with Well-Settled Precedent**

Section 35 of the Lanham Act allows a plaintiff, "subject to the principles of equity, to recover:  (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action."  15 U.S.C. §1117(a).  adidas presented abundant evidence for the jury to calculate monetary relief based upon a reasonable royalty, and separately Payless's profits attributable to the infringement.  Payless claims adidas's damages are "contrary to law, speculative and arbitrary."  Payless Memo #1 at 6.  Such an assertion finds no support in the law or in the record.

**1.    A Reasonable Royalty is a Recognized Measure of adidas's Damages**

In terms of "damages," courts in trademark cases embrace the concept of a reasonable royalty acting as the proper measure of damages, including when evidence of lost sales is impossible or difficult to ascertain.  *See, e.g.*, *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1350 (7th Cir. 1994) (noting that "the district court ought to begin with one measure of actual damages that, if ascertained with reasonable certainty, could be said to reflect the [plaintiff's] actual loss . . . the cost of a reasonable royalty"); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) (stating that royalties normally received for the use of a mark are a proper measure of damages).  In *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982), which Payless fails to cite, the Ninth Circuit

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

specifically held that a royalty was appropriate "damages" for trademark infringement, and reversed a district court decision providing an inadequate royalty award.

As this Court outlined in Jury Instruction No. 43, "A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the trademark or trade dress owner and a company in the position of Payless taking place just before the infringement or unfair competition began." Dkt. No. 860, p.51 (Instruction No. 43). *See* 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION ("MCCARTHY"), §§ 30:85-87 (4th ed. 2007); *Playboy Enters.*, 692 F.2d at 1274. As suggested by that instruction, numerous factors are relevant to determining a reasonable royalty, including:

> (1)  royalty rates in prior licenses, as received by plaintiff/licensor or paid by defendant/licensee;
>
> (2)  plaintiff/licensor's licensing policies;
>
> (3)  the special value of the mark to the infringer, and the nature and scope of the infringer's infringing use;
>
> (4)  the profitability of the infringer's use;
>
> (5)  the lack of viable alternatives;
>
> (6)  the amount that the licensor and licensee would have agreed upon in voluntary negotiations; and
>
> (7)  the opinion of expert witnesses.

*Sands, Taylor and Wood v. Quaker Oats Co.*, No. Civ.A-84-8075, 1993 WL 204092, at *4 (N.D. Ill. June 8, 1993) (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1122 (S.D.N.Y. 1970) ("In applying the formulation, the Court must take into account the realities of the bargaining table and subject the proofs to a dissective scrutiny")); *see also Sands, Taylor and Wood*, 34 F.3d 1340, 1344-45 (affirming hypothetical negotiation as method for calculating reasonable royalty).

9-    PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
      OPPOSITION TO DEFENDANT'S MOTION FOR
      JUDGMENT AS A MATTER OF LAW
      21184-0010/LEGAL14297341.2

                                          **Perkins Coie** LLP
                                   1120 N.W. Couch Street, Tenth Floor
                                       Portland, OR  97209-4128
                                        Phone:  503.727.2000
                                         Fax:  503.727.2222

2.    **Both Payless's and adidas's Evidence Overwhelmingly Supports the Jury's Reasonable Royalty Determination**

Utilizing the legal framework established by Jury Instruction No. 43, which was provided without objection, *both* sides presented evidence and expert opinions regarding the calculation of a reasonable royalty based on a hypothetical licensing negotiation between Payless and adidas, and the jury was instructed on that basis. The parties agreed that gross sales of infringing shoes were $393 million. Payless's *post-hoc* rationalization that such a method is not "a proper measure of trademark damages," (Payless Memo #1 at 9), in this Circuit rings hollow.

adidas's expert, Mr. Drews, started with the undisputed $393 million of revenue generated in the sales of the infringing footwear. (*See* Trial Tr. at 1418:22-25).[5] Mr. Drews posited a royalty figure of approximately 7.78% to be applied against these sales, which – including advertising and marketing related fees – totaled $30.6 million. (*Id.*, at 1419:1-5). Mr. Drews also suggested a product sourcing fee, raising the total royalty amount to $41.7 million. (*Id.*, at 1419:10-15). The jury award for damages was $30.6 million. *See* Dkt. No. 861, at 5 (awarding $30,610,179 as "amount of actual damages that should be awarded to adidas").

As foundation for his opinions, Mr. Drews reviewed relevant adidas license agreements with third parties (with royalty rates ranging from 2% to 18%), relevant Payless license agreements with third parties (with royalty rates ranging from 2% to 10%), and a "sanity check" review of relevant industry agreements (with royalty rates ranging from 9% to 20%, with an average of 13%). (Trial Tr., at 1396:16-22; at 1398:13-1401:3; at 1402:6- 1405:14; at 1408:16-1409:18; at 1409:22-1412:4). Mr. Drews, after relying on the parties' actual agreements and third-party industry agreements, also testified that other real-world components went into his determination, including: the parties' relative bargaining positions; adidas's traditional hesitancy to license its marks on third-party footwear; the strength of the adidas marks; Payless's then-

---

[5] For the Court's ease of reference, adidas has submitted all of the exhibits cited in its three Oppositions to Payless's three post-trial motions (including excerpts cited from trial testimony and pre-trial conference testimony, as well as trial exhibits) in the Declaration of Stephen M. Feldman ("Feldman Dec."), which was filed under seal earlier today.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

declining sales and desire to enter into a license with a strong brand; and the consideration that an average royalty rate was computed, even though this hypothetical agreement covered adidas's core product.  (*Id.*, at 1413:17-1415:5).

Payless also offered testimony regarding the reasonable royalty likely to emerge from the parties' "hypothetical negotiations" through the testimony of David Haas.  (*Id.* at 2734:11-2737:19).  In stark contrast to Payless's statement that no basis exists upon which to "award adidas a hypothetical 'reasonable royalty,'" (Payless Memo #1 at 11), as a measure of damages, Payless counsel even had Mr. Haas highlight his conclusions to the jury if they found that less than all lots infringed:

> Q.    Now, let's just highlight the conclusions that we'll discuss. . . . if there is a determination that a reasonable royalty or damages should be awarded on some, but not all of the lots of shoes, what should the jury do?
>
> A.    You would need to change that middle number, the royalty base, and just include in that total only those shoes that you would find to be infringing.

(Trial Tr. at 2743:7-25) (Haas).

Payless, fully intending that the jury use a reasonable royalty in their deliberations (if infringement was found), hoped that it would be a low (2%) royalty rate.  (*Id.*, at 2856:24-2857:1).  But Mr. Haas was not able to defend his opinions on cross-examination, and admitted that he had not considered in his reasonable royalty calculations:

- the parties' bargaining positions as an important factor (*Id.* at 2807:18-24 (agreeing to importance of "relative strengths and weaknesses of the parties"));

- the parties' motivations in undertaking the license is important (*Id.* at 2808:8-13);

- Payless had tried, and failed, to obtain licenses with Nike and Reebok (*Id.* at 2822:15-2823:11);

- adidas would have been a "reluctant" negotiator as to its core product (*Id.*, at 2819:7-15); and

- the strength of the marks being licensed may affect the licensing parties' motivation (*Id.*, at 2810:8-14).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Each of these considerations has been found by courts to be important factors in the award of a reasonable royalty. *See, e.g., Sands, Taylor and Wood*, No. Civ.A-84-8075, 1993 WL 204092 at *4; *Georgia-Pacific Corp.*, 318 F. Supp. at 1122.

In addition to these admissions, Mr. Haas testified that he performed no brand valuation of the adidas marks at issue, (Trial Tr., at 2814:8-20), even though he readily agreed that those adidas marks "were able to command a higher royalty rate in the marketplace than the other brands that were licensed by . . . Payless." (*Id.*, at 2815:22-25). Throughout his direct and cross, Mr. Haas clung to his 2% royalty, even though it lead to untenable results, i.e., the *minimum* guaranteed royalty on those less valued "other brands" would far exceed – even in half the time period – his 2% rate for adidas (which would be $7.8 million) as compared to the "minimums" for Champion ($10 million) and Airwalk ($19 million)). (*Id.*, at 2855:24-2857:17). Finally, Mr. Haas was forced to admit that his 2% reasonable royalty rate was below the current effective average royalty of both Payless and adidas. (*Id.*, at 2855:18-23).

The fact that the jury chose neither adidas's $41.7 million nor Payless's $7.8 million shows that it carefully weighed the various components set out by the parties' experts and came to its own considered conclusion. The jury's determination is not "contrary to the clear weight of the evidence," or "grossly excessive," and should stand as the "damage" award.

### 3.    The Reasonable Royalty Award Does Not "Double Count"

Payless claims – without citation to case law – that the jury's award of the reasonable royalty is a double recovery because it was made "*in addition to* disgorgement of Payless's profits." (Payless Memo #1 at 8) (emphasis in original). In fact, the law is clear that *both* damages (such as a royalty) and an accounting for profits can be awarded,[6] and in this case the

---

[6] *See, e.g., Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259 (1916) ("it is generally held that in a proper case both damages and profits may be awarded"); *GTFM, Inc. v. Solid Clothing, Inc.,* 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002) (awarding $5.3 million as an accounting and $1.4 million in damages).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

jury did not provide a "double recovery."[7] The $30.6 million reasonable royalty was clearly a measure of "damages" compensating adidas in terms of what licensing arrangement could (or should) have been in place. *See* Dkt. No. 860 (Instruction No. 43).

Thereafter, having been instructed by the Court that "You may not include in any award of profits any amount that you took into account in determining actual damages," and having had both parties argue in closing as to how those calculations should be made, the jury then awarded additional monetary relief, namely $137 million that it found to be Payless's *additional* profits as determined under trademark law and the jury instructions. In doing so, the jury award did not include Payless's "full profits" (of $208 million), and thus no evidence suggests any double counting. Rather, consistent with Ninth Circuit precedent, the jury's award of an accounting for profit above the royalty is designed to both take away Payless's unjust enrichment and to deter future infringement.[8]

The jury's royalty award, which arguably does not even cover the full benefits derived from the use (such as additional sales), is separate from the accounting for profits focused on unjust enrichment and deterrence. The former compensates adidas for damage and injury, including to its Three-Stripe Mark and Superstar Trade Dress. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) ("the district court may allow recovery for all elements of injury to the business of the trademark owner"). The latter relates to Payless profits and sales, and is distinct. *Id.* at 1566 (permitting damage award and accounting

---

[7] "The problem of guarding against double recovery is a familiar one when multiple claims exist but separate damages on each would be partly or wholly duplicative. . . . [W]hen the amounts awarded could conceivably differ depending on the claim but may also involve some overlap, verdict forms sometimes require a separate specification of damages for each claim on which the jury determines liability, leaving it to the judge to make the appropriate adjustments to avoid double recovery." *Britton v. Maloney*, 196 F.3d 24, 32 (1st Cir. 1999) (citing *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 451 n. 3 (1993)).

[8] "Section 1117(a)'s primary purpose is to 'take all the economic incentive out of trademark infringement.'" *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (quoting *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274-75 (9th Cir. 1982)); *accord Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968).

on the grounds that doing otherwise "undoubtedly would subvert the purpose behind the Lanham Act").

Payless received the jury instruction and verdict form it requested (without additional monetary information), and thus cannot be heard to complain of double counting. Payless assumes, wrongly, that the jury's award provides adidas with "*all* of the profits the jury found to be derived from Payless's sales of the challenged shoes *plus* a reasonable royalty on top of that." (Payless Memo #1 at 8) (emphasis in original). The language of the verdict form and jury instructions, however, are more considered than that bludgeoned interpretation. The Verdict Form has separate entries for an award of actual damages and for an award of profits, not just a total award, and the jury had instructions and full argument from both parties on the issues.

Moreover, as noted above, Payless requested certain instructions and changes to the verdict form, and thus *invited* any claimed error here.[9] Both the Court and the parties, especially adidas, devoted considerable courtroom time to preventing any double recovery. The Court made sure to tell the parties, even before adidas rested its case-in-chief, that it would carefully review the jury instructions submitted by the parties:

> I'm particularly concerned on the verdict form with getting double counting of damages. . . . [I]t seems to me that it should be limited to a specific amount, *the maximum amount that could be awarded* for actual damages based upon the testimony that you've submitted. And I say that because we've had verdicts in the past where it's clear, where there are different monetary awards being made, there's been some double counting of damages, and they've gone in there and they really have a *cumulative amount* rather than specific amounts. The amount of profits, No. 12, we'll have that defined as well. You'll be arguing that. And that would be profits on the shoe lots, I take it. We'll need that made clear to the jury as well. And then we'll have an instruction on punitive damages. But, as I say, we want to make sure there is no double counting.

Trial Tr. at 1539:22 – 1541:5 (emphasis added).

---

[9] "The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was in error." *United States v. LaHue*, 261 F.3d 993, 1011 (10th Cir. 2001) (quotation omitted); *see also United States v. Butler*, 74 F.3d 916, 918 n.1 (9th Cir. 1996); *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

With the instruction expressly prohibiting the jury from "includ[ing] in any award of profits any amount that you took into account in determining actual damages" (Dkt. No. 860, Jury Instruction No. 46), Payless counsel insisted that any further monetary direction be removed from the verdict form, stating that they *preferred* to argue them in closing:

> MR. SHAEFFER:  Your Honor, we have one more question on the verdict form. We are concerned about the inclusion of any numbers in the verdict form. . . .
>
> THE COURT:  We're talking about the maximums?
>
> MR. SHAEFFER:  Yes.
>
> THE COURT:  And I've done that because I've had a verdict or two in which it looks to me like they've taken two or three maximums and added them together.  I did that for the benefit of Payless.
>
> …
>
> MR. SHAEFFER:  You have the profits.  You have the royalty.  So the only way – there's a confusion in having those numbers in there, and it's dependent on – it's dependent on the profit number they determine.  So I think the better course, Your Honor, would be for the parties to argue.  We're all going to go up there and point out what they can and can't do.
>
> THE COURT:  What's your feeling about the numbers in the verdict?
>
> MR. HENN:  I don't see what the confusion is, since it's just a ceiling.  If they decide something below that, it solves the problem.
>
> THE COURT:  Well, I put them in because *I thought it would assure that Payless didn't end up with a verdict that was more than the testimony*.
>
> MR. HENN:  We'd like to reduce error as well.
>
> THE COURT:  [To Mr. Shaeffer] If you're asking to take the numbers out and you're going to argue them, we'll take them out.

Trial Tr. at 2787:6 - 2788:25 (emphasis added).

The parties did indeed argue to the jury in their closing statements as to the amounts suggested for damages, and for an accounting, and were careful to avoid double recovery.  adidas argued that the *maximum* amount of Payless profits would be $208.79 million (the "ceiling" earlier stated in the jury instruction discussion), and that, if the jury awarded that amount to adidas, it should *subtract* the reasonable royalty award (which adidas argued should be the

15-  PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
21184-0010/LEGAL14297341.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

maximum $41.7 million) to avoid the "double recovery situation [that would] exist if you've awarded the full amount of the profits. Should you decide to do something less than that, then that would not constitute a double recovery. So those are the calculations if you award the full amount of the profits." Trial Tr. at 3127:9-13. Payless, though arguing for a lesser award of profits, stated that the subtraction of the royalty from the profits showed that:

> [t]he parties agree, thankfully . . . there can be no double recovery. But remember, the Judge's instructions about that issue is you make a determination of the profits that Payless earned on these shoes. And you can't give a royalty that exceeds those profits. . . . Maybe you will agree with Mr. Sickler that 208 million dollars is the right number. Or maybe you'll agree with Mr. Sickler that the right number is applying normal accounting to normal profits, and it's only 19 million dollars.

*Id.*, at 3221:10-23.

The jury awarded adidas less than the maximum amount of Payless profits claimed by adidas (i.e., $137 million instead of $208 million). (Dkt. No. 861, p.5). It also awarded adidas less than the maximum reasonable royalty (i.e., $30.6 million instead of $41.7 million). (*Id.*) By exercising discretion in awarding less than the maximums claimed, the jury showed that it paid heed to the Court's and parties' admonishments regarding double counting. Arguing, *post facto*, that the very instructions that Payless itself propounded lead to a double counting is not proper, and the jury verdict need not be altered.[10]

### 4.     The Reasonable Royalty Award Does Not Fail Because of Payless's Profit Margin

Payless's final argument as to the jury's reasonable royalty award is that the award must fail because it was based on a royalty rate that Payless claims would have been beyond its profit margin on the lots at issue. (Payless Memo #1 at 11). In support of this claim, Payless dips into patent case law. (*Id.*, citing, *inter alia*, *Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549

---

[10] If any portion of the royalty and accounting for profits award in fact did overlap, this Court could adjust the amounts awarded, but in no event would such a finding permit an award of less than $137 million. Again, nothing suggests double counting by the jury, which was provided clear instructions and followed them accordingly.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(Fed. Cir. 1987)).  But a far more recent Federal Circuit decision, *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338-39 (Fed. Cir. 2004), adopted precisely the opposite view in affirming the district court's determination of a reasonable royalty that defendant claimed would leave it in the position of selling the accused product at far below cost:

> "There is no rule that a royalty be no higher than the infringer's net profit margin." … [Defendant's] evidence in this case establishes nothing more than what it might have preferred to pay, which is not the test for damages.

*Id.* at 1338 (quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed. Cir. 1989) and citing *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1555 (Fed. Cir. 1995) (*en banc*) ("the fact that the award was based on and was a significant portion of the patentee's profits also does not make the award unreasonable. … what an infringer would prefer to pay is not the test for damages")).

Apart from mistakes of law, Payless also ignores key facts, namely that the "profit" calculation it offered was rejected, and that any testimony related to the profit left after a royalty therefore likewise is mistaken.  In reality, the profit was greater and the royalty was not so limited.  Although Payless criticizes Mr. Drews' royalty for allowing that Payless might have to raise the prices of its two- and four-striped shoes to enter into a hypothetical license with adidas, the only record evidence supports the ability of that change to occur.  On cross-examination, adidas showed Mr. Haas market research material from Payless's Endeavor project that showed Payless *raising* its prices on its shoes as a result of incorporating price premiums on trendy designs.  (Trial Tr., at 2850:11-2853:9).  Mr. Haas admitted that he was not provided with that information for his analysis.[11]  (*Id.*, at 2853:7-9).  Moreover, despite this price increase across a wide range of Payless footwear, no record of evidence suggests that the price increase had *any* impact at all on Payless shoe sales.  Nor did Payless opt to offer any re-direct of Mr. Haas on that

---

[11]  Moreover, Mr. Haas, had based, in part, the reasonableness of his 2% royalty and its profit split idea on the fact that he was informed by Payless damages expert, Mr. Epperson, that Payless had a $0.74 profit margin on each pair of shoes.  Thus, he admitted, if Mr. Epperson's profit margin was wrongly calculated, so was his profit split analysis.  (Trial Tr., at 2849:10-21).

issue at all.  The jury was thus left to conclude that Payless could, *and indeed did*, broadly raise its shoe prices with no known impact on its sales of that footwear – and that it could and would have done the same in a hypothetical agreement with adidas.

In short, Payless's criticisms of both the jury's reasonable royalty award and Mr. Drews' calculations lack any sound basis in the record.  adidas presented abundant evidence supporting its reasonable royalty calculation, and the reasonable damages award should not be disturbed.

**C.    adidas Presented Not Only Sufficient But Overwhelming Evidence to Support the Jury's Accounting for Profits Award**

The parties agreed that Payless's sales of infringing footwear totaled $393 million.  Trial Tr. at 1558:3-21 (Sickler).  adidas argued that, after costs properly deducted *under the trademark law* were removed, the remaining Payless profit totaled $208 million.  The jury awarded $137 million, adopting an alternative approach allowing further deductions.[12]

**1.    Ninth Circuit Case Law Supports adidas's Position as to Proper, Allowable Deductions**

Section 35 of the Lanham Act directs that a plaintiff's only burden in connection with the amount of an accounting for profits is to establish the defendant's gross revenue.  *See* 15 U.S.C. § 1117; *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 621 (9th Cir. 1993) (awarding damages based on defendant's sales of infringing goods).  Here, that was agreed to be $393 million.

Once adidas established gross revenues, the burden shifted to Payless to "prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).  Significantly, and in response to the main argument advanced by Payless, "although *normal* accounting practice may allocate

---

[12]  Indeed, adidas posits that the only possible grounds for reduction of the jury's award of profits may involve the sole lot deemed non-infringing, Lot No. 9055.  Though Payless sales of that lot totaled $1,376,533.57, *see* PLF 994 at 1, the profits from those sales may be included in the jury's profit award. But that calculation may be easily rendered should the Court find it necessary.  The jury apparently made its profits award of $137,003,578 under the Alternative A scenario proposed by Mr. Sickler.  (Trial Tr. at 1579:2-16.)  That figure represented 34.8% of Payless revenues during the time period.  Thus, to "correct" the profits calculation to exclude from the non-infringing Lot 9055, one would multiply the revenues of Lot 9055 ($1,376,533.57) by 34.8%, resulting in Lot 9055 profits of $479,033.67.  Then Lot 9055 profits ($479,033.67) would be subtracted from $137,003,578, resulting in a "corrected" profits award of $136,524,544.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

overhead and general expenses *over all products* such an allocation is not necessarily appropriate for purposes of determining the net profits for which the defendant must account." Restatement (Third) of Unfair Competition, § 37, cmt h. (Emphasis added). Put differently, and consistent with Jury Instruction No. 46, allowable costs only include expenses that "actually contributed to or provided actual assistance in the sale of"[13] the infringing product.

With gross revenues established, the jury then was left to determine Payless's appropriate costs or deductions. Mr. Sickler calculated Payless's profits based on expenses that actually contributed to or provided actual assistance in the production, distribution, or sale *of the alleged infringing footwear* in this case. (Trial Tr., at 1563:21-1564:2). According to Mr. Sickler, that determination was vitally important to a calculation of profits since, "to determine the profits . . . that would flow to Payless from the sale of these shoes, we want to know what the revenue is that represents those sales and what are the costs that actually contributed to those sales." (*Id.*, at 1570:19-23). To that end, Mr. Sickler included variable costs such as:

- first costs;
- store costs;
- damage and shrinkage;
- freight adjustment;
- profit adjustment on PSSI/PSII; and
- other purchase order adjustments.

(*Id.*, at 1571:14-1572:1) (indicating "costs associated with the actual piece of footwear that was being sold in this analysis"). Subtracting those total merchandise costs of sales, Mr. Sickler determined that the proper profits calculations here was $208.79 million. (*Id.*, at 1574:7-23).

Mr. Sickler also provided alternative calculations of profits, further deducting costs associated with the sales of the infringing goods. (*Id.*, at 1579:2-1581:23). In an alternative

---

[13] *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516, 518 (9th Cir. 1985) (in establishing proper measure for deductions of overhead, costs should be allowed only when expense was "of actual assistance in the production, distribution or sale of the infringing product"); *see also Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (noting Ninth Circuit acceptance of rule); *Kamar Int'l, Inc. v. Russ Berrie and Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984); MCCARTHY § 30:68.

19- PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW
21184-0010/LEGAL14297341.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

analysis, Mr. Sickler deducted costs listed in Payless's profit and loss statements as "other costs of sales. (*Id.*) These expenses included warehouse expenses, merchandising buying expenses, rent and other occupancy expenses, real estate taxes, utilities and maintenance. (*Id.*) Deduction of all these expenses, together with the earlier merchandise costs of sale, led to a total profit of about $137 million. (*Id.*, at 1579:13-16). This "Alternative A" did not include other general costs, such as salaries and other general and administrative expenses.

Payless's expert, Mr. Epperson, used Payless's approach to calculating profits, estimating it at $19.1 million. (*Id.*, at 3221:10-23). He based that opinion on his belief that *"all of the costs of Payless's business*, except for legal fees and restructuring, actually assisted or contributed in the sales of these accused shoes." (*Id.*, at 2895:5-21) (emphasis added). Thus, he included all variable costs and almost all fixed costs, including such expenses as salaries, IT, security, utilities, rent, and all other general and administrative expenses. (*Id.*) In other words, Mr. Epperson and Payless advocated deducting costs not permitted – as summarized by the Restatement – by the Lanham Act, the Ninth Circuit decisions, or the Jury Instruction; the jury properly declined.

Because the jury's analysis and determination were based upon substantial evidence, and not contrary to the clear weight of the evidence or "grossly excessive," the Court should enter judgment for the amount found by the jury.

## 2.    The Court's "Preponderance of the Evidence" Instruction on Willfulness is Not Error

The Lanham Act requires only a "preponderance of the evidence," not "clear and convincing evidence," to establish "willfulness" supporting an accounting for profits. In *Gracie v. Gracie*, 217 F.3d 1060, 1068-69 (9th Cir. 2000), the Ninth Circuit upheld jury instruction language[14] not using "clear and convincing," finding that the instruction accurately reflected the

---

[14] In *Gracie*, the Ninth Circuit upheld the following jury instruction on willfulness: "you may find that [plaintiffs] intentionally infringed the [] service marks, if you find that they acted 'willfully,' or deliberately *and in bad faith*, in order to trade upon [defendant and counterclaim plaintiff's] good will." 217 F.3d at 1068-69 (emphasis in original).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"voluntariness" and culpability elements of willfulness. *See also Harrods, Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 679 (E.D. Va. 2001) (applying "preponderance of the evidence" to find "bad faith" under Section 43(d) of the Lanham Act).

Moreover, the Ninth Circuit Model Jury Instruction on "Intentional Infringement" does not include a "clear and convincing standard," which of course is included in all instructions where the heightened evidentiary requirement applies. Thus, the Model Instruction simply states: "If you find that the defendant infringed the plaintiff's trademark, you must also determine whether the defendant used the trademark intentionally, knowing it was an infringement." 9th Cir. Model Jury Inst. 15.27.

Payless cites a single case to try to establish its desired evidentiary standard, *CollegeNET, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058 (D. Or. 2007) (Brown, J.). That case, pointedly, did not rely on any Ninth Circuit precedent for the establishment of a "clear and convincing" standard for willfulness – since none exists.[15] Similarly, that standard was announced in *CollegeNET* over neither party's objection, as the issue in that case was simply "willful misconduct." (*Id.*) Thus the entire Payless argument relies on a sole district court opinion in the face of Ninth Circuit precedent providing otherwise and the Model Instruction. Payless can muster no legal argument in support of its claim to a higher evidentiary standard.

Of course, even if the appropriate standard is "clear and convincing," the Court's punitive damage instruction shows that this jury believed that clear and convincing evidence of Payless's bad intent and culpability was revealed within the evidence of record.[16] As a result, the Court's use of an improper evidentiary standard would be harmless error.

---

[15] Not only does it does not address the issue directly in the context of the parties challenging an instruction, but the *CollegeNET* decision bases its statement only on cases from the First and Third Circuits. *See id.* at 1065. Even then, it also cites "willfulness" cases from Circuits applying the preponderance standards, e.g., *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006).

[16] The punitive damage instruction required that the jury find – by clear and convincing evidence – that Payless "acted with malice, or in wanton or reckless disregard of the rights of adidas." Dkt. 860, at 56.

21- PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

21184-0010/LEGAL14297341.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Although Payless asserts that this Court found that Lanham Act "bad faith" and "willfulness" are different than the punitive damages standard of "malice" or "reckless disregard" (*see* Payless Memo #1, at 13-14), the Court never made such a finding, and in fact the two standards are the same.  Both standards have two elements, namely, intent and culpability. Courts in this Circuit repeatedly use the terms "willful" and "malicious" interchangeably.  *See, e.g., Earthquake Sound Corp*, 352 F.3d at 1216-18 (collecting cases and using the terms "malicious" and "willful" interchangeably); *Sealy, Inc. v. Easy Living, Inc*., 743 F.2d 1378, 1384-85 (9th Cir. 1984) (using "malicious" and "willful" synonymously and upholding willfulness finding when defendants "manufactured and sold their look-alike [products] deliberately to deceive consumers").

Rather than finding the two standards different, the Court instead deleted the word "willful" from the punitive damages instruction because it did not want to repeat the use of the word (when a different evidentiary threshold would apply).  The Court expressed concerns that repeating that term might confuse the jurors with the other instruction.  (Trial Tr., at 2946:8-21). But the fact that those jurors *found* clear and convincing evidence sufficient for an award of punitive damages as well as willfulness as to Payless's infringement, shows the presence of the two common elements between "willfulness" and "malice":  intent and culpability.

### 3.    The Profits Award Was Just Compensation for adidas

Section 35(a) of the Lanham Act requires that an award under that statute "shall constitute compensation and not a penalty."  15 U.S.C. §1117(a).  The Ninth Circuit's well-settled view is that the overriding public policy concern associated with an accounting is to take all economic incentive out of trademark infringement.  As *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968) noted:

> Where . . . the infringement is deliberate and willful, . . . both the trade-mark owner and the buying public are slighted, if the court provides no greater remedy than an injunction. . . . 'It seems scarcely equitable . . . for an infringer to reap the benefits of a trade-mark he has stolen, force the

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

registrant to the expense and delay of litigation, and then escape payment
of damages on the theory that the registrant suffered no loss. To impose on
the infringer nothing more serious than an injunction when he is caught is
a tacit invitation to other infringement.' It would seem fairly evident that
the purposes of the Lanham Act can be accomplished by making acts of
deliberate trade-mark infringement unprofitable.

390 F.2d at 123 (citations omitted).

The conclusion that the jury's award is reasonable and remedial is fairly based on the
hours of testimony and numerous documents evincing the intentional and deliberate effort by
Payless buyers to copy the look of adidas footwear. *See e.g.*, Trial Tr. at 3046:6-3050:11, citing,
*inter alia*, documents containing Payless statements such as "we need to copy the original toe
closely;" "adidas four-stripe;" etc.).[17] The jury also heard that the lots at issue were Payless's
"top lots" and were "sales drivers" "driving business." (*Id.* at 3067:18-3069:20, including that
"biggest sales driver is the four-stripe shell toe"). Combined with the testimony of Payless's
expert, Dr. Dhar, who testified that "shopping momentum" often acted as a floor not a ceiling to
additional purchases by Payless customers, (*Id.* at 2655:2-2656:18) (Dhar), Payless's benefit
likely is substantially higher than the $393 million of sales. In the face of such clear intent and
willfulness by Payless to "interpret" adidas footwear closely and sell it briskly, the jury
determination of willfulness is readily understandable, and the award of a disgorgement of
profits may be seen as a "sufficient deterrent" to ensure that Payless will no longer ride adidas's
coattails and "pollute the marketplace." *Sands, Taylor & Wood*, 34 F.3d at 1348.

The remedial nature of the jury's profit award is demonstrated by comparing it to other
non-punitive relief. For example, the undisputed evidence is that adidas was harmed by 30
million shoes being sold into the marketplace. If the Court required that those shoes be recalled,
and replaced with non-infringing shoes (of similar cost to Payless), then Payless would have to

---

[17] adidas incorporates by reference herein its other Memoranda in Opposition to Payless's three
post-trial motions (specifically, adidas Memo #2, Section II.B. and adidas Memo #3, Section II.B.1.e.,
and the portions of the record cited therein), for a more thorough discussion of the evidence presented at
trial of Payless's intentional and willful infringement.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

spend in excess of $150 million on product alone. (*See e.g.*, Trial Tr. at 146:16-19; 164:11-22; 2888:15-23; 3152:22-24; PLF068 (the average Payless merchandise costs per pair was approximately $5.00)).  In other words, the expense that Payless, as a willful infringer, would bear to replace the shoes is significantly more than the jury award.  In light of the undisputed amount of Payless's total footwear sales during the relevant time period ($23 billion dollars), the $137 million disgorgement of Payless's profits represents *less than 6/10ths of 1%* of that total.

> **4.    Payless's Cry for GAAP Accounting Procedures To Be Used in Determining Profits and Costs is Contrary to Precedent and This Court's Jury Instruction**

According to the Restatement (Third) of Unfair Competition, "although normal accounting practice may allocate overhead and general expenses over all products such an allocation is not necessarily appropriate for purposes of determining the net profits for which the defendant must account."  Restatement (Third) of Unfair Competition, § 37, cmt. h.[18]  As described above, adidas and its expert followed this approach, deducting Payless's "costs associated with the actual piece of footwear that was being sold in this analysis," (Trial Tr., at 1571:14-1572:1), and offering alternative calculations based on additional Payless expenses.

Payless, in contrast, advocates an approach contrary to the case law.  Mr. Epperson reached his shrunken profit figure through a deduction of "*all of the costs of Payless's business*, except for legal fees and restructuring, actually assisted or contributed in the sales of these accused shoes." (*Id.*, at 2895:5-21) (emphasis added).  While Payless claims that generally accepted accounting principles ("GAAP") would allow deductions for all fixed as well as variable costs (Payless Memo #1 at 19-20), this argument is contrary to the Ninth Circuit case law, as reflected in the Restatement.  In short, these fixed costs are simply not a function of the

---

[18]  The Restatement description is consistent with the cases in this Circuit holding that allowable costs or deductions are those costs measured that "actually contributed to or provided actual assistance in the sale of" the infringing shoes. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985) (in establishing proper measure for deductions of overhead, costs should be allowed only when expense was "of actual assistance in the production, distribution or sale of the infringing product"); *see also Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (noting Ninth Circuit acceptance of rule).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

sale of the infringing shoes. Jury Instruction No. 46, which was given without objection,
provides that "Profit is determined by deducting all expenses from gross revenues," but then
limiting that by noting that "Expenses are *all costs that Payless incurred in the production,
distribution, or sale of the infringing products.* Payless has the burden of proving the expenses
by a preponderance of the evidence." (Dkt. No. 860, p. 54) (emphasis added). Payless could not
meet that burden and its claims for "all of the costs of doing business" must, and did, fail.

Additionally, the jury here found that Payless is a *willful infringer.* If Payless could
deduct all "costs of doing business" from revenue, the resulting total would constitute an
unjustified windfall for Payless. Payless should not be allowed to deduct these fixed,
unavoidable costs of its business for shoes that Payless had *no legal right to sell.* In a calculation
of profits premised on a finding of *willful* infringement, Payless should not be allowed to deduct
costs it would have otherwise incurred.[19]

**D.    The Punitive Damages Award Was Proper in Light of the Overwhelming Evidence
of Payless's Reckless Disregard for adidas's Rights**

Payless challenges the jury's punitive damages award, contending it violates due process
and is unconstitutionally inclusive of wrongful acts performed in other States. *See* Payless
Memo #1 at 21. However, most of Payless's objections (particularly those with state statutory
grounds) are completely unavailing because the punitive damages award is entirely appropriate,
and should be upheld, based on adidas's state common-law unfair competition claims. (Trial Tr.
at 2937:7-2939:2; *see also* adidas's Third Amended Compl. (Docket No. 418) at 19-27).

**1.    The Punitive Damages Award Was Properly Based on State Punitive
Damages Law**

In states where punitive damages are available in tort cases, they are equally permissible
for unfair competition. *See generally* MCCARTHY § 30:96; Restatement of Unfair Competition

---

[19] In fact, one need look no further than the May 12 press release issued by Payless's corporate
parent, Collective Brands, Inc. *See* Feldman Decl. at Ex. 46. In that release, no sooner does Payless's
CEO finish discussing the "excessive" award in this case than he notes that he is "pleased to report that
we anticipate sales for the first quarter . . . to be $932 million, . . . and EBITDA to exceed $100 million."

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

§ 36, cmt. n.  Importantly, punitive damages may be based on violations of state common law[20] or state statutory law.  *See, e.g., Halbasch v. Med-Data, Inc.*, 192 F.R.D. 641, 652 (D. Or. 2000); *see also* McCarthy § 31:60 (even where statutory claims fail, common-law rights persist).  And Payless has never argued to the contrary.  Payless never contended that any state prohibits punitive damages awards for the tort of unfair competition.  *See, e.g.,* Payless's Jury Instruction Objections (Docket No. 852, Ex. A); Payless Memo #1.  Nor has Payless ever asserted any differences across the various states' standards governing such common-law punitive damages awards.  *See, e.g., id.*  Payless further has never argued that the standard for statutory unfair competition is any different from that of common-law unfair competition.  *See, e.g., id.* Moreover, unlike *Gore* and its progeny, regardless of which states Payless committed its maliciously wrongful acts in, the resulting harm occurred in a single place, Oregon.  Thus, contrary to Payless's pages-long analysis of state unfair competition statutes (Payless Memo #1 at 23-27), even if *no* state provided a statutory basis for unfair-competition punitive damages, adidas nevertheless would be properly entitled to the award assessed by the jury in this case.  *See* Jury Instruction No. 48.

Punitive damages generally are imposed to:  (1) punish willful wrongdoing; (2) make an example of the defendant to others; and (3) deter the defendant from future misconduct.  *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1024-25 (9th Cir. 1985); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (deterrent value of punitive damages operates to "take all the economic incentive out of trademark infringement"); *see also* McCarthy § 30:96; Restatement (1st) of Torts § 908 (2008).  As the United States Supreme Court repeatedly has noted, punitive damages may be awarded "to further a State's legitimate interests in punishing unlawful conduct and deterring its

---

[20]  Payless erroneously states that "adidas' claims for common-law trademark and trade dress infringement are based solely on Oregon law."  Payless's Memo #1 at 23 (citing Jury Instruction No. 48).  Nowhere does this Jury Instruction so limit adidas's common-law unfair competition claims; and adidas's Third Amended Complaint clearly asserted such common-law unfair competition causes of action across all fifty states, *see, e.g.,* adidas's Third Amended Comp. at ¶¶ 78-82.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

repetition." *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (in contrast to compensatory damages, "punitive damages serve a broader function; they are aimed at deterrence and retribution") (citing *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) and *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991)).

"The determination to award [punitive] damages [is] within the exclusive province of the jury" and courts should "not overturn such an award unless it appears that the jury was influenced by passion or prejudice." *Transgo*, 768 F.2d at 1024 (internal quotation marks and citations omitted). While punitive damages must bear a reasonable relationship to compensatory damages, "there is no fixed ratio or formula for determining the proper proportion between the two." *Id.* at 1025. "An award of punitive damages is not considered excessive as long as it punishes the wrongdoer without causing financial ruin." *Id.* (citing *El Ranco, Inc. v. First Nat'l Bank of Nev.*, 406 F.2d 1205, 1219 (9th Cir. 1968)).[21]

Consistent with the above-stated precedent, the punitive-damage jury instruction in this case required a finding by "clear and convincing evidence" that "Payless acted with malice, or in wanton and reckless disregard of the rights of adidas, or if deterrence is called for and Payless's conduct is particularly aggravated." Jury Instruction No. 48 (Docket No. 852 at 56); Verdict Form (Docket No. 861 at 5-6).[22] Emphasizing the exemplary purpose of punitive damages, the

---

[21] At the far end of the spectrum, it is worth noting that the Supreme Court has rejected the argument that a punitive damages award that was 526 times greater than the actual damages award was so excessive that it constituted a due process violation. *See TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462(1993). And the Oregon Supreme Court repeatedly has stated there is "no 'state law excessiveness challenge under the Oregon Constitution.'" *Goddard v. Farmers Ins. Co.*, 179 P.3d 645, 660 (Or. 2008) (quoting *Parrott v. Carr Chevrolet, Inc.*, 17 P.3d 473 (Or. 2001)).

[22] As noted *supra*, and elsewhere in adidas's briefing, malice "signifies nothing more than a wrongful act done intentionally, without just cause or excuse." *Friendship Auto Sales, Inc. v. Bank of Willamette Valley*, 716 P.2d 715, 722 (Or. 1986). In the unfair competition context, Oregon's punitive-damages malice requirement has been interpreted to mean "act[ing]in willful, wanton and reckless disregard of the rights of" the plaintiff. *Am. Republic Ins. Co. v. Union Fidelity Life Ins. Co.*, 470 F.2d 820, 826 (9th Cir. 1972); *see also Crooks v. Pay Less Drug Stores NW, Inc.*, 285 Or. 481, 490 (1979) (holding that jury may award punitive damages under O.R.S. § 646.638(1) for unfair trade practices "if it finds deterrence is called for and the defendant's conduct is particularly aggravated"); *Fin. Programs, Inc.*

27-  PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
     OPPOSITION TO DEFENDANT'S MOTION FOR
     JUDGMENT AS A MATTER OF LAW
     21184-0010/LEGAL14297341.2

                                    **Perkins Coie** LLP
                              1120 N.W. Couch Street, Tenth Floor
                                   Portland, OR 97209-4128
                                     Phone: 503.727.2000
                                      Fax: 503.727.2222

instruction further stated:  "You may consider the importance to society in deterring similar conduct in the future."  Jury Instruction No. 48.[23]

Because the evidence presented at trial not only met but exceeded the "highly probable" showing necessary to satisfy the "clear and convincing" evidentiary standard, the jury, in its "exclusive province," awarded adidas $137 million for Payless's "wanton and reckless disregard of the rights of adidas."  As already detailed, the jury had abundant evidence of Payless's malicious conduct, presented through both parties' witnesses.  Faced with such overwhelming evidence of its own "wanton and reckless disregard of the rights of adidas," Payless cannot genuinely contend that the jury was "influenced by passion or prejudice."

Recognizing the absence of any state-law basis on which to challenge the punitive damages award, Payless raises no challenge to the punitive damages under state standards. Instead, Payless raises two federal Constitutional challenges:  that the award is grossly excessive and that it gives extraterritorial effect to Oregon's statutory law – both of which, it claims, violate the Due Process Clause of the Fourteenth Amendment.  Neither of these contentions has merit.

### 2.    The Punitive Damages Award Was Not Constitutionally Excessive Under the Due Process Clause

Importantly, Payless never before asserted any Due Process challenge, including those it raises in this post-trial motion, despite plentiful opportunities to do so in the course of its objections (both written and oral) to the jury instructions and at the charge conference.  *See, e.g.*, Payless's Objections to Jury Instructions (Docket No. 852, Ex. A) (making no objections to the

---

*v. Falcon Fin. Servs., Inc.*, 371 F. Supp. 770, 781 (D. Or. 1974) (punitive damages awarded upon finding that defendants acted in willful, wanton and reckless disregard of rights the plaintiff).

[23]  Punitive damages are available under Oregon law for unfair competition and deceptive trade practices claims.  *See, e.g., Am. Republic Ins.*, 470 F.2d at 826.  Although punitive damages are not commonly awarded *solely* for trademark infringement under Oregon law, such claims are almost always brought in tandem with unfair-competition claims; and no authority states a recovery of punitive damages is not permissible for trademark or trade dress infringement.  Moreover, infringement and unfair competition share the same likelihood-of-confusion standard under state, federal, or common law.  *See Interstellar Starship Svcs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1110 (9th Cir. 1999); *Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*, 700 P.2d 677, 684 (Or. Ct. App. 1985).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

punitive-damages instruction); Trial Tr. at 2936:16-2938:23 (Payless agreeing that "there are common law claims and a potential for a common law trademark infringement . . . claim under state common law. And, therefore, punitive damages, which are allowed under state law, would apply."). Thus, as a threshold procedural matter, Payless has waived the Due Process arguments it now seeks to assert by failing to raise them in its initial motion for judgment as a matter of law, in its written objections to the jury instructions, or at the charge conference with this Court. *See*, *e.g.*, *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999) (*en banc*) (holding "defendants have waived the issue of the availability of punitive damages by failing to raise it . . . . [i]ndeed, the defendants proposed the punitive damages instruction that was ultimately delivered . . . and never objected to the instruction after they proposed it").[24]

Although Payless's Due Process challenge has been waived and, thus, fails as a procedural matter, it is likewise without any substantive merit. The Supreme Court has articulated three "guideposts" for evaluating Due Process attacks on punitive-damages awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized in comparable cases." *Campbell*, 538 U.S. at 425; *see also Philip Morris USA v. Williams*, 127 S. Ct. 1057, 1063 (2007); *Goddard*, 179 P.3d at 657 (adopting the same).

The first "guidepost," reprehensibility, can be satisfied by a number of aggravating factors attending a defendant's wrongful actions, including whether "the conduct involved repeated actions" and whether "the harm was the result of intentional malice, trickery, or deceit

---

[24] Although Payless may claim it could not object to the excessiveness until the jury actually ruled, Payless could have requested an instruction limiting punitive damages according to the rubric provided in *Gore* and its progeny. Additionally, at a bear minimum, to preserve the error it now claims, Payless was obligated to seek an instruction limiting punitive damages to the states Payless now contends are the only ones that provide for such damages through statutory provisions. Thus, even if this Court finds that Payless's post-trial motions constitute its first opportunity to object to punitive damages on excessiveness grounds, these motions certainly are not Payless's first opportunity to object on the statutory grounds discussed above (and addressed *infra* in Section II.D.3.).

29-  PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
21184-0010/LEGAL14297341.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

. . . [as opposed to] mere accident." *Campbell*, 538 U.S. at 419. It is not, as Payless intimates, limited to physical harm or financially vulnerable plaintiffs. *Compare id. with* Payless Memo #1 at 29. Clear and convincing evidence presented at trial more than satisfies this reprehensibility requirement. As already discussed, Payless's willful and malicious intent in infringing adidas's Three-Stripe Mark and Superstar Trade Dress was evinced, *inter alia*, by Payless's buyers repeatedly demanding nearly identical copying of adidas's marks in a calculated and acknowledged effort to drive Payless's business (to Payless's considerable economic advantage and adidas's disadvantage). This conduct was "in wanton and reckless disregard of the rights of adidas." Jury Instruction No. 48. These and other acts demonstrate that Payless's conduct was not accidental but, in fact, "intentionally malicious" and "deceitful" uses of adidas's marks to unfairly drive Payless's sales. *See, e.g.*, Trial Tr. at 3046:6-3050:11; 3067:18-3069:20. Rather than mitigating this conduct (*see* Payless Memo #1 at 29), Payless's "advice of counsel" exacerbates it, as the evidence showed this "advice" was a sham erected for litigation purposes; thus, further demonstrating Payless's willful deceit.

The second "guidepost" concerns the proportionality of actual to punitive damages. Repeatedly, the Supreme Court has declined to "impose a bright-line ratio which a punitive damages award cannot exceed." *Campbell*, 538 U.S. at 425. At most, the Supreme Court has noted a "4-to-1" ratio "might be close to the line of constitutional impropriety." *Id.* In this case, it is self-evident that, based on the evidence, the jury found it proper to punish Payless by the same amount that the company had wrongfully profited by its willful and malicious misconduct, and that ratio of 1:1 is plainly constitutional. Indeed, the ratio between the punitive damages ($137 million) and the accounting of profits plus the reasonable royalty ($137 million + $30 million = $167 million) is not excessive; it is, in fact, *less than 1:1*.

Recognizing that there is nothing constitutionally suspect about a 1:1 ratio (or, in actuality, less than 1:1 ratio) Payless attempts to assume away the actual-damages portion of this ratio by erroneously anticipating that this Court will supplant the jury's reasonable royalty award

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

or profit disgorgement determination.  *See* Payless Memo #1 at 27-29.  Such hypotheticals are

unsupported and irrelevant, but even assuming *arguendo* one of Payless's approaches –

comparing the reasonable royalty ($30 million) to the punitive damages ($137 million) (*see*

Payless Memo #1 at 28) – this ratio is approximately 4.5 to 1, still about the same as even the

most conservative articulation of the Supreme Court's amorphous Due Process standard, and

*well* within previously accepted awards.[25]  Moreover, even this overstates the case because the

jury's reasonable royalty award was far less than adidas sought, and thus an extremely

conservative figure in the proportion.

Payless contends "adidas did not establish any actual harm from Payless' actions . . . . [so

that] [t]he resulting ratio between punitive and actual damages is therefore infinite."  Payless

Memo #1 at 27-28.  This contention is contrary to the overwhelming evidence and the jury's

findings.  The Jury Instructions clearly required the jury to find that "adidas was damaged by

Payless's infringement" as an element of the trademark infringement claim.  *See* Jury Instruction

No. 19 ("adidas has the burden of proving each of the following elements by a preponderance of

the evidence that  . . . adidas was damaged by Payless's infringement").  And, likewise, the jury

was required to find actual damage to adidas as an element of each of adidas's other claims, and

we know that the jury did so.  *See* Jury Instruction No. 20 (trade dress infringement element that

"adidas was damaged by Payless's infringement); No. 29 ("the deceptive trade practices has

caused actual damages or losses to adidas"); No. 32 ("caused actual dilution").  Based on an

array of evidence, including both parties' damages experts, the jury awarded *actual* damages in

the form of a $30 million reasonable royalty.[26]

---

[25]  See, *e.g.*, *Halsbasch*, 192 F.R.D. at 651; *Transgo, Inc.*, 768 F.2d at 1024-25; *see also*
McCarthy § 30:96.

[26]  Contrary to Payless's assertions, *Go Medical Industries v. Inmed Corp.*, 471 F.3d 1264, 1274
(Fed. Cir. 2006) does *not* stand for the proposition a reasonable royalty award is not a measure of actual
damages; nor does it stand for the proposition that a reasonable royalty award may be downwardly
adjusted.  *Compare id. with* Payless Memo #1 at 26.  Rather, that court agreed that § 1117 of the Lanham
Act "does *not* allow for a downward adjustment of actual damages."  471 F.3d at 1274.  *Go Medical* only
reduced the profits, which it did not characterize as actual damages and which had been previously
mischaracterized as a royalty, because the court found that they were "not based on substantial evidence."

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Payless does not rely on the third "guidepost," the relationship between punitive damages and available civil or criminal penalties for comparable conduct.[27]  Payless does not do so because, unlike *Campbell* and *Gore*, which relied in part on civil fines applicable to the various forms of fraud at issue in those cases, no such civil or criminal remedies are applicable to Payless's conduct in this case.  This factor, therefore, does not support Payless's contentions.

Thus, under this analysis of the Supreme Court's due process "guideposts," the jury's punitive damages determination in this case is not constitutionally excessive.  Accordingly, this Court should not disturb it.

### 3.    Payless's Argument that the Punitive Damages Award Gives Extraterritorial Effect Is Unfounded

As a last resort, Payless contends the punitive damages award is unconstitutional because it punishes Payless for conduct beyond Oregon's borders, or alternatively, outside of those States whose statutes permit punitive damages.  *See* Payless Memo #1 at 22-25 (quoting *Campbell*, 538 at 421 ("A basic principle of federalism is that . . . each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction.")).  Following Payless's logic, however, to recover a full punitive damages award, adidas would be required to file a separate lawsuit in each State whose statutory scheme allows punitive damages.

Most fundamentally, and as already discussed in Section II.D.1., *supra*, the premise of Payless's argument is that the jury's punitive damages award is based entirely on state statutory provisions.  In fact, however, Payless acknowledged at trial, and the jury instructions reflect, that the punitive damages award could be based on any of "adidas's state law claims for unfair and deceptive trade practices, *common law* trademark and trade dress infringement, unfair competition, and dilution."  Jury Instruction No. 48 (emphasis added); *see also* Trial Tr. at

---

*Id.*  Unlike that case, adidas provided not only substantial, but overwhelming evidence, of the harm caused by Payless's maliciously wrongful conduct.

[27]  This guidepost is concerned with the "[g]reat care [that] must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof."  *Campbell*, 538 U.S. at 428.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2936:16-2938:23. Nowhere has Payless challenged common law as a basis for punitive

damages, and nowhere has Payless asserted that common-law punitive-damages principles differ

across states; or that the standard for establishing common-law unfair competition (or trademark

infringement) is different from that in any state statute. *See*, *e.g.*, Payless's Jury Instruction

Objections (Docket No. 852, Ex. A); Payless Memo #1. Therefore, it is irrelevant that some

states provide statutory means for punitive damages while others do not. *See* Payless Memo #1

at 27.

Payless's contentions are misplaced for at least two further reasons. First, they ignore

categorical differences between the torts at issue in *Gore*, *Campbell*, and *Goddard* (the cases on

which Payless relies), as well as *Williams*, on the one hand, and the wrongful acts Payless

engaged in, on the other. *Gore* and its progeny concerned physical harms in which the wrongful

act and the harm occurred in the same place; but Payless's wrongful acts – wherever they were

committed – harmed adidas *in Oregon*. Second, Payless disregards the basic punitive-damages

principle that the wrongdoer – not the innocent plaintiff – bears the burden of uncertainty, the

costs of litigation, and the deterrent effect of the punishment for its misconduct, *see generally*

McCarthy § 30:96.

Briefly, *Gore*, *Campbell*, *Goddard*, and *Williams* concerned isolated tort claims brought

by individual plaintiffs based on acts occurring in a single state.[28] Contrary to Payless's

characterization of these cases, each remitted the punitive damages award *not* on a simplistic

federalism rationale, but because the punitive damages attempted to punish the defendant for

harms likely caused to *other individuals* in other states. *Campbell*, for example, held that the

"fundament reason" the lower court erred was that it "awarded punitive damages to punish and

---

[28] *See Gore*, 517 U.S. at 563 (adjudicating car owner's lawsuit against car dealer for failure to disclose vehicle had been repainted prior to sale); *Campbell*, 538 U.S. at 412-13 (considering bad faith insurance claim brought by family whose insurer refused to reasonably settle a claim stemming from an auto accident); *Goddard*, 179 P.3d at 648 (ruling on punitive damages in context of insurer's failure to settle wrongful death claim in good faith); and *Williams*, 127 S. Ct. at 1060-61 (negligence claim brought by decedent's widow against cigarette manufacturer).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

deter conduct that bore *no relation* to [plaintiffs'] harms." 538 U.S. at 422 (emphasis added). In that case, the lower courts had justified the punitive-damages amount by finding that, even if "[t]he harm is minor to the [in-state] individual [it is] massive in the aggregate [including persons out-of-state]." *Campbell v. State Farm Mut. Auto. Ins. Co.*, 65 P.3d 1134, 1149 (Utah 2001). In remitting the punitive damages, the Supreme Court emphasized: "A defendant's dissimilar acts, *independent* from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Campbell*, 538 U.S. at 422 (emphasis added). The same reasoning counseled the reversals in *Gore* and *Goddard*. *See Gore*, 517 U.S. at 563; *Goddard*, 179 P.3d at 670-71. *Williams* clarified this point by holding that the Due Process concern arises from a "State's inflicting punishment for harm caused to strangers to the litigation." 127 S. Ct. at 1065.

Here, however, the basis for the jury's punitive damage award against Payless is fundamentally different. It neither contemplates "strangers to this litigation" in other states nor "dissimilar acts, independent from the acts upon which liability was premised." *Campbell*, 538 U.S. at 422. In other words, the jury's award of punitive damages is *not* an attempt to punish Payless for other trademark and trade dress infringement claims that other plaintiffs could bring in other states; indeed, no other plaintiffs exist who could sue Payless for infringing *adidas's* Three-Stripe Mark and Superstar Trade Dress. Nor is the jury's punitive-damages determination severable from the acts on which liability was found in this case. The punitive damages in this case are entirely and directly *related* to Payless's malicious and reckless conduct and the harm caused to adidas.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## III.  CONCLUSION

For the foregoing reasons, Payless's Renewed Motion for Judgment as a Matter of Law on adidas's Damage Claims and its Motion for a New Trial should be denied in its entirety.

DATED:  May 19, 2008

**PERKINS COIE** LLP

By:/s/ Stephen M. Feldman
Stephen M. Feldman, OSB No. 932674
Thomas R. Johnson, OSB No. 010645
sfeldman@perkinscoie.com
trjohnson@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222
Attorneys for Plaintiffs


Jerre B. Swann, (admitted *pro hac vice*)
William H. Brewster, (admitted *pro hac vice*)
R. Charles Henn Jr., (admitted *pro hac vice*)
**KILPATRICK STOCKTON LLP**
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Of Counsel for Plaintiffs

35-  PLAINTIFFS' MEMORANDUM (NO. 1 OF 3) IN
      OPPOSITION TO DEFENDANT'S MOTION FOR
      JUDGMENT AS A MATTER OF LAW
21184-0010/LEGAL14297341.2

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222