**Stephen M. Feldman,** OSB No. 932674
sfeldman@perkinscoie.com
**Thomas R. Johnson,** OSB No. 010645
trjohnson@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone:  (503) 727-2000
Facsimile:  (503) 727-2222

       Attorneys for Plaintiffs

**Jerre B. Swann**; jswann@kilpatrickstockton.com
**William H. Brewster**; bbrewster@kilpatrickstockton.com
**R. Charles Henn Jr.**; chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

       Of Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.** and **ADIDAS-SALOMON AG**, <br><br>        Plaintiffs, <br><br> v. <br><br> **PAYLESS SHOESOURCE, INC.**, <br><br>        Defendant. | No. CV01-1655 KI (Lead Case) <br> RELATED CASE to CV03-1116 KI <br><br> **PLAINTIFFS' MEMORANDUM (No. 2 of 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL (i) DUE TO PLAINTIFFS' FAILURE TO PROVE THE FACT OF ACTUAL DAMAGE, AND (ii) ON THE ISSUE OF WILLFULNESS** <br><br> By Plaintiffs adidas America, Inc. and adidas AG |

i-   PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN
    OPPOSITION TO DEFENDANT'S MOTION FOR
    JUDGMENT AS A MATTER OF LAW
LEGAL14295170.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  ARGUMENT ..................................................................... 3

    A.   The Jury's Monetary Award Is Supported By Substantial Evidence That Payless Caused Injury to The adidas Three-Stripe Mark and Superstar Trade Dress ...................................................... 3

        1.   The adidas Three-Stripe Mark and Superstar Trade Dress, and the Associated Goodwill, Are Valuable Brand Assets ................... 3

        2.   adidas Presented Substantial Evidence of Damage and Injury to the adidas Brand As Embodied by The Three-Stripe Mark and Superstar Trade Dress ................................................ 5

            a.   Damage and Injury to Awareness and Distinctiveness ................ 6

            b.   Damage and Injury to Consumer Associations ........................... 9

            c.   Damage and Injury to Perceived Quality ................................... 11

            d.   Damage and Injury to Emotional Connections, including Loyalty ................................................................. 13

            e.   The Jury Specifically Found that adidas Suffered Damage and Injury ................................................................. 13

        3.   adidas Is Entitled To The Full Range of Lanham Act Monetary Relief .................................................................. 14

            a.   An Accounting of Profits Properly Is Based on Willful Infringement Alone ..................................................... 17

            b.   The Evidence Offered By adidas Overwhelmingly Supports An Award of "Damages" (In the Form of A Reasonable Royalty) ................................................................. 18

            c.   adidas Claims of Initial Interest and Post-Sale Confusion Did Not Create a Heightened Burden of Proof to Show Actual Damages ............................................................ 19

            d.   adidas Did Not Have the Burden to Prove Decrease in Brand Equity to Be Entitled to Monetary Recovery ................... 21

    B.   The Jury's Finding of Willfulness – Which It Ultimately Found By Clear and Convincing Evidence – Is Supported by Overwhelming Evidence, and Is Not Contrary to the Clear Weight of the Evidence ....................... 22

        1.   The Jury Finding of Willfulness Was Based on Overwhelming Evidence ................................................................. 22

        2.   Payless Arguments Regarding the 1994 Settlement Agreement Were Rejected by the Jury, and Payless's Strategic Decision Not to Raise Certain Arguments Does Not Create An Issue For Review by This Court ................................................................ 23

ii-  PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW
LEGAL14295170.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**
**(continued)**

Page

      3.    The Jury's Finding of Willfulness as to the So-Called "Category A" Lots is Not Contrary to the Clear Weight of the Evidence ................ 29

III.    CONCLUSION .......................................................................................................... 31

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES

Page

**Cases**

*adidas America, Inc. v. Payless Shoe Source, Inc.*, 529 F. Supp. 2d 1215 (D. Or. 2007) .......................................................................................................................... 20, 27

*Admiral Corp. v. Price Vacuum Stores, Inc.*, 141 F. Supp. 796 (E.D. Pa. 1956) ....................... 18

*Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d 1 (1st Cir. 1993) .................... 17, 18

*Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229 (11th Cir. 2008) ............................................... 6

*Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145 (7th Cir. 1994) ...................................... 6, 15

*Bandag, Inc. v. Bolser's Tire Stores,* 750 F.2d 903 (Fed. Cir. 1984) ......................................... 15

*Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, 597 F.2d 71 (5th Cir. 1979) ................................................................................................................. 6

*Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513 (10th Cir. 1987) ........................................... 21

*Burger King Corp. v. Mason*, 855 F.2d 779 (11th Cir. 1988) .............................................. 15, 17

*Chrysler Corp. v. Silva*, 118 F.3d 56 (1st Cir. 1997) .................................................................. 20

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir. 1979) ..................................................................................................................... 4

*Dr. Seuss Enterprises, LP v. Penguin Books USA*, 109 F.3d 1394 (9th Cir. 1997) ..................... 19

*Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000) ........................................................................ 30

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) .......................... 15, 19

*Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817 (9th Cir. 1980) .......................................... 20

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993) .............................. 14, 15, 17, 19

*Maier Brewing Co. v. Fleischmann Distilling Co.*, 390 F.2d 117 (9th Cir. 1968) ......... 3, 5, 16, 17

*McClaran v. Plastic Industries, Inc.*, 97 F.3d 347 (9th Cir. 1996) ............................................ 19

*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203 (1942) ...................... 4

*Nash v. Lewis*, Civ. Action No. 04-6291 PA, 2007 WL 4565162 (D. Or. Dec. 19, 2007) ................................................................................................................................ 27

*Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 72 U.S.P.Q.2d 1078 (9th Cir. 2004) ....................................................................................................................... 19

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985 (Fed. Cir. 1993) ........................... 20

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272 (9th Cir. 1982) ......................................................................................................................... 5, 16, 17, 30

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266 (2nd Cir. 1987) ..................................................................................................................................... 15

*Schmitz v. City of Wilsonville*, 1999 WL 778586 (D. Or. Sep. 17, 1999) .................................. 27

*Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378 (9th Cir. 1984) ................................................. 30

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ............... 15, 16, 19, 21

*The Keds Corp. v. Renee International Trading Corp.*, 888 F.2d 215 (1st Cir. 1989) ....................................................................................................................................... 20

*Waggoner v. Dallaire*, 767 F.2d 589 (9th Cir. 1985) .................................................................. 28

*Yale Electric Corp. v. Robertson*, 26 F.2d 972 (2d Cir. 1928) ................................................... 12

**Regulations and Rules**

15 U.S.C. §1117(a) ..................................................................................................................... 14

FED. R. CIV. P. 61 ........................................................................................................................ 27

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
## (continued)

Page

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
    (4th ed.) ..................................................................................................... 14, 18, 19, 20

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") respectfully submit this Memorandum in Opposition to Defendant's Motion for Judgment as a Matter of Law or a New Trial (i) Due to Plaintiffs' Failure to Prove the Fact of Actual Damage, and (ii) on the Issue of Willfulness ("Payless Memo #2").

## I.    INTRODUCTION

In its second of three Motions for Judgment as a Matter of Law and New Trial, Defendant Payless ShoeSource, Inc. ("Payless") once again would have this Court view the jury as a mere advisory council, and disregard the substantial weight of the evidence presented by adidas at trial to support both the jury's award of damages and finding of willfulness.[1]

adidas proved at trial that it sustained injury and damage – from Payless's willful and deliberate infringement – to the Three-Stripe Mark and Superstar Trade Dress. adidas proved that its Three-Stripe Mark is a strong and powerful mark with near universal recognition, and that the mark was harmed by post-sale and initial interest confusion, including: (1) a loss of awareness (including a loss of uniqueness based on erosion of the distinctiveness of the brand); (2) a loss of positive associations; (3) harm to perceived quality; and (4) damage to the positive emotional connections, including loyalty, that consumers have with the Three-Stripe Mark. This evidence was essentially undisputed by Payless; in fact, its witnesses corroborated it. The fact of injury resulting from a likelihood of confusion, and independently from dilution, was amply supported; thus, the jury's award of monetary relief is supported by substantial evidence.

Payless's argument that the jury's award of damages should be overturned because adidas did not prove lost profits or lost sales is contrary to the law in the Ninth Circuit, which awards monetary relief based on a "totality of the circumstances," and does not require "actual harm" (or evidence of actual confusion) to recover "damages." Moreover, Ninth Circuit law is clear that an

---

[1] The legal standards governing this Court's review of Payless's post-trial motions are set forth generally in adidas's Memorandum (No. 1 of 3) in Opposition to Payless's Motion for Judgment as a Matter of Law on adidas's Damages Claims, or in the Alternative, for New Trial or Remittitur ("adidas Memo #1"), Section II.A.

1- PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN
OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
LEGAL14295170.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

accounting for profits based upon the infringer's unjust enrichment does not depend on a showing of any injury to the plaintiff. adidas presented substantial evidence from Payless's own internal communications showing a deliberate and willful intent to trade off of the goodwill associated with the adidas Three-Stripe Mark and Superstar Trade Dress.

Payless would have the Court ignore the great weight of this evidence and order a new trial because of the Court's supposed "exclusion" of the early summary judgment ruling – later reversed by the Ninth Circuit – regarding the parties' 1994 Settlement Agreement (the "1994 Agreement"). This contention is wholly without merit. In fact, the trial record does not support the basic foundational premise of Payless's argument. That is, there is no evidence that Payless ever directly attempted to introduce evidence regarding the initial summary judgment ruling; and, likewise, there is nothing in the record to support the notion that any such evidence was explicitly excluded by the Court. Put simply, Payless failed to preserve this issue and, as such, it is now waived.

Payless essentially contends *for the first time* that it would have presented the later overruled district court's summary judgment ruling as evidence of a lack of bad faith. This argument is a legal fiction created for appeal. It is apparent that Payless strategically <u>chose</u> not to introduce this evidence at trial, because there would have been no way for Payless to explain why it then <u>continued</u> to produce two- and four-striped shoes after the Ninth Circuit found its interpretation of the 1994 Agreement to be unreasonable as a matter of law. Payless's argument that it was a "good faith" infringer during this time period is contradicted by the weight of the evidence showing that its behavior was not altered in any way before, during, or after the Ninth Circuit appeal.

Payless also fails to show how it was substantially prejudiced by this purported "exclusion" of evidence regarding the initial summary judgment ruling such that a new trial would be warranted. To the contrary, the Court repeatedly offered to allow Payless to offer evidence of its intent, including evidence pertaining to the 1994 Agreement. The Court never

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

imposed a limitation on the evidence that prevented Payless from fully and fairly arguing to the jury that its actions were not willful based upon its interpretation of the 1994 Agreement. Payless made the arguments in that regard that Payless elected to make.  The fact that the jury rightfully chose to disregard Payless's arguments as not credible does not provide Payless any grounds to seek relief from the jury's verdict.

## II.     ARGUMENT

**A.     The Jury's Monetary Award Is Supported By Substantial Evidence That Payless Caused Injury to The adidas Three-Stripe Mark and Superstar Trade Dress**

### 1.     The adidas Three-Stripe Mark and Superstar Trade Dress, and the Associated Goodwill, Are Valuable Brand Assets

Trademarks – or "brands" – are central to a company: businesses depend upon them to communicate messages to consumers, and consumers rely upon brands in making purchasing decisions.  Forty years ago, in *Maier Brewing Co. v. Fleischmann Distilling Co.*, 390 F.2d 117 (9th Cir. 1968), the Ninth Circuit recognized and explained this concept as follows:

> Earlier in our country's history it may have been necessary to copy both the trade-mark and the product of another in order to obtain a free ride on the good reputation of that product and its maker. In such an instance requiring direct competition between the parties as a prerequisite to the granting of an accounting of profits would have been both just and logical. This, however, is the age of television and mass communications. Fortunes are spent in publicizing a name, often with only slight reference to the real utility of the product. The theory behind this modern advertising is that once the name or trade-mark of a product is firmly associated in the mind of the buying public with some desired characteristic- quality, social status, etc.- the public will buy that product. This psychological effect was recognized by the United States Supreme Court when . . . the Court stated:
>
>> "The protection of trade-marks is the law's recognition of the psychological function of symbols. If it be true that we live by symbols, it is no less true that we purchase goods by them. A trade-mark is a merchandising shortcut which induces a purchaser to select what he wants, or what he has been led to believe he wants. The owner of a mark exploits this human propensity by making every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol. Whatever the means employed, the aim

3-    PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN
OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
LEGAL14295170.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> is the same- to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trade-mark owner has something of value. **If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress**."

*Id.* at 122 (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 205 (1942)) (emphasis supplied). *See also Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir. 1979) ("[T]rademark laws are designed not only to prevent consumer confusion but also to protect 'the synonymous right of a trademark owner to control his product's reputation.'").

Payless's own documents – and testimony by its witnesses – reflect and confirm the key role of brand positioning.[2] While the former Payless CEO purported not to understand the marketing language (*see* Trial Tr., at 2086:16-19), the Payless documents prepared by McKinsey created a brand equity pyramid, with the value of a brand supported by the emotional attachment and benefits its customers would experience. *See* Trial Exh. 237, at 14-15. In fact, under its new CEO, Payless proclaims itself to be a brand-driven company striving to "build a diverse portfolio of leadership brands which forge emotional and long-lasting connections with each target consumer worldwide." Trial Exh. 1005, at 4 (Collective Brands 2007 Annual Report).

Dr. Dhar, Payless's expert, confirms that logos are important because they help consumers understand messages about a company. Trial Tr., at 2648:11-18. Indeed, Dr. Dhar has written:

> Logos are a shortcut to communicate what the brand promises. Having a logo that's visual, it's easy to see from a distance, and it helps people get a quick sense of the company. **When a logo is sort of iconic, people sort of transfer the good feeling they have for the logo. It becomes interchangeable, in a sense**.

---

[2] *See* Trial Tr., at 2083:10-2084:5; Trial Exh. 237, at 14-15 (Mr. Douglass's discussion of the Endeavor Report prepared by McKinsey & Company on Payless's strategy to build brand equity positioning and the importance of same).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*See* Trial Exh. 1068, at 14 (emphasis supplied).  One such category of brand is a "heritage brand," which elicits emotional responses from consumers based upon their experiences, and the brand engenders feelings of trust.  Trial Tr., at 2670:3-13.  Heritage brands are strong and valuable to a brand owner; Dr. Dhar admits, and in fact has written, that adidas is a heritage brand.  *Id.*  This testimony corroborates Dr. Joachimsthaler's testimony that the Three-Stripe Mark is a "pioneering brand."  *See* Trial Tr., at 510:22-511:12.

The adidas fact witnesses – Eric Liedtke, Britt Jorgenson, Lee Kromminga, Mike Klein and Stephen Pierpoint – and the adidas expert witnesses – particularly Drs. Joachimsthaler and Pham – also testified to, and clearly established, the significant brand attributes associated with the Three-Stripe Mark and Superstar Trade Dress.[3]

### 2.    adidas Presented Substantial Evidence of Damage and Injury to the adidas Brand As Embodied by The Three-Stripe Mark and Superstar Trade Dress

The Ninth Circuit has long recognized that a plaintiff may sustain injury in the form of damage to the goodwill of its brand.  *See, e.g., Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) ("As a result of this trademark infringement . . . the reputation and goodwill of the trademark owner is accordingly harmed"); *Maier*, 390 F.2d at 122 (criticizing diversion of sales as the lone measure of harm, and noting that:  "These courts are protecting the trademark owner from only the most obvious form of damages- the diversion of sales, and are not in fact providing protection to the value of the goodwill built up in the trade-mark itself.")  A trademark owner is injured when an infringer trades upon the goodwill of its

---

[3] *See, e.g.* the testimony of Mr. Liedtke, Trial Tr., at 231:5-14 (Three-Stripe Mark is adidas's "defining cosmetic"); 232:25-233:18 (discussing prevalence of use of Three-Stripe Mark on products and packaging); 243:4-8 (noting near 100% recognition of Three-Stripe Mark); 272:24-274:8 (discussing brand attributes of Superstar); testimony of Ms. Jorgenson, Trial Tr., at 322:19-323:13 (Three-Stripe Mark "interchangeable with adidas" in consumer's minds); 364:2-24 (discussing consumer association with Superstar Trade Dress); 379:5-23 (noting that Three-Stripe Mark is the "DNA" of adidas and all marketing is centered around the Mark with the understanding that "consumers connect the three-stripes with [adidas]"); testimony of Mr. Pierpoint, Trial Tr., at 635:12-636:14 (discussing importance of Three-Stripe Mark in sports performance); testimony of Dr. Joachimsthaler, Trial Tr., at 522:17-525:4 (discussing brand attributes of Three-Stripe Mark and its importance); testimony of Dr. Pham, Trial Tr., at 1280:4-24 (discussing benefits of Three-Stripe Mark to adidas).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

brand, and the trademark owner loses the ability to control the brand, whether or not (but particularly if) the quality is inferior.  Thus, "[a] trademark owner may recover for all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts."  *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, 597 F.2d 71, 75 (5th Cir. 1979) (internal quotation marks omitted) (upholding award of a reasonable royalty on ground that plaintiff had sustained injury to its brand and business reputation).[4]

adidas presented testimony regarding several ways that the goodwill associated with the Three-Stripe Mark is harmed by Payless's infringement:  (1) loss of awareness, particularly through loss of distinctiveness; (2) loss of valuable associations; (3) lessening of perceived quality; and (4) loss of positive emotional consumer connections, including loyalty to the brand. *See* Trial Tr., at 529:7-533:4 (Joachimsthaler).

### a.    Damage and Injury to Awareness and Distinctiveness

adidas fact and expert witnesses outlined the significance of consumer perception, including the various perceptions of different customer segments and purchasers.  All segments, ranging from "pure performance" and "style setter" to the "brand driven," depend to varying degrees on the degree to which product is or – more importantly – is not in certain channels of distribution, or shares perceptions of relative scarcity.[5]

---

[4] *See also Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) (upholding jury's award of damages in trademark infringement case where jury was properly instructed that "damages sustained by the plaintiff" included "all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts" such as injury to business reputation or goodwill); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (plaintiff's damages for infringement can include loss of present value or goodwill).

[5] *See* Trial Tr., at 247:23-255:10; 264:17-266:9 (testimony of Mr. Liedtke discussing customer segmentation and how various products are distributed on distribution pyramid); Trial Tr., at 573:17-572:15 (testimony of Mr. Klein regarding adidas's marketing efforts to sell and distribute certain shoes to certain target segments); Trial Tr., at 639:2-640:6 (testimony of Mr. Pierpoint discussing customer segmentation for sports performance shoes); Trial Tr., at 427:4-431:8 (testimony of Mr. Kromminga discussing customer segmentation).

6- PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW
LEGAL14295170.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The testimony overwhelmingly supported the finding that awareness, in terms of distinctiveness, of adidas's Three-Stripe Mark and Superstar Trade Dress is diminished by Payless's sale of infringing shoes.  For example, Dr. Joachimsthaler testified that:

> In terms of sheer awareness and visibility, you have more shoes out there that are four-stripe shoes from - - from Payless.  That dilutes, if you will, the adidas brand, because there are shoes out there that simply are not adidas shoes, but wear the four stripes instead of the three stripes.  That dilutes - - that just **dilutes the awareness of the brand.**

Trial Tr., at 529:15-21 (emphasis supplied).  Dr. Pham also explained that for consumers who mistake Payless shoes for adidas shoes, the adidas shoes suffer a loss of uniqueness, and the distinctiveness of the shoes will be eroded due to the increased number of shoes.  *Id.* at 1324:24-1325:1-6; 1326:4-7.

adidas strategically controls the distribution of products bearing the Three-Stripe Mark and Superstar Trade Dress to sustain their desirability.  Payless's sale of infringing footwear interferes with these critical efforts to control the distribution.  As adidas's Senior Vice President for Global Brand Marketing, Mr. Eric Liedtke, testified:

> Well, we want to keep the Superstar fresh.  You want to continue to keep it at a highly desirable rate so we can, you know, get our – get people, not only the aficionado desiring it, but also the contemporary letterman, the core letterman, the value addict.  This is a shoe that should be desired by all people.
>
> But, to do that, you've got to keep a handle on the number of pairs you put in the marketplace, and you've got to continue to allow more volume or allow less volume.  And right now, I told you we're kind of pinching back on the Superstar in the U.S. to allow less volume.  But we'll open that up again to allow more.
>
> What that allows for us to do is to keep our price point where we want . . . .

*Id.* at 272:2-15.  Mr. Lee Kromminga, adidas's Senior Global Market Research Manager, also testified on this point of damage to adidas:

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

And - - and I think that's one of the - - the bigger challenges here for us, as well. Is that it - - it becomes difficult for us to control the product that we have out in the marketplace because, in part, desirability or coolness - - you know, we talk with teens a lot about, you know, what's cool, and things like that.

Some of that is based on scarcity. You know, you kind of want what not everybody else has. And teens like - - we call it the fit in/stand out dynamic. On the one hand you want to fit in and be like everybody else and sort of accepted, and on the other hand, you want to stand out. So you want to have something that maybe allows you to look a little bit different.

If everybody has something, then your chances of standing out are not so great. So I think in that way, it's - - it can be - - we don't have control over how you can do that.

*Id.* at 451:10-25.

adidas invests substantial time and money to make its products unique and desirable, and to market them with great care to maximize the impact on varying customer segments. When Payless sold the infringing footwear, it was free-riding on and reducing the value of those investments to adidas. For example, Mr. Klein, adidas's head of design for adidas's Originals division testified that a significant part of the adidas marketing effort is to sell certain shoes through certain channels of distribution targeting certain segments, and that the strategy has a "trickle down" impact. *Id.* at 573:17-572:15. However, those carefully crafted efforts are undermined by Payless shoes likely to be confused:

Well, I mean, honestly it just makes it tough, when we're going through and trying to, you know, carve out our position in the market, and then you have a company that's pretty synonymous for lower price point footwear having the same exact models, just adding a stripe or removing a stripe, kind of like makes it difficult to you know - - to do what we're trying to do.

\*\*\*

You know, it just makes it difficult. I mean, you can't - - because it takes a lot of work to go through and either find the trend, come up with the idea, you know, to be the first one to the market with something. And

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> then if someone just comes through behind you, makes it like as cheap as
> possible and, you know, doing exactly what we've put all the hard work
> into, it's - - you know, it's kind of defeating. . .

*Id.* at 589:19-25; 590:11-18.

### b.    Damage and Injury to Consumer Associations

adidas presented substantial evidence that the premium associations consumers have with the Three-Stripe Mark are injured, and diluted, by the Payless infringing shoes. adidas, and not Payless, "stands for performance, innovation, and technology" and the associations that consumers have with those attributes are lessened when they are confused by the Payless shoes. *See* Trial Tr. at 530:3-16 (testimony of Dr. Pham). For example, Dr. Michel Pham described the harm that occurs from initial interest confusion:

> [I]f a consumer is walking in front of a Payless store and mistakenly
> believes that they have seen an adidas shoe at the window of that store, or
> if a consumer reads a newspaper, comes across a newspaper insert for
> Payless and mistakenly encodes that incident as meaning that, okay,
> adidas shoes are available at Payless, then the characteristics of the
> Payless brand, okay, may transfer over to the characteristics of the adidas
> brand in their minds, okay. And that may dilute the image of the adidas
> brand in their mind and therefore tarnish it subjectively, okay.

> [C]onsumers infer in part the quality and the value of products that they
> buy in stores from the quality and the prestige of the store in which they
> buy them.

*Id.* at 1326:13-1327:3. In other words, consumers who are confused – as for example those represented by Dr. Ford's surveys – no longer will retain the same attributes for the Three-Stripe Mark; they now will have other and different attributes. Dr. Pham continued to explain that harm can still occur even when the consumer is initially confused but then discovers that the Payless shoe is not an adidas shoe:

> Even if a consumer somehow was initially confused and then gets
> corrected, then what are they learning out of that? They're learning that
> they cannot trust the stripes anymore that much to make an inference
> about the source, which is adidas. And now you're creating a disconnect

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

between the signaling value, all right, of the stripes mark in consumers'
minds as meaning adidas.

*Id.* at 1328:3-10. This is a "big cost to the adidas brand." *Id.* at 1328:14-15. Mr. Pierpoint,

adidas's Vice President of adidas's Sports Performance Division, testified that the development

and marketing of adidas shoes is an intensive process, *see id.* at 652:21-655:1, and all of that is

undermined by Payless's sale of infringing footwear:

> So when we go through so much effort and so many teams get involved - -
> in a creation of a product from start to when it ends up on a shoe shelf in
> front of your eyes; and all of the efforts that we go through and then the
> marketing that we put behind it in showing the consumers that message . .
> . there's so much that goes into it from us. **And then for somebody to
> just come along behind and copy, just mimic a - - at a very superficial
> level everything that we've put into a product just destroys it,
> everything that we try and do and how we try and sustain our brand
> credibility.**

*Id.* at 654:6-17 (emphasis supplied).

Payless criticizes the concept of consumer association – and the resulting direct impact

on brand attributes – as being "hypothetical" and "subconscious" (*see* Payless Memo #2, at 12);

yet, its own consumer psychologist, Dr. Dhar, recognizes and has written about a range of

consumer psychology principles that involve identical subconscious processing.[6] For example,

study subjects primed with the letter "B" are more likely to confuse the number "13" with a "B."

*See* Trial Tr., at 2668:22-2669:7.

Finally, and significantly for the associations and transfer of associations that occur as a

consequence of Payless's willful infringement, Dr. Dhar also testified about the well-accepted

cognitive psychology principle of "aboutness." As described in Dr. Dhar's published articles,

the "aboutness" principle means that when thoughts or feelings come to mind while a particular

target is considered, those thoughts or feelings are assumed to be relevant by the target, or they

would not come to mind at that moment. *See id.* at 2652:20-2655:1. Thus, not only does the

---

[6] *See generally* Trial Tr., at 2653:1-2665:7 (discussing Dr. Dhar's research and studies on
subliminal priming).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

association "call to mind" adidas, but the person presumes a connection that results in a transfer, and impact on brand attributes. Dr. Dhar admits that this well-recognized phenomenon occurs without the consumer consciously being aware of it. *See id.* at 2658:3-12. Therefore, Dr. Dhar admits that if a customer was walking into a store and recognized a striped shoe and thought of adidas, they could be drawn to it. *See id.* at 2664:3-7.

### c.    Damage and Injury to Perceived Quality

adidas is harmed when it is unable to control the quality of its brand, and harmed still further if the additional associations are perceptions of poor quality. From Payless's own documents, *consumers perceive the inferior quality* of Payless's shoes, noting problems with "foot odor, flexibility, durability, and plastic looks." Trial Tr., at 2091:10-24; Trial Exh. DEF 2914, at 2. *See also* Trial Tr., at 2094:14-24 (discussing "plastic looks" in Endeavor report); Trial Exh. 245, at 10.

The perception of poor quality of the Payless shoes damages the perceived quality of adidas. Dr. Pham testified that:

> [I]f the Payless shoes happen not to be of the same quality and withstand the use and wear of time not as well as the adidas shoes, these quality characteristics, you know, may taint the perceptions of consumers who will observe these qualities and attribute them to be adidas shoes.
>
> So if I see a Payless shoe and I don't know it, I think it's an adidas shoe, and it has a yellowish sole area, I might mistakenly believe that this is - - you know, that those adidas shoes are not well made, for example. So that would tarnish the perception of the adidas brands in terms of its quality in consumers' minds.

*See* Trial Tr., at 1325:7-19.

In addition to the perception of poor quality, the Payless shoes are, in fact, inferior. Norbert Teston, the head of adidas's Quality Department, testified at length regarding serious flaws in the Payless shoes at issue that could be visible in a post-sale context, leading confused consumers to believe that adidas footwear is of poor quality. *See, e.g.*, Trial Tr., at 1198:5-21;

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1233:15-24; 1234:10-1235:1 (detailing construction flaws in the Payless shoes that could be visible to a consumer in the post-sale environment); 1188:1-7; 1200:18-21 (outlining defects in the Payless shoes that could impact the comfort or fit of the shoes); and 1204:10-19; 1205:13-23; 1206:11-21 (explaining how Payless shoes fell apart during testing and could fall apart being worn by consumers).

Dr. Joachimsthaler also explained that the negative perceptions consumers will have of the above-mentioned inferior quality of the Payless shoes will, in turn, damage the adidas brand. He testified that:

> Perceived quality, as I said, is extremely important. The quality levels of Payless shoes, four stripes, are nowhere—nowhere near what adidas is trying to create as adidas in their repertoire….When you lose quality, you know, you can lose everything….And for adidas to have Payless shoes that are not the same quality, but confused as adidas shoes, that—that is nagging at the substance of that particular brand.

*Id.* at 530:18-531:9. This mistaken perception significantly hinders adidas's ability to manage its brand. *See id.* 531:6-12.

adidas's perceived quality is high; with its trademark and trade dress infringements, Payless would take that quality perception into its own hands. adidas's loss of the ability to control its reputation for quality is a form of *injury* and *damage* that the courts have expressly recognized for more than three-quarters of a century. *See Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928).[7]

---

[7] In perhaps the most quoted passage from trademark jurisprudence, Judge Learned Hand describe the loss of control over reputation as follows:

> [I]t has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owners reputation, whose quality no longer lies within his own control. *This is an injury, even though the borrower does not tarnish it, or divert any sales by its use*; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

*Yale Electric Corp.*, 26 F.2d at 974 (emphasis supplied).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### d.    Damage and Injury to Emotional Connections, including Loyalty

The positive emotional connection and loyalty consumers have with the adidas brand is negatively impacted by Payless's sale of infringing footwear. As Dr. Joachimsthaler testified, when consumers are confused by Payless's infringing shoes, "it undermines that bond and that relationship, that emotional connection of loyalty that people have with that particular brand." *Id.* at 531:13-24. Dr. Pham similarly noted that when a mark is diluted, it decreases a consumer's ability to express him or herself through that brand. *See id.* at 1326:4-7.

Payless essentially concedes this impact when it affirmatively touts its own marketing to influence consumer emotional connections. *See* Trial Exh. 1005, at 4 (Collective Brands 2007 Annual Report). If Payless sales and marketing can create positive associations, they likewise – when intentionally infringing – can create great harm to adidas.

### e.    The Jury Specifically Found that adidas Suffered Damage and Injury

There is no doubt that the jury, after hearing the evidence and after careful deliberations, determined that adidas had sustained actual damage. Indeed, the jury could not have reached the verdict that it did absent such a finding. This is because the Court's instructions informed the jurors that they could not find for adidas on the claims at issue without a specific finding of actual damage. For example, with regard to adidas's trademark infringement claim, the Court's instructions clearly required the jury to find, as an element of the claim, that "adidas was damaged by Payless's infringement." *See* Jury Instruction No. 19 ("adidas has the burden of proving each of the following elements by a preponderance of the evidence that . . . adidas was damaged by Payless's infringement"). *See also* Jury Instruction No. 20 (trade dress infringement element that "adidas was damaged by Payless's infringement"); Jury Instruction No. 29 ("the deceptive trade practices has caused actual damages or losses to adidas"); Jury Instruction No. 32 ("caused actual dilution").

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

3.     **adidas Is Entitled To The Full Range of Lanham Act Monetary Relief**

Section 35 of the Lanham Act, 15 U.S.C. §1117(a), governs the award of monetary remedies in trademark infringement cases and provides for:  (1) an award of defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action.

Professor McCarthy notes that "[t]here is a great deal of semantic confusion in the opinions dealing with the award of monetary recovery for trademark infringement and unfair competition."  J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (hereinafter, "*McCarthy*"), § 30:57 (4th ed. 2007).  Payless's post-trial motion fosters that confusion by collapsing different forms of "monetary relief" into a single category it calls "damages," and thereafter failing to make distinctions between a recovery based on an award of defendant's profits and a monetary recovery based on "damages."  Moreover, by failing to cite and rely on Ninth Circuit law, Payless's "actual harm" argument misses the mark entirely, as the Ninth Circuit has no such requirement.  Even if the law did so require, the evidence of harm and injury to adidas's Three-Stripe Mark and Superstar Trade Dress – as detailed above – is more than sufficient to support the jury's award of actual damages; and, similarly, Payless's willful infringement amply supports the jury's award of Payless's profits.

In *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993) , the Ninth Circuit defined "damages" as being measured by "*any direct injury which a plaintiff can prove*, as well as any lost profits."  *Id*. at 1407 (emphasis supplied).[8]  The Ninth Circuit discussion in *Lindy Pen* initially cites to Professor McCarthy's statement that "[a] plaintiff must prove both the fact and the amount of damage" (*id.*), but it also then goes on to (1) establish parameters for that statement and (2) explain what that means – and that it does *not* mean "actual damages," including as follows:

---

[8] Although the Ninth Circuit in *Lindy Pen* declined to award damages, it was because the plaintiff had not shown sufficient evidence to prove the *amount* of actual damages; the court did find that the plaintiff had sustained actual harm due to the defendant's infringing conduct.  982 F.2d at 1410 (rejecting the defendant's cross-appeal that the plaintiff had not established the "fact of damages").

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Other jurisdictions have made a distinction between the elements
necessary to establish a legal basis for liability from those required for
proof of damages.  Although we recognize this distinction,
**"[n]evertheless, an inability to show actual damages does not alone
preclude a recovery under section 1117."  In so holding, we express a
distinct preference for those opinions permitting relief based on the
totality of the circumstances**. *See Burger King Corp.,* 855 F.2d at 781
(plaintiff need not demonstrate actual damage to obtain an award
reflecting an infringer's profits); *PPX Enterprises, Inc. v. Audiofidelity
Enterprises, Inc.,* 818 F.2d 266 (2nd Cir. 1987) (consumer deception, as
opposed to consumer confusion, is sufficient to state a claim for damages)
. . . .

982 F.2d at 1410-11 (emphasis supplied; citations omitted).

The Ninth Circuit reiterated its decision in *Lindy Pen* in *Southland Sod Farms v. Stover
Seed Co.,* 108 F.3d 1134 (9th Cir. 1997) , noting:

Moreover, although the Ninth Circuit in *Harper House* stated that "actual
evidence of some injury resulting from the deception is an essential
element" in a suit for damages under § 43(a), *id.*(emphasis omitted), **a
more recent decision holds that "an inability to show actual damages
does not alone preclude a recovery under section 1117."** *Lindy Pen Co.
v. Bic Pen Corp.,* 982 F.2d 1400, 1411 (9th Cir. 1993) (quoting *Bandag,
Inc. v. Bolser's Tire Stores,* 750 F.2d 903, 919 (Fed. Cir. 1984)). **Under
*Lindy Pen,* the preferred approach allows the district court in its
discretion to fashion relief, including monetary relief, based on the
totality of the circumstances.** *Id.; see also Badger Meter, Inc. v. Grinnell
Corp.,* 13 F.3d 1145, 1157 (7th Cir. 1994)  (stating that, even if a plaintiff
is unable to demonstrate damages resulting from the defendant's § 43(a)
violation, § 1117 allows the district court to award the plaintiff any just
monetary award so long as it constitutes "compensation" for the plaintiff's
losses or the defendant's unjust enrichment and is not simply a "penalty"
for the defendant's conduct).

*Southland Sod Farms*, 108 F.3d at 1146 (emphasis supplied) (reversing grant of summary

judgment based on absence of "sufficient evidence upon which a reasonable factfinder could

conclude that Plaintiffs were injured").[9]  Moreover, explaining the nature of proof sufficient to

---

[9] Payless cites and relies on the earlier *Harper House* decision, which is referenced in the quote
from *Southland Sod Farms* above *(see* Payless Memo #2, at 5, 8, 13), but Payless does so without so
much as noting that the Ninth Circuit expressly declined to follow that case.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

establish "actual injury," the Ninth Circuit in *Southland Sod Farms* went even step further and, in

doing so, made it clear that the proof offered by adidas in this case is sufficient:

> the consumer survey testimony . . . and the market analysis testimony . . .
> provides adequate evidence for a reasonable jury to conclude that
> Plaintiffs suffered actual injury as a result of Defendants' advertisements.
> *See, e.g., Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 525 (10th Cir.
> 1987) (stating that actual consumer confusion entitling a plaintiff to
> monetary damages may be demonstrated through consumer surveys); *U-
> Haul III,* 601 F. Supp. at 1148-49 (basing damage award on market
> analysis).

108 F.3d at 1146 (emphasis supplied).

Courts long have recognized that a plaintiff may sustain injury in the form of damage to

the goodwill of its brand.  As the Ninth Circuit held in *Playboy*:

> In addition to the harm caused the trademark owner, the consuming public
> is equally injured by an inadequate judicial response to trademark
> infringement.  Many consumers are willing to pay substantial premiums
> for particular items which bear famous trademarks based on their belief
> that such items are of the same high quality as is traditionally associated
> with the trademark owner. As a result of this trademark infringement the
> consuming public is denied the benefit of their bargains and the
> **reputation and goodwill of the trademark owner is accordingly
> harmed**. For these reasons, it is essential that the trial courts carefully
> fashion remedies which will take all the economic incentive out of
> trademark infringement.

*Playboy Enterprises*, 692 F.2d at 1275 (emphasis supplied).  Similarly, in *Maier*, the Ninth

Circuit criticized the notion that a trademark owner is only harmed by lost sales:

> These courts are protecting the trademark owner from only the most
> obvious form of damages- the diversion of sales, and are not in fact
> providing **protection to the value of the good will built up in the trade-
> mark itself.** No recognition is given to the possibility that customers who
> believe that they are buying a product manufactured by the plaintiff-
> whether such product is competitive or non-competitive- may be so
> unhappy with that product that they will never again want to buy that
> product or any other product produced by the same manufacturer, who
> they believe to be the plaintiff.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

390 F.2d at 122. Thus, the Ninth Circuit law is clear that monetary relief – i.e., both "damages" and an accounting for profits – is available to adidas in this case based on the evidence presented at trial.

### a. An Accounting of Profits Properly Is Based on Willful Infringement Alone

In terms of an accounting for profits, the Ninth Circuit consistently has held – since *Maier* was decided forty years ago – that an accounting of a defendant's profits can be awarded if the defendant's infringement is "willfully calculated to exploit the advantage in an established mark." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 921 (Fed. Cir. 1984) (applying Ninth Circuit law); *accord Playboy Enterprises,* 692 F.2d at 1274-75 (awarding defendant's profits); *Lindy Pen*, 982 F.2d at 1406 ("This circuit has announced a deterrence policy in response to trademark infringement and will grant an accounting of profits in those cases where infringement yields financial rewards."). More specifically, in *Maier*, the Ninth Circuit emphatically held that one rationale behind Section 35 of the Lanham Act is to prevent the unjust enrichment of the infringing party. *Maier*, 390 F.2d at 123. Because infringement can occur even in cases of non-competing goods, the unjust enrichment rationale means that an accounting for profits can be awarded without the plaintiff needing to demonstrate actual damage to itself in the form of lost profits or lost sales. *Id.* at 122. *See also Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).[10] As *Maier* concluded:

> Thus, it must be determined if the concept of unjust enrichment, utilized 'subject to the principles of equity', will properly serve to effectuate the policies of the Lanham Act. It would seem that it would.
>
> Where . . . the infringement is deliberate and wilful, . . . both the trade-mark owner and the buying public are slighted, if the court provides no

---

[10] The case of *Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d 1 (1st Cir. 1993), which Payless cites in support of its proposition that adidas must show actual harm in order to be entitled to any damages, also holds that damages can be assessed on an unjust enrichment or deterrence theory <u>without</u> a showing of actual harm. *Id.* at 5 ("where defendant's inequitable conduct warrants bypassing the usual rule of actual harm, damages may be assessed on an unjust enrichment theory").

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

greater remedy than an injunction. As the court said in *Admiral Corp. v. Price Vacuum Stores, Inc.*, 141 F. Supp. 796, 801 (E.D. Pa. 1956):

> 'It seems scarcely equitable * * * for an infringer to reap the benefits of a trade-mark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss. To impose on the infringer nothing more serious than an injunction when he is caught is a tacit invitation to other infringement.'

> It would seem fairly evident that the purposes of the Lanham Act can be accomplished by making acts of deliberate trade-mark infringement unprofitable. . . . Such an approach to the granting of accountings of profits would, by removing the motive for infringements, have the effect of deterring future infringements. The courts would therefore be able to protect the intangible value associated with trade-marks and at the same time be protecting the buying public from some of the more unscrupulous members of our economic community.

390 F.2d at 123.

      **b.**     **The Evidence Offered By adidas Overwhelmingly Supports An Award of "Damages" (In the Form of A Reasonable Royalty)**

Because the law is absolutely clear that "actual confusion" and "actual injury" are not required in order for an accounting for profits, Payless's argument can only be that those elements are required for "actual damages."[11]  However, as noted by Professor McCarthy, although "Courts require that a recovery of damages requires proof that some consumers were actually confused or deceived" (*McCarthy* § 30:74), the consensus is that the inquiry does not end there:

> The Restatement confirms that to recover damages, the plaintiff must prove that some customers were actually confused or deceived, but that circumstantial evidence may prove this element:  **"However, direct proof of actual confusion or deception  is often unavailable, and the proof may consist instead of circumstantial evidence such as consumer**

---

[11] In fact, the First Circuit authority relied upon by Payless holding that a plaintiff must prove actual confusion or "actual harm" do relate to actual damages only.  *See Aktiebolaget*, 999 F.2d at 5 (stating that to recover actual damages a plaintiff must prove actual harm, such as the diversion of sales to the defendant).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> surveys, market analysis, or the nature of the defendant's
> misconduct."

*McCarthy* § 30:74 (quoting Restatement (Third) of Unfair Competition, § 36, comment i (1995))

(emphasis supplied). McCarthy goes on to note that the Ninth Circuit would "would favor the

approach, . . . [t]hat is, other kinds of evidence could fill in the gap of no evidence of actual

confusion." *Id.* The cases cited by Payless do not establish otherwise.[12]

### c.    adidas Claims of Initial Interest and Post-Sale Confusion Did Not Create a Heightened Burden of Proof to Show Actual Damages

Payless cites no support for its proposition that adidas had an "increased burden to

demonstrate that it suffered any actual damage" because it alleged initial interest and post-sale

confusion, or that these types of confusion are not widely recognized by the courts. *See* Payless

Memo #2, at 5-6. To the contrary, and as this Court noted in its summary judgment order, it is

widely recognized that a plaintiff's brand can be harmed by both post sale and initial interest

confusion:[13]

> Contrary to the court needing to "buy into" adidas's initial interest and
> post-sale confusion theories, *see* Payless Mem. in Supp. of Summ. J., at 3,
> "[t]he Ninth Circuit has explicitly recognized that the use of another's

---

[12] The case of *McClaran v. Plastic Industries, Inc.*, 97 F.3d 347 (9th Cir. 1996) is factually distinguishable because the plaintiff in that case did not actually sell any goods under the trademark at issue, and therefore the court found that the plaintiff could not establish damages with reasonable certainty. *Id.* at 361. The *Harper House* case is a false advertising case under Section 43(a) in which the court found that there was no evidence consumers were deceived by the defendant's advertisement. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). Moreover, as noted *supra* in footnote 9, the Ninth Circuit subsequently called into question the holding of *Harper House* as being abrogated by the later decision of *Lindy Pen*. *See Southland Sod Farms*, 108 F.3d at 1146.

[13] Contrary to Payless's claims, initial interest confusion does *not* require a plaintiff to demonstrate a lost sale. Specifically, "[i]nfringement can be based upon confusion that creates initial customer interest, *even though no actual sale is finally completed as a result of the confusion.*" *McCarthy* § 23:6 (emphasis added) (emphasis added); *see also Dr. Seuss Enterprises, LP v. Penguin Books USA*, 109 F.3d 1394, 1405 (9th Cir. 1997) ("the use of the Cat's stove-pipe hat or the confusingly similar title to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement"); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 72 U.S.P.Q.2d 1078 (9th Cir. 2004) (defendant who placed links to auto-related websites on his nissan.com website, was held liable for infringement because he was capitalizing on web users initial interest confusion in thinking that this was a web site related to the NISSAN auto company; no lost sales demonstrated).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

trademark in a manner calculated 'to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may still be an infringement.'" *adidas v. Target*, 228 F. Supp. 2d at 1211 (quoting *Dr. Seuss*, 109 F.3d at 1405). Similarly, "the law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e.,* confusion on the part of someone other than the purchaser who, for example, simply sees the item after its has been purchased can establish the required likelihood of confusion under the Lanham Act." *Karl Storz*, 285 F.3d at 854.

*adidas America, Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1240 (D. Or. 2007) .

Recognition of the post-sale confusion doctrine is critical to the protection of reputation. *See Chrysler Corp. v. Silva,* 118 F.3d 56, 59 (1st Cir. 1997) ("[Chrysler's] case depends on what is known as post-sale confusion -- viewers who have an interest from the standpoint of the original creator's reputation and may be misled. Chrysler introduced persuasive evidence that the Viper added greatly to its general reputation, quite apart from sales. Infringers who do a poor job mechanically, or introduce differences that detract, but do not change the apparent origin, were recognized by Congress in enlarging the statute [to post-sale confusion].").  *See also Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 988-91 (Fed. Cir. 1993) (recognizing that as a consequence of post-sale confusion, "the consumer may attribute any perceived inferior quality of Payless shoes to Reebok, thus damaging Reebok's reputation and image").

Moreover, although impact on a specific purchase in the post-sale context is not an absolute requirement,[14] adidas presented sufficient evidence from which the jury could find that

---

[14] Payless erroneously asserts that courts "require the additional element of proof of impact on a purchasing decision before liability can be found." Payless Memo #2, at 6. To the contrary, post-sale confusion does not require the consuming public to draw an adverse inference about the products at issue. *See generally McCarthy* § 23:7. For example, the Ninth Circuit has affirmed the post-sale confusion finding for WRANGLER jeans' use of Levi-Strauss's registered pocket-tab trademark even though there was no claim by the plaintiff, Levi's, that consumers would form an adverse opinion about the blue jeans at issue. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) ("Wrangler's use of its projecting label is likely to cause confusion among prospective purchasers who carry even an imperfect recollection of Strauss's mark and who observe Wrangler's projecting label after the point of sale."). So too, the First Circuit in *The Keds Corp. v. Renee International Trading Corp.*, 888 F.2d 215 (1st Cir. 1989), affirmed a post-sale-confusion finding despite the absence of any claim that defendant's use of a confusingly similar blue tab on the back of canvas shoes would cause consumers to form an adverse opinion of plaintiff's trademarked Keds shoes. *Id.* at 222-23.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

consumers in fact would have an adverse reaction to Payless's shoes and associate that reaction with adidas.

### d. adidas Did Not Have the Burden to Prove Decrease in Brand Equity to Be Entitled to Monetary Recovery

Payless's argument that no damage occurred because the valuation of the adidas brand equity *globally* has increased over time – no matter how many times advanced or repeated – is completely without merit for a variety of reasons. Dr. Pham explained that brand equity valuation – such as captured by the Interbrand study – is driven largely by high level concepts of profitability, and that adidas's expenditure of over $1 billion dollars in U.S. marketing could have driven up the brand valuation. *See* Trial Tr. at 1329:25-1330:19. Dr. Dhar, the Payless expert, admitted that even assuming actual harm to the Three-Stripe Mark, the value of the adidas brand would not necessarily have declined. *Id.* at 2716:21-2717:5. Of course, the jury reasonably could conclude from the evidence that adidas's brand value would have increased even more had Payless not sold the infringing footwear.

The Court also should reject Payless's argument that adidas's expert testimony should be disregarded because it is "purely speculative" and that the experts did not talk to consumers. *See* Payless Memo #2, at 7. The expert testimony was based upon well-established empirical studies, as well as established empirical studies in marketing and consumer psychology. Trial Tr., at 1328:23-1329:4. The expert opinions also were grounded in the survey evidence presented by Dr. Gerald Ford. Dr. Ford presented compelling evidence of post-sale confusion showing that 41% of consumers encountering the Payless shoes are confused. *See id.* at 1056:2-16. This evidence alone is enough to support the jury's conclusion that adidas has been damaged in the post-sale context.[15]

---

[15] *See Southland Sod Farms*, 108 F.3d at 1146 (holding that consumer survey evidence can provide adequate evidence for a jury to conclude that a plaintiff suffered actual injury as a result of a defendant's conduct); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987) (stating that actual consumer confusion entitling a plaintiff to monetary damages may be demonstrated through consumer surveys).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In summary, Payless's argument that the jury's award of damages should be overturned because adidas did not prove lost profits or sales is contrary to the law in the Ninth Circuit, which does not require "actual harm" to recover "damages." The Ninth Circuit has recognized that injury to the goodwill of a brand can occur from infringement even where the plaintiff has not shown lost sales. Indeed, Dr. Dhar admitted that harm to a brand would not necessarily result in decreased sales because "sales is not a direct proxy" to quantify injury to goodwill. *See* Trial Tr., at 2716:21-2717:5. Moreover, Ninth Circuit law is clear that an award of an infringer's profits based upon the infringer's unjust enrichment does not depend on a showing of any injury to the plaintiff.

**B.     The Jury's Finding of Willfulness – Which It Ultimately Found By Clear and Convincing Evidence – Is Supported by Overwhelming Evidence, and Is Not Contrary to the Clear Weight of the Evidence**

**1.     The Jury Finding of Willfulness Was Based on Overwhelming Evidence**

adidas presented compelling evidence that Payless's infringement of its Three-Stripe Mark and Superstar Trade Dress was willful, deliberate, and a bad faith attempt to trade off of the goodwill associated with those marks. adidas presented numerous internal communications of Payless that referred to the Payless lots as "adidas" shoes or other popular adidas styles (such as the Samoa or the Country Ripple), including the following:

- "adidas inspired 4-stripe look a top seller." *See* Trial Exh. 78;

- "adidas knockoff runner." *See* Trial Exh. 209;

- "the original adidas shoe we are interpreting." *See* Trial Exh. 43;

- "modify toe shape as adidas toe, but use 4 Stripe Bottom. . . we really need to copy the original toe closely." *See* Trial Exh. 266;

- "an adidas look a like 4-stripe." *See* Trial Exh. 76; and

- "These new adidas inspired looks are great." *See* Trial Exh. 304;

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*See also* Trial Exhs. 154, 209, 262, 265, 270, 276, 278, 297, 301, 302, 303, 305.[16]  As further

evidence of Payless's willfulness, Payless used adidas shoes as physical "markers" in sample

tracking and advertisement tracking documents (s*ee* Trial Exhs. 162 and 279), which indicates

those shoes were intended to be attention-getting devices.  Payless even purchased the search

term "striped shoes" so that every time a Google user searched this phrase, a sponsored link from

Payless would come up in the search results.  *See* Trial Exh. 560.  Finally, Payless continued to

sell the infringing shoes and came out with even more infringing shoes after the lawsuit was

filed.  *See* Trial Tr. at 1838:23-1839:21 (Pfannansteil).  From all of this evidence of bad faith, the

jury reasonably found that Payless willfully intended to trade off of the goodwill of the Three-

Stripe Mark and Superstar Trade Dress.

> ### 2.    Payless Arguments Regarding the 1994 Settlement Agreement Were Rejected by the Jury, and Payless's Strategic Decision Not to Raise Certain Arguments Does Not Create An Issue For Review by This Court

Payless repeatedly argued to the jury that it relied on the 1994 Settlement Agreement as a

basis for permitting it to make the two- and four-stripe shoes found infringing by the jury.

However, as a threshold matter, ample evidence indicates that:  (1) Payless's "reliance" was a

fiction for trial, and not a view expressed by or to anyone in the aftermath of the 1994 settlement;

and (2) in providing advice to Payless, Payless's counsel did not actually rely on either the 1994

Agreement or the earlier summary judgment ruling by Magistrate Jelderks (and adopted by

Judge Haggerty) that was overturned by the Ninth Circuit, as evidenced by the fact that Payless

did not change its behavior in any way during the course of the case, including, in particular,

after the Ninth Circuit reversal.  Rather, Payless's decision to assert an advice-of-counsel defense

during this litigation was nothing more than a belated attempt to counter the overwhelming

---

[16] adidas incorporates by reference its Memorandum in Opposition to Payless's Motion for Judgment as a Matter of Law on adidas's Liability Claims ("adidas Memo #3"), Section II.B.1.e., and the relevant record citations therein, which offer additional discussion of the evidence presented at trial of Payless's intentional and willful infringement.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

evidence of Payless's intentional efforts to trade on the goodwill of the Three-Stripe Mark and Superstar Trade Dress.

Payless itself chose not to raise the summary judgment ruling that preceded the Ninth Circuit's decision during its defense at trial. Now, however, Payless claims that it was precluded from doing so. That is simply not true; and Payless's failure to cite to any portion of the trial record supporting its claim speaks volumes. Indeed, there is nothing in the record that supports Payless's newly-hatched, post-trial argument. The trial record does not show that Payless either attempted to introduce evidence regarding the earlier summary judgment ruling, or that such evidence was explicitly excluded by the Court. It follows that Payless has waived this argument.

In support of its argument, Payless cites only one specific ruling, which was the Pre-Trial Conference decision related to adidas's motion in limine to exclude evidence inconsistent with the Court's December 2007 summary judgment order. The adidas motion did not extend – on its face – to any other rulings or order, and the Court limited its ruling accordingly:

> Let's deal first the question of either party making any reference to the Court's opinions or findings. You may not do that, unless you find some reason why reference to that order has to come in, which we can then take up outside the presence of the jury. I can't think of any reason at this time.

Pre-Trial Conference Tr., at 47:10-15. The Court went on to consider specific issues *only* from the December 2007 summary judgment order.[17] In that context (which did *not* extend to the pre-Ninth Circuit rulings), the Court specifically *allowed* Payless to introduce evidence in support of its intent arguments:

> Payless argues that some of the evidence is relevant to determining … Payless' intent, that it honestly believed that the '94 agreement allowed use of straight-edged stripes, and obviously other intent factors, that it believed it was non infringing.

---

[17] For example, the Court ruled that certain issues were decided (i.e., abandonment, anti-competitive practices, functionality, etc.), *see* Pre-Trial Conference Tr., at 49:13-19, 50:2-5; in other cases, Payless did not object and the Court granted those discrete items (i.e., adidas precluded from asserting claims, or failure to satisfy contract obligations). *See id.* at 49:20-50:1. The Court did not make any blanket ruling of exclusion.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Id.* at 47:22-48:2.  The Court went further, and stated:

> I am going to *allow* Payless to bring in factors…if it's an issue that was raised as part of the laches defense or otherwise, to determine . . . Payless' intent.  It will come in for those general purposes.  But Payless will have to pose the issues in the proper context, with a proper foundation. . . . We'll have to take that up on an item-by-item basis at trial. You're going to have to set the scene, lay the foundation.

*Id.* at 48:8-24.

Having been permitted to offer evidence in support of its intent, and also offered the opportunity to advance other reasons to reference the Court's December 2007 summary judgment order, Payless never did so.  Even if the Court's Pre-Trial Conference ruling in fact covered all prior orders in the case, which certainly was not explicit, Payless could have introduced (or at least raised with the Court) any factors that Payless believed went to the issue of its intent, which clearly encompasses the earlier summary judgment ruling.  In fact, as indicated above, the Court expressly stated that if the item went to the issue of Payless's intent, it was going to be admissible and, if there was any doubt about whether it went to intent, Payless would need to lay the proper evidentiary foundation.  Payless, however, never even attempted to introduce any evidence related to the earlier summary judgment ruling.  Payless chose instead to say absolutely nothing about it.  Payless has now therefore waived this issue.

The only citations by Payless other than the Pre-Trial conference dialogue are (1) a short passage at the end of the day after the testimony of Ms. Backman (Trial Tr., at 882:1-13); and (2) a short discussion of the fact that the Payless annual reports and 10-Ks contained a passage giving Payless's "version" of the case.  (Trial Tr., at 1985:11-15).  In neither instance did Payless say that it wanted to offer testimony regarding the pre-Ninth Circuit summary judgment ruling, and Payless did not offer any argument whatsoever about why it would do so (including any purported reliance on that ruling).  In the first reference, the Court was clear that Payless was permitted to argue that the 1994 Agreement was evidence relevant to Payless's intent, and even invited Payless to submit a proposed jury instruction regarding same:

25- PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

LEGAL14295170.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> And I'm going to tell both of you that you may submit a proposed
> instruction on the issue of the 1994 settlement agreement and the effect of
> that agreement. I want to have a proposed instruction from both of you. I
> think the jury needs to know that the 1994 settlement agreement does not
> prohibit adidas from asserting the claims in this case. And you've
> stipulated to that as a fact.
>
> **Payless can argue the agreement as it affects its intent.** So I think the
> jury needs to know that the settlement agreement evidence relates solely to
> intent and is not a bar. So submit your proposed instruction on that.

*Id.* at 883:1-13 (emphasis supplied). In the second reference, the Court asked counsel for Payless

what other evidence it wanted to present with regard to the 1994 Agreement, and counsel

indicated that they intended to use it with Mr. Horace to discuss the shoe reviews, and that the

testimony would be limited to "state of mind intent," and nothing more. *Id.* at 1985:11-15.

The Court inquired further, and Payless's counsel said "we'll happily not use that." *Id.* at

1986:1. While the Court raised the issue to "anticipate a problem," that issue did not arise

because at no time did Payless attempt to introduce evidence of *reliance* on the pre-Ninth Circuit

summary judgment ruling through Mr. Horace or otherwise. Payless did not submit an

instruction on the subject that was rejected, nor did Payless ever attempt to make an offer of

proof regarding the matter. Simply put, Payless failed to preserve this issue; it is waived.

Payless's argument (raised now for the first time) that it would have presented the district

court's prior summary judgment order as evidence that Payless produced two- and four-striped

shoes in good faith, is a fiction. The evidence presented at trial shows that Payless did not in fact

rely upon the 1994 Agreement. Although Mr. Horace claimed to have relied upon the 1994

Agreement in providing advice to Payless, he admitted that the Agreement did not expressly

allow Payless to sell shoes bearing two or four stripes with straight edges. *Id.* at 2511:13-17.

Moreover, his testimony about any rights of Payless was contradicted expressly by Mr. Erb. *See*

Trial Exh. 1070, at 165:23-166:7; 166:9-167:8; 167:18-168:17 (Erb deposition testimony).

Significantly, Mr. Horace also wrote a memorandum contemporaneous with the 1994 Agreement

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

summarizing its terms, but *nowhere* in the memo did he include that Payless had the right to sell shoes with two and four non-serrated stripes. *Id.* at 2513:14-2514:1. Furthermore, he did not communicate to any of the Payless buyers, or anyone else in the legal department or management, that Payless had the right to sell shoes with two and four non-serrated stripes. *Id.* at 2513:14-2515:6. Mr. Knops could not even testify that he had even read the entire 1994 Agreement (as opposed to the Horace cover memo). *See* Trial Exh. 1069, at 27:7-28:0.

Payless's contention that it relied upon the 1994 Agreement as well as the summary judgment ruling by Magistrate Jelderks is also undermined by the evidence that Payless continued to produce two- and four-striped shoes even *after* the Ninth Circuit found the initial judicial interpretation of the 1994 Agreement to be unreasonable as a matter of law. Payless's attempt to characterize itself as an innocent infringer is belied by the evidence that its behavior did not change before, during, or after the Ninth Circuit appeal. *See adidas America, Inc. v. Payless Shoe Source, Inc.*, 529 F. Supp. 2d 1215, 1231 (D. Or. 2007) ("Notably, Payless' attorneys did not alter any infringement 'risk assessments' after the Ninth Circuit held that nothing in the agreement precluded adidas from bringing suit for infringement based on the use of straight-edge stripes.").

Even if this evidence had been excluded over its objection (which it was not), Payless has failed to show how a new trial would thus be warranted. To obtain a new trial based on a court's evidentiary ruling, Payless first must demonstrate that the ruling was erroneous and refusal to grant a new trial would be "inconsistent with substantial justice," and second, the error must affect the substantial rights of the parties.[18] Payless has not shown that it was "substantially prejudiced" by any supposed exclusion. Indeed, Payless cites to lengthy testimony from Mr. Horace and Mr. Knops that the Payless shoe reviews were preceded by an analysis of

---

[18] FED. R. CIV. P. 61; *Schmitz v. City of Wilsonville*, 1999 WL 778586, *7 (D. Or. Sep. 17, 1999) (denying motion for new trial where defendant contended evidence was erroneously excluded). *See also Nash v. Lewis*, Civ. Action No. 04-6291 PA, 2007 WL 4565162, *1 (D. Or. Dec. 19, 2007) (denying motion for a new trial and stating that new trial based on the exclusion of evidence "is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party").

27- PLAINTIFFS' MEMORANDUM (NO. 2 OF 3) IN
    OPPOSITION TO DEFENDANT'S MOTION FOR
    JUDGMENT AS A MATTER OF LAW
    LEGAL14295170.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

whether the shoe was permitted under the terms of the 1994 Agreement.  Payless was also free to argue (and did in fact argue) that it had a good faith belief, based upon the 1994 Agreement, that it was allowed to sell two- and four-striped shoes as long as the stripes had non-serrated edges. The jury chose to reject that argument, which was reasonable in light of the lack of credibility of Mr. Horace's testimony, as well as concern about the scope, competence and reliability of the advice.

Payless's contention that adidas somehow "opened the door" to a broader discussion of this evidence is also not persuasive.  In the testimony by Ms. Backman cited by Payless, she merely mentioned that, when she joined adidas as in-house counsel, the present litigation was "on hold" while an appeal was pending.  Trial Tr., at 867:22-868:1.  Ms. Backman did not present any testimony regarding the substance of the appeal or how it related in any way to Payless's actions during the appeal period.  *See* Trial Tr. at 883:14-15 (the Court noted as follows:  "I didn't hear anything that made me think that we got into the Ninth Circuit opinion in any way.").  This testimony caused no prejudice whatsoever to Payless.  To the extent that the Court limited the evidence on the issue of willfulness, it did so reasonably, and Payless certainly cannot show that it was substantially prejudiced or that any limitation of the evidence was "inconsistent with substantial justice."

Finally, Payless contends that the district court's pre-Ninth Circuit ruling somehow is the "law of the case," and therefore asks the Court to find, as a matter of law, that its infringement during the appeal was in good faith.  Payless misapplies the "law of the case" doctrine, which provides that the decision of an **appellate** court on a legal issue must be followed in all subsequent proceedings in same case.  *See Waggoner v. Dallaire*, 767 F.2d 589, 592 (9th Cir. 1985).  The original summary judgment order had no legally preclusive effect whatsoever. Payless took a calculated risk in continuing its infringing acts while the Ninth Circuit appeal was pending, and acted at its own peril.  This risk backfired, and now Payless is trying to use it as a

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

defense against its deliberate and willful behavior.  The Court should reject this argument outright.

### 3.  The Jury's Finding of Willfulness as to the So-Called "Category A" Lots is Not Contrary to the Clear Weight of the Evidence

Payless contends that no support exists for the jury's finding that it willfully infringed the 112 so-called "Category A" lots because these shoes were not exact copies of particular adidas lots.  This argument is premised upon a number of erroneous assumptions.

First, Payless falsely states that adidas did not accuse these particular lots of imitating any of its shoes.  *See* Payless Memo #2, at 25.  To the contrary, adidas accused all of the Payless lots as being likely to be confused with the adidas Three-Stripe Mark, even if they were not ones that Payless admits were "inspired by" particular adidas shoe designs.  Moreover, Payless sold all of the infringing shoes during the same timeframe, using the direct "knock-offs" to promote and sell other shoes.  The use of these "top lots" to sell others reflects willfulness as to all.

Second, contrary to Payless's argument, the so-called "Category A" lots do, in fact, contain lots directly knocking off certain of adidas's styles, including the following:

**Copies of adidas's Country Ripple**



| Lot 22678 | Lot 25836 |

**Copies of adidas's Copa Mundial**

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222



| Lot 31759 | Lot 31663 |

**Copies of adidas's Stan Smith Millennium**



| Lot 13262 | Lot 2479 |

*See also* Lots 25834, 25835, 28874, 28875, 4778, 9222, 9225, 10604, 10648, and 12168 for other lots in "Category A" that clearly copy popular adidas styles.

Finally, Payless erroneously argues that willfulness only can be found as to those lots that were copies or "inspirations" of particular adidas shoes. This is a misstatement of the law. **Willfulness extends beyond exact copying**, and includes use of a confusingly similar mark deliberately intending to trade off of the trademark owner's rights and goodwill. *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984) (finding willfulness where evidence showed that the defendant manufactured goods confusingly similar to plaintiff's in a deliberate attempt to take advantage of the plaintiff's brand identification); *Gracie v. Gracie*, 217 F.3d 1060, 1067-68 (9th Cir. 2000) (upholding award of defendant's profits where infringing mark was not exact copy, and evidence supported jury's finding that defendant willfully intended to cause confusion as to the plaintiff's mark); *Playboy Enterprises*, 692 F.2d at 1274-75 (profits

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

properly awarded where infringement is willfully calculated to exploit the advantage in an
established mark).

adidas presented ample evidence from which the jury could find that Payless deliberately
designed and sold its two- and four-stripe shoes to trade off of the goodwill associated with the
adidas Three-Stripe Mark.  The jury carefully considered each individual accused lot in making
its determination as to whether the shoe infringed adidas's rights and whether such infringement
was willful; it found willful infringement with regard to 267 of 268 lots.  That determination was
not against the clear weight of the evidence, and thus it should not be disturbed.

### III.     CONCLUSION

adidas presented overwhelming evidence of actual harm and injury to the Three-Stripe
Mark and Superstar Trade Dress, and in doing so established a sufficient basis for the jury's
award of damages.  The jury finding of willfulness, which was made at the clear and convincing
level, also supports monetary relief in the form of an accounting.  Payless made tactical decisions
about how to defend its blatant decision to trade on the goodwill associated with the Three-Stripe
Mark and Superstar Trade Dress.  Those decisions resulted in a jury verdict for adidas; Payless's
Motion for Judgment as a Matter of Law and for a New Trial on these issues should be denied in
its entirety.

DATED:  May 19, 2008

**PERKINS COIE** LLP

By:/s/ Stephen M. Feldman
Stephen M. Feldman, OSB No. 932674
Thomas R. Johnson, OSB No. 010645
sfeldman@perkinscoie.com
trjohnson@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222
Attorneys for Plaintiffs

Jerre B. Swann, (admitted *pro hac vice*)
William H. Brewster, (admitted *pro hac vice*)
R. Charles Henn Jr., (admitted *pro hac vice*)
**KILPATRICK STOCKTON LLP**
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Of Counsel for Plaintiffs

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222