William B. Crow, OSB No. 610180
bcrow@schwabe.com
SCHWABE, WILLIAMSON & WYATT
Suites 1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204-3795
Telephone:  (503) 222-9981
Facsimile:  (503) 796-2900

      Attorneys for Defendant Payless ShoeSource, Inc.

William A. Rudy (Admitted pro hac vice)
wrudy@lathropgage.com
(Additional attorneys listed at signature)
LATHROP & GAGE L.C.
2345 Grand Blvd., Suite 2800
Kansas City, Missouri 64108-2612
Telephone:  (816) 292-2000
Facsimile:  (816) 292-2001

      Of Counsel for Defendant Payless ShoeSource, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC., and<br>ADIDAS-SALOMON AG,<br><br>              Plaintiffs,<br><br>v.<br><br>PAYLESS SHOESOURCE, INC.,<br><br>              Defendant. | No. CV01-1655 KI (Lead Case)<br>Related Case  CV03-1116 KI<br><br>**COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S (1) MOTIONS FOR JUDGMENT AS A MATTER OF LAW ON ADIDAS' DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR; AND (2) MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL (i) DUE TO PLAINTIFF'S FAILURE TO PROVE THE FACT OF ACTUAL DAMAGE, AND (ii) ON THE ISSUE OF WILLFULNESS**<br><br>[Reply Memorandum 1 and 2]<br>By Defendant Payless ShoeSource, Inc. |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   DISCUSSION ......................................................................................................6

   A.    The Jury's $137 Million Profits Award Should be Set Aside Because  it is
         not "Just Compensation" to adidas and is Excessive...............................................6

      1.    The Jury's Finding of Willfulness Should Not be Permitted to
            Stand. .................................................................................................7

      2.    The Jury's Profits Award "Double Counts" the So-Called
            "Reasonable Royalty."................................................................................12

      3.    adidas Agrees That the Jury's Profits Award Must be
            Compensatory, not Punitive........................................................................15

      4.    The Jury's Profits Award Is Excessive Because it Bears  No
            Relation to Payless' Actual Profits. ...........................................................16

      5.    The Lanham Act Grants the Court Broad Equitable Discretion to
            Adjust the Profits Award. ........................................................................17

   B.    The $30.6 Million Royalty Award is Duplicative, Speculative and  Fails as
         a Matter of Law in Light of the Evidence in this Case. .........................................18

      1.    The Jury's Award of $30 Million as a "Reasonable Royalty" Is
            Unduly Speculative.................................................................................19

            .........................................................................................................22

      2.    adidas did not Prove it Suffered any Actual Injury,  as it Must to
            Recover Damages. ...................................................................................22

      3.    adidas Cannot Justify Using a "Reasonable Royalty" to Measure
            its Supposed Actual Damages in This Case...................................................27

   C.    The Punitive Damages Award Cannot Stand.......................................................28

      1.    adidas Failed to Establish its Actual Damages, Required by Law as
            a Threshold Matter to Support any Award of Punitive Damages.............28

      2.    The Punitive Damages Award for Extra-Jurisdictional Conduct is
            Unconstitutional Under *State Farm*..........................................................29

D.    adidas Offers Little in its Oppositions to Suggest That the Jury's Enormous Verdict is Equitable. ..........................................................................33

**III.**    CONCLUSION ..............................................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Adray* v. *Adry-Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1995) ............................................................................. 6

*Allen* v. *Tyson Foods*,
  121 F.3d 642 (11th Cir. 1997) ......................................................................... 10

*ALPO Petfoods, Inc. v. Ralston Purian Co.*,
  913 F.2d 958 (D.C. Cir. 1990)................................................................... 16, 17

*Am. Int'l Group, Inc.* v. *Am. Int'l Bank*,
  926 F.2d 829 (9th Cir. 1991) ......................................................................... 10

*Balance Dynamics Corp. v. Schmitt Indus.*,
  204 F.3d 683 (6th Cir. 2000) ................................................................... 15, 17

*Belleville v. Davis*,
  262 Or. 387 (1972)........................................................................................... 28

*Big Dog Motorcycles v. Big Dog Holdings, Inc.*,
  402 F. Supp.2d 1312 (D. Kan. 2005)............................................................... 27

*BMW of North America* v. *Gore*,
  517 U.S. 559 (1996)......................................................................................... 32

*Bosely Medical Institute, Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005) ................................................................... 24, 26

*Castrol, Inc.* v. *Pennzoil Quaker State Co.*,
  169 F. Supp.2d 332 (D.N.J. 2001) ................................................................... 7

*CollegeNET, Inc. v. XAP Corp.*,
  483 F. Supp. 2d 1058. 1065 (D. Or. 2007) ................................................. 7, 8

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
  94 F.3d 376 (7th Cir. 1996) ................................................................... 24, 26

*Faberge Inc. v. Saxony Prods., Inc.*,
  605 F.2d 426 (9th Cir. 1979) ................................................................... 17, 18

*Frank Music Corp.* v. *Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ......................................................................... 14

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

*Freund v. Nycomed Amersham,*
    347 F.3d 752 (9th Cir. 2003) ........................................................ 32

*Getty Petroleum Corp. v. Bartco Petroleum Corp.,*
    858 F.2d 103 (2d Cir. 1988)........................................................ 15

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,*
    423 F.3d 539 (6th Cir. 2005) ........................................................ 26

*Go Medical Indus. v. Inmed Corp.,*
    471 F.3d 1264 (Fed. Cir. 2006)........................................................ 28

*Goddard v. Farmers Ins. Co.,*
    179 P.3d 645 (Or. 2008) ........................................................ 29

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    355 F.3d 1327 (Fed. Cir. 2004)........................................................ 20

*GTFM Inc. v. Solid Clothing Inc.,*
    215 F. Supp. 2d 273 (S.D.N.Y. 2002)........................................................ 13

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,*
    240 U.S. 251 (1916)........................................................ 13

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    889 F.2d 197 (9th Cir. 1989) ........................................................ 23

*Hickson Corp. v. Northern Crossarm Co.,*
    357 F.3d 1256 (11th Cir. 2004) ........................................................ 10

*Holiday Inns, Inc. v. Alberding,*
    683 F.2d 931 (5th Cir. 1982) ........................................................ 18

*Hughes Tool Co. v. Dresser Indus., Inc.,*
    816 F.2d 1549 (Fed. Cir. 1987)........................................................ 21

*Image Technical Services, Inc. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997) ........................................................ 21

*Johansen v. Combustion Engineering, Inc.,*
    170 F.3d 1320 (11th Cir. 1999). ........................................................ 32

*Juicy Couture, Inc. v. L'Oreal USA, Inc.,*
    2006 WL 1359955 (S.D.N.Y. May 18, 2006) ........................................................ 28

*Kamar Int'l, Inc. v. Russ Berrie and Co.,*
    752 F.2d 1326 (9th Cir. 1984) ........................................................ 14

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

*Libman Co. v. Vining Industries, Inc.*,
   69 F.3d 1360 (7th Cir. 1995) ........................................................ 26

*Lindemann Maschinenfabrik v. American Hoist & Derrick Co*,
   895 F.2d 1403 (Fed. Cir.1990)...................................................... 19

*Lindy Pen Co.* v. *Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) .................................... 15, 17, 23, 24

*M2 Software Inc. v. Viacom*,
   223 Fed. Appx. 653 (9th Cir. 2007)............................................... 19

*Mackie v. Rieser,*
   296 F.3d 909 (9th Cir. 2002) ........................................................ 20

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
   390 F.2d 117 (9th Cir. 1968) ........................................................ 17

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ........................................................ 26

*McClaran v. Plastic Industries, Inc.*,
   97 F.3d 347 (9th Cir. 1996) .......................................................... 21

*Micro Chemical, Inc. v. Lextron, Inc.*,
   161 F. Supp.2d 1187 (D. Colo. 2001).......................................... 20

*Nintendo of Am. Inc.* v. *Dragon Pacific Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ........................................................ 13

*Northern Pac. Ry. v. Herman,*
   478 F.2d 1167 (9th Cir. 1973) ........................................................ 8

*Nutting* v. *RAM Southwest, Inc.*,
   69 Fed. Appx. 454 (Fed. Cir. 2003).............................................. 13

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001).......................................................... 20

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
   692 F.2d 1272 (9th Cir. 1982) ...................................................... 19

*Polar Bear Productions, Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ........................................................ 21

*Ramada Inns*, *Inc.* v. *Gadsden Motel Co.*,
   804 F.2d 1562 (11th Cir. 1986) .................................................... 13

*Rite-Hite Corp. v. Kelly Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)........................................................................ 20

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir 1997) ........................................................ 17, 18, 22, 23

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003)........................................................................ 29, 30, 31

*Symantec Corp.* v. *CD Micro Inc.*,
    286 F. Supp. 2d 1278 (D. Or. 2003) ................................................................. 17

*Synergistic Int'l, LLC v. Korman*,
    470 F.3d 162 (4th Cir. 2006) ....................................................................... 8

*Tamko Roofing Prods., Inc.* v. *Ideal Roofing Co.*,
    282 F.3d 23 (1st Cir. 2002).......................................................................... 7

*Taylor Made Golf Co. v. Carsten Sports, Ltd.*,
    175 F.R.D. 658 (S.D. Cal. 1997) ............................................................ 15, 23

*Tripati v. Henman*,
    857 F.2d 1366 (9th Cir. 1988) ...................................................................... 9

*Trovan, Ltd.* v. *Pfizer, Inc.*,
    2000 WL 709149 (C.D. Cal. May 24, 2000) ............................................ 28, 29

*Versa Prods. Co.* v. *Bifold Co.*,
    50 F.3d 189 (3d Cir. 1995)......................................................................... 7

*Watec Co., Ltd. v. Liu*,
    403 F.3d 645 (9th Cir. 2005) ....................................................................... 17

*Winterland Concessions Co.* v. *Fenton*,
    835 F. Supp. 529 (N.D. Cal. 1993) ................................................................ 16

**Statutes**

15 U.S.C. § 1117(a) ....................................................................... 2, 15, 17

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433 (1981)............... 9

2 McCarthy § 30:27, at 511 (2d ed. 1984).......................................................... 23

5 J. Thomas McCarthy,
MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4TH ed. 2006) §§ 30:85-87). ............ 27

-
COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

5 McCarthy § 30.74 ................................................................................................... 23

5 McCarthy § 30:59 ............................................................................................... 17, 18

Ala. Code § 6-11-21 .................................................................................................... 31

Alaska Stat. § 09.17.020 ............................................................................................. 31

Colo. Rev. Stat. §§ 13-64-302.5, 13-25-127(2) ......................................................... 31

Fed. R. Civ. P. 50(a) ................................................................................................... 32

Lanham Act § 35(a) ..................................................................................................... 17

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

Defendant Payless Shoesource, Inc. ("Payless") respectfully submits this Combined Reply Memorandum in further support of its (1) Motions for Judgment as a Matter of Law on adidas' Damage Claims or, in the Alternative, for a New Trial or Remittitur, and (2) Motions for Judgment as a Matter of Law or a New Trial (i) Due to Plaintiff's Failure to Prove the Fact of Actual Damage, and (ii) On the Issue of Willfulness.[1]  Payless' two motions are supported by its original Memorandum No. 1 of 3 and Memorandum No. 2 of 3 ("Mem. No. 1" and "Mem. No. 2"), and this combined reply responds to adidas' Opposition Memorandum No. 1 of 3 and Memorandum No. 2 of 3 ("adidas Opp. No. 1" and "adidas Opp. No. 2").

## I.     INTRODUCTION

adidas' two damages Opposition briefs highlight why the jury's unprecedented award of more than $305 million should be vacated or substantially reduced.  Time and again, adidas ignores or misstates the legal principles that act as a bar to most, if not all, of the money awarded by the jury, and adidas relegates to an afterthought the Court's equitable discretion over the jury's excessive verdict.  Missing from adidas' four-page statement of the legal standard it claims applies to these motions (*see* adidas Opp. No. 1, at 4-8) is any reference to the Lanham Act, the federal statute that serves as the sole basis for the jury's award of a $30.6 million "reasonable royalty" and its overlapping award of $137 million in Payless' profits.

Contrary to adidas' suggestion, the Court in a Lanham Act case is not the jury's "rubber stamp."  The Lanham Act directs the Court to assess a just, non-punitive award and expressly

---

[1]     Payless is filing a separate Reply Memorandum in further support of its Motion for Judgment as a Matter of Law on adidas' Liability Claims or, in the Alternative, for New Trial.

grants the Court broad discretion to ensure that any award comports with principles of equity and fairness.[2] 15 U.S.C. § 1117(a).

Starting from the erroneous premise that the Court must go out of its way to uphold the jury's verdict,[3] adidas' Oppositions actually help to crystallize the reasons why the jury's award should either be vacated or substantially reduced.

*First*, the jury's profits award fails because its finding that Payless was a "willful" infringer fails. Payless was substantially – and irreparably – prejudiced by the Court's refusal to permit it to introduce evidence that, for more than three years following decisions by Magistrate Judge Jelderks and Chief Judge Haggerty, Payless sold the shoes alleged to be infringing in conjunction with an order of this Court holding as a matter of law that it had the right to do so. While this evidence should preclude any finding of willfulness as a matter of law for any time *prior* to the Ninth Circuit's 2006 reversal of Chief Judge Haggerty's summary judgment order, at the very least the jury was entitled to know that Payless was acting in accord with a Court order in selling these shoes when the jury was assessing Payless' mental state – *i.e.,* determining whether Payless was acting unreasonably or in conscious disregard of adidas' rights.

adidas does not seriously contend that this information was not relevant or that its exclusion was not prejudicial. Having invited this error by its own motion *in limine*, adidas tries

---

[2]     The Court has already recognized that, for purposes of determining what injunctive relief, if any, it will order, it treats the jury's verdict as advisory only. (Trial Tr. at 3268:8-9) ("It is my intention to treat the jury verdict as an advisory verdict with regard to the shoes that are involved in the case.").

[3]     adidas' effort to shield the jury's excessive verdict from post-trial review is not limited to overstating the deference owed to an erroneous award. adidas tries to suggest that *Payless* waived or invited error on the most egregious problems, and as a result the Court should not even consider the legal defects and inequities in the verdict as rendered. As explained *infra*, not one of adidas' claims of waiver or invited error has any merit.

to insulate this prejudicial ruling from review by claiming that Payless waived it. This waiver argument is meritless.

This willfulness finding also fails because, over Payless objections, the Court did not instruct the jury that willfulness must be proved by clear and convincing evidence. adidas asks the Court to ignore a recent decision of this Court holding that willfulness must be proved by clear and convincing evidence, as well as the many other decisions that are consistent with it, and instead it asks the Court to rely on a Ninth Circuit case and other authorities that do not address the relevant evidentiary standard. Payless waived none of its objections, the errors were prejudicial, and they require the willfulness finding be vacated and the profits award be set aside.

*Second*, there is no serious question that the jury's award double counts the $30.6 million "reasonable royalty" as part of its $137 million award of Payless' profits. adidas in essence admits this, and suggests the Court can cure this double counting by reducing the combined royalty and profits awards from $167.6 million to $137 million. (*See* adidas Opp. No. 1, at 16 n.10.) While the Court must do at least that, it should do more. adidas does not cite a single case from any jurisdiction allowing the recovery of a "reasonable royalty" *in addition to* defendant's profits – because no such case exists. Paying a royalty is the equivalent of paying a percentage of one's profits; to award full profits *on top of that*, without deducting the royalty awarded, is plain double counting and is something that all authorities agree is impermissible. The fact that the jury determined Payless' statutory profits to be less than adidas' 'maximum case' does not make the verdict of *both* profits and a royalty any less duplicative.

*Third*, the jury's profits award of $137 million is also improper because it exceeds by nearly a *factor of seven* the *actual profits* Payless made on the infringing shoes. This is not a

case where there was a dispute over Payless' costs, and thus this is not a case where adidas can maintain that Payless did not prove its costs. The lone issue was whether costs that both sides agreed Payless actually incurred – and that both sides agreed should be attributable to sales of the infringing shoes as a matter of proper GAAP accounting – should or should not be ignored in arriving at statutory "profits" under § 1117(a). adidas claims that the jury's award controls because its expert testified that these admitted costs should be disregarded, but expert testimony alone is no justification for ignoring GAAP. This is a matter that the Court should consider in assessing the proper measure of any profits award, to ensure that it is not punitive and does not grant adidas a windfall.

*Fourth*, the $30.6 million "reasonable royalty" awarded by the jury is contrary to law because it is speculative[4] and exceeds Payless' anticipated profits from sales of the infringing shoes. As adidas acknowledges, courts have consistently held that a royalty rate that exceeds an expected profit margin is "*ipso facto*" arbitrary. The error is compounded here, where the excessive royalty hypothesized by adidas' expert Mr. Drews, and accepted by the jury, invites speculation about whether and how much Payless might have raised prices to pay for such a royalty and what impact such a price rise would have had on sales of shoes.

Indeed, there is no basis for an award of a reasonable royalty – or any other monetary award – because adidas did not introduce substantial evidence at trial that it suffered *any actual harm*, which precludes any award of monetary (as opposed to injunctive) relief. The Opposition

---

[4]    Adidas relies principally on patent cases, and the Patent Act authorizes an award of a hypothetical reasonable royalty. However, the weight of trademark authority holds the Lanham Act does not, absent a prior licensing history between the parties or if plaintiff had a licensing program that would have included defendant. Neither situation is present here.

does not identify *a single record cite* where adidas offered evidence of actual harm it suffered as a result of Payless' conduct.  In contrast to cites and quotes from testimony about the type of injury that *could* result in a case like this, referenced again and again by adidas, it elected *not* to conduct any survey (which its expert admitted could have been conducted) to show that any of the harms that could theoretically occur in initial interest and post-sale confusion situations *had in fact occurred* in this case.  Thus adidas did not offer evidence of even one instance of diminished consumer loyalty or affection; loss of brand control; diminished reputation for quality; loss of advertising or endorsement value; lost sales and/or lost profits; or actual marketplace confusion.  Testimony from academics and uncontested literature concerning the possibility of harm is not a substitute for proof that adidas actually suffered such harm.

   *Fifth*, the $137 million punitive damages award cannot stand under any circumstances.  Punitive damages may not lie absent proof of an amount of *actual* damages, as distinct from measuring compensation based on a surrogate measure of a hypothetical royalty, which adidas failed to prove.

   Furthermore, while the Opposition yet again mischaracterizes Payless' arguments, adidas cannot constitutionally recover under a particular state's law punitive damages for sales made by Payless throughout the country, including in many States where its actions were not subject to punitive damages under state law.  adidas tries to re-characterize its claim as based upon the "common law" of fifty states, but this is not a claim adidas ever asserted before this Opposition.

   *Finally*, the verdict is excessive and unjust under the totality of the circumstances.  This may be one of the largest trademark verdicts in history.  It comes in a case where there is no evidence of actual confusion, no evidence of a single lost sale and no evidence of any other

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

concrete damage to adidas.  It comes in a case where adidas seeks to extend its mark over three parallel, equally spaced, equal width stripes to give it control over the sale of shoes that have two or four stripes, sometimes equally spaced and sometimes not, sometimes the same color and sometimes not, sometimes parallel and sometimes not.  And it comes in a case where the Court initially agreed with Payless' position and entered summary judgment in Payless' favor.  The verdict would cripple a company whose entire business is providing shoes to customers of the type that adidas eschews and who cannot afford adidas' products.  adidas offers little to suggest that the current verdict would not provide it with a windfall, and its misleading reference to Payless' recent earnings call is a not-so-veiled request for the Court to punish Payless. Make no mistake, Payless was stunned by this verdict, which is not a fair award under any rational metric.

## II.     DISCUSSION

### A.     The Jury's $137 Million Profits Award Should be Set Aside Because it is not "Just Compensation" to adidas and is Excessive.

To recover Payless' profits under § 1117(a)(1), adidas must prove that Payless' infringement was "willful."  *See Adray* v. *Adry-Mart, Inc*., 76 F.3d 984, 988 (9th Cir. 1995). Here, the jury's willfulness finding fails as a matter of law because Payless was not allowed to tell the jury that, for more than three of the years during which adidas accused Payless of infringement, Payless was selling its shoes in accordance with an Order from this Court holding that Payless had the legal right to do so under the terms of a 1994 agreement between the parties. This evidence is fundamental to any assessment of willfulness for at least the period when Payless was selling infringing shoes under the auspices of a court order saying it had the right to do so.  Its exclusion was prejudicial error that requires either JMOL or a new trial.

Furthermore, the Court – over Payless' objection – did not instruct the jury that it was required to find willfulness by clear and convincing evidence. Contrary to adidas' claim (*see* adidas Opp. No. 2, at 23-27), Payless did not waive either error. Because the willfulness finding must be vacated, so must the jury's profits award.

Finally, even if the Court determines that the jury found willfulness sufficient to permit an award of Payless' profits to adidas, the jury's "accounting" under § 1117(a)(1) does not survive either equitable or legal scrutiny.

### 1.     The Jury's Finding of Willfulness Should Not be Permitted to Stand.

#### (a)     *The Willfulness Instruction was Prejudicial Error.*

The Court declined to instruct the jury that willfulness must be proved by clear and convincing evidence, as Payless requested. Although adidas argues that the proper burden of proof is "preponderance of the evidence," not "clear and convincing evidence," the Opposition does not cite – nor has adidas ever cited – a single federal case where a court held that the proper standard to prove willfulness as a prerequisite for an accounting of profits is by a preponderance of the evidence. (*See* adidas Opp. No. 1, at 20-22.)

By contrast, multiple cases, including a recent decision of this Court, have held that willfulness must be shown in a Lanham Act case by clear and convincing evidence.[5]  adidas

---

[5]     *See, e.g.*, *CollegeNET, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058. 1065 (D. Or. 2007); *Tamko Roofing Prods., Inc.* v. *Ideal Roofing Co.*, 282 F.3d 23, 29 (1st Cir. 2002) (clear and convincing evidence is proper standard for finding willfulness); *Castrol, Inc.* v. *Pennzoil Quaker State Co.*, 169 F. Supp.2d 332, 342 (D.N.J. 2001) (same); *Versa Prods. Co.* v. *Bifold Co.*, 50 F.3d 189, 207-08 (3d Cir. 1995) (clear and convincing evidence standard for willfulness ensures "competitors are not penalized by increased damages awards without compelling evidence").

instead relies on two court decisions and a Ninth Circuit Model Jury Instruction, *none of which even discusses the burden of proof for willfulness under the Lanham Act.*

In *Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000), the Ninth Circuit affirmed a jury instruction defining "willfulness." *Gracie* says nothing about the proper *burden of proof* to support a finding of willfulness, which was not the subject of any aspect of the Court's decision. *Harrods, Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 679 (E.D. Va. 2001), is a district court decision from another Circuit that addresses relief under the Anti-Cyber Squatting Protection Act – *not* the Lanham Act – which does not authorize any monetary recovery.[6]

Like adidas' other authorities, the Ninth Circuit Model Jury Instruction 15.27 makes no mention of the burden of proof needed to show willfulness. The Opposition cites to nothing to support adidas' flip suggestion that clear and convincing evidence "of course is included in all instructions where the heightened evidentiary requirement applies." (adidas Opp. No. 2 at 21.)

Finally**,** adidas argues that, even if clear and convincing evidence is the requisite standard, the award of punitive damages satisfies this requirement by substitution. (*See* adidas Opp. No. 1 at 20-21.) adidas contends that since certain case law holds that the terms "willful" and "malicious" may be used interchangeably, the deletion of the word "willful" is immaterial. (See id.) This is not the law. *See Northern Pac. Ry. v. Herman*, 478 F.2d 1167, 1171 (9th Cir. 1973) ("Error in a specific instruction is not cured by general statements which set out the respective contentions."). Even if the two terms could be used interchangeably, the jury was

---

[6]    The Opposition (*see* adidas Opp. No. 2, at 21 n.15), miscites a case cited by the court in *CollegeNET*, *see* S*ynergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006), to imply that the Fourth Circuit held willful trademark infringement may be proven by a preponderance of evidence. The *Synergistic* court, however, made no statements whatsoever to that effect. *Id.*

never instructed that it should treat these terms as synonymous and it cannot as a legal matter be presumed that the jury did so.

> (b)    *Payless Suffered Severe Prejudice as a Result of the Exclusion of Key Evidence of the Court's Summary Judgment Order.*

The prejudicial impact of this incorrect evidentiary standard was compounded by the erroneous exclusion of evidence that demonstrated that Payless could not have been acting willfully. Contrary to adidas' Opposition arguments, evidence showing that for more than three years Payless was operating in accordance with a Court order precludes any objective finding of Payless' "willful infringement" for at least that period of time as a matter of law, and possibly before and after. *See, e.g.*, *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal") (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433, at 308 (1981)). While the Ninth Circuit ultimately may have concluded that Payless' interpretation of the 1994 Agreement was incorrect, the conduct of a party complying with a court Order finding it had the right to so act cannot be objectively unreasonable at least for the period the Court order permitted the conduct.

Thus, even if the Court's Order was not preclusive on the issue of willfulness, at a minimum the jury should have been permitted to consider in assessing Payless' conduct.

adidas exploited the exclusion of this evidence by arguing to the jury that the use of the 1994 Agreement was a *post hoc* excuse raised by Payless on the eve of trial. (*See* Mot. at 23; Trial Tr. at 160:1-161:8.) Had the jury been presented with the full factual record, it would have likely come to a different conclusion. Excluded evidence is material if it *might* have affected the outcome. *See, e.g.*, *Hickson Corp.* v. *Northern Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.

2004) (defining a 'material fact' in a trademark action as one "that might affect the outcome of the case") (citing *Allen* v. *Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997)); *see also Am. Int'l Group, Inc.* v. *Am. Int'l Bank*, 926 F.2d 829, 833-34 (9th Cir. 1991) (Kozinski, J., dissenting) (same).  Given the jury's $305 million award, including an award of $137 million that required finding willfulness and an additional punitive damages award of $137 million, there is no credible argument that this information would not have been material to whether Payless' conduct was objectively reasonable for all, or at least some, of the nine-year period at issue.

(c)     *Payless did not Waive its Objections to the Exclusion of Critical Evidence Concerning Willfulness.*

adidas does not seriously contest the probative nature of the excluded evidence and hinges it hopes on "waiver."  (*See* adidas Opp. No. 2 at 24.)  Its waiver argument lacks any merit. The crucial evidence was excluded at adidas' request, in response to adidas' motion *in limine* and Payless' desire to admit this evidence is well documented.

First, in its Motion *in Limine* to Exclude Evidence and Argument Inconsistent with the Court's Summary Judgment Order (D.E. 693), adidas argued that "Payless should not be permitted to introduce evidence or arguments that it complied with any alleged non-infringement design standards in the parties' 1994 Settlement Agreement or that the Settlement Agreement

otherwise precludes adidas from asserting its claims" because, "[t]he Ninth Circuit has expressly rejected Payless' assertion." "(*Id.* at 4 citing D.E. 662, Op. and Order, Dec. 21, 2007 at 79-80.) Payless opposed this Motion and urged the Court to allow Payless to introduce evidence of the 1994 Settlement Agreement, but lost.  (D.E. 758 at 2; *see also id.* at 8.)[9]

Second, Payless listed Judge Jelderks' October 8, 2002 Findings and Recommendation and Chief Judge Haggerty's January 6, 2003 Order (*see* D.E. 762 at 3; *see also* Def's Exs. 3268 and 3269), as *proposed trial exhibits*.  At the time adidas acknowledged that Payless sought to introduce this evidence because of Payless' "obvious belief that those prior orders contain important information that would be appropriate for the jury to consider." (*See* D.E. 762 at 3.)

Third, the Court confirmed during adidas' case-in-chief that any reference either to the 1994 agreement, including the Court's rulings with respect to it, was off-limits.  At sidebar during the cross-examination of Vanessa Backman, adidas' in-house counsel, trial counsel for Payless inquired whether, because Ms. Backman had made reference to the Ninth Circuit ruling on direct examination, he could cross-examine Ms. Backman on it.  The Court responded: "Well, everybody needs to be careful.  No, you may not inquire about the appeal on cross.  We have a motion *in limine* on that subject." (*See* Trial, Tr. at 884:1–11.)

Finally, during the direct examination of Steven Douglass, Payless sought to show the jury an excerpt from its 10-K in which described the pending adidas litigation.  adidas' counsel

---

[9]      While ruling from the bench the Court stated, "Let's deal first with the question of either party making any reference to the Court's opinion or findings.  You may not do that, unless you find some reason why reference to that order has to come in, which we can then take up outside the presence of the jury."  (Trial, Tr. at 47:10-15.)  Nothing in the transcript limits this ruling, as the Opposition argues, just to the Court's December 21, 2007 Order.

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

objected to this exhibit on the grounds that the document's language, which discussed the

Court's pre-appeal rulings and the subsequent appeal, violated the Court's *in limine* ruling.  (*See*

Trial, Tr. at 1981.)  The ensuing discussion demonstrates that the *in limine* ruling covered both

the 2003 summary judgment rulings and the Ninth Circuit appeal:

> MR. BREWSTER:  … And I believe it's going to turn out that that – *that portion of those exhibits would violate your Motion in Limine with respect to the Ninth Circuit decision*.
>
> \*\*\*
>
> MR. RUDY:  …But it made some mention, I believe, of the prior rulings and summary judgment that were overturned by the Ninth Circuit …
>
> THE COURT:  Well, yes, I ruled on that.
>
> (Trial, Tr. at 1984:1–1985:23 (emphasis added).)  Payless did not waive its objection to

the Court's exclusion, at adidas' request, of the summary judgment Order and other evidence of

the 1994 settlement agreement relevant to willfulness.

### 2. The Jury's Profits Award "Double Counts" the So-Called "Reasonable Royalty."

adidas concedes that the jury adopted Mr. Sickler's "Alternative A" measure of Payless'

profits, $137 million.  adidas further concedes that the jury did not discount that amount by its

separate, $30.6 million royalty award.  This failure comprises a clear double recovery – a point

admitted by Mr. Sickler under cross-examination (Sickler, Tr. at 1626:14-20) – in violation of

the law and the Court's Jury Instruction.

> (a) *adidas Concedes, as it Must, That the Jury's Award Probably Double Counted Payless' Profits*.

adidas, reluctantly, admits of this possibility in its Opposition.  (*See* adidas Opp. No. 1 at

16 n.10.)  For the jury's profits award (of $137 million) to be construed as not subsuming the

"reasonable royalty" award (of $30.6 million), adidas would have had to offer evidence that

Payless' profits from its sales of the infringing shoes was $167.61 million.  adidas did not do so.

The jury's award admits of no possibility *other than* "double counting" of what the jury (in error)

found as Payless' profits.  This is impermissible.

adidas' Opposition does not even mention Payless' authorities, much less distinguish

them.  While § 1117(a) provides, where the evidence warrants, for plaintiff's recovery of (1)

"defendant's profits" for willful infringement, plus (2) any damages "sustained by the plaintiff,"

*no court anywhere* has ever allowed a partial award of a defendant's profits as a proper measure

of a plaintiff's actual damages – here, the royalty award – *plus* disgorgement of the *same profits*.

*See Nintendo of Am. Inc.* v. *Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("The

recovery of both plaintiff's lost profits *and* disgorgement of defendant's profits is generally

considered a double recovery under the Lanham Act."); *accord Nutting* v. *RAM Southwest, Inc.*,

69 Fed. Appx. 454 (Fed. Cir. 2003) ("There is significant authority for the proposition that the

plaintiff's lost profits and  the defendant's profits are mutually exclusive categories of recovery

for trademark infringement, and that a plaintiff must choose between one or the other.").

adidas instead cites three cases in support of this double recovery.  (*See* adidas Opp. No.

1, at 12-13 & n.6 (citing *Ramada Inns*, *Inc.* v. *Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th

Cir. 1986); *Hamilton-Brown Shoe Co.* v. *Wolf Bros. & Co.*, 240 U.S. 251, 259 (1916); *GTFM*

*Inc.* v. *Solid Clothing Inc.*, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002).)   None supports recovery

of defendant's profits *more than once*.  Each does nothing more than observe in general that a

willful trademark infringer may be liable for both disgorgement of any ill-gained profits plus

damages for any actual injury proven, which the royalty award here admittedly is not.

(b)  *The Jury's Double Counting was not "Instructional Error"
      Invited by Payless, it was "Computational Error" Invited by
      adidas.*

The Court expressly instructed the jury not to double count.  (*See* Jury Instruction No. 46

("You may not include in any award of profits any amount that you took into account in

determining actual damages.").)  As the Restatement (Third) of Unfair Competition states when

discussing accounting for profits under the Lanham Act, "the plaintiff could recover both profits

and damages, subject to a prohibition against double recovery . . . If the defendant's profits are

awarded [], the plaintiff may recover damages . . . *only if double recovery for the same loss is

avoided.*"  *Id.* § 37 cmts. b & c (1995) (emphasis added).  There was no instructional error –

invited or otherwise – by either Payless or the Court in connection with this directive.

The jury double counted anyway, most probably because Mr. Sickler *told them they

could* if they awarded adidas anything less than his maximum "profits" calculation of $208

million.  (See Sickler, Tr. at 1628:10-17.[10])  The jury's computational error was invited by Mr.

Sickler alone when he misled the jury, necessitating remittitur or a new trial.  adidas offers no

response to these points.

---

[10]     Mr. Sickler testified that if adidas were to be "awarded something different – you
know, a different amount of profits that we've calculated under our two scenarios [alternatives
A/B], or something different than that, then there is an opportunity for the profits to be awarded
*and for a reasonable royalty to be awarded.*"  (*Id.*)  According to Mr. Sickler this would not be
an improper double counting of Payless' profits – even though adidas would be awarded *all* of
Payless' profits and, *then again*, some further portion of Payless' same profits.

[12]     The only legal support adidas cites for the departure from GAAP is a general
comment in Section 37 of the Restatement (Third) of Unfair Competition, plus a few inapposite
cases.  (*See* adidas Opp. No. 1, at 19, 24 & n.13, n.18.)  Two of the three cases adidas cites,
*Frank Music Corp.* v. *Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516-18 (9th Cir. 1985), and
*Kamar Int'l, Inc.* v. *Russ Berrie and Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) are *copyright*
cases, not trademark cases, with a different legal analysis as even Mr. Sickler admitted at trial.
(Sickler, Tr. at 1612:23-1613:13.)  The third case, *Winterland Concessions Co.* v. *Fenton*, 835 F.

3.    **adidas Agrees That the Jury's Profits Award Must be Compensatory, not Punitive.**

adidas concedes, as it must, that the Lanham Act "requires that an award under that statute 'shall constitute compensation and not a penalty.'" (adidas Opp. No. 1 at 22 (quoting 15 U.S.C. § 1117(a)); *see also Lindy Pen Co.*, 982 F.2d at 1407 (refusing to award profits because it "would amount to a punishment in violation of the Lanham Act which mandates that a remedy 'shall constitute compensation not a penalty'"); *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 694 (6th Cir. 2000) (plaintiff denied defendant's profits based upon Act's prohibition of awarding a penalty).  While an award of disgorgement of profits may serve the further goal of deterrence – taking the economic incentive out of infringement – this alone cannot support a profits award under the Lanham Act.  *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 662 (S.D. Cal. 1997) ("Because awards can only compensate actual injuries, they cannot be speculative or punitive."); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) ("So long as its purpose is to compensate a plaintiff for its actual injuries – even though the award is designed to deter wrongful conduct – the Lanham Act remains remedial.").

The Opposition fails to cite a stitch of record evidence establishing that the jury's profit award of $137 million was compensation to adidas, and not an impermissible penalty to Payless.  Rather, adidas spends its entire time attempting to justify why the jury's profit award is necessary to punish Payless and to deter it from future misconduct.  While the Court has broad latitude in determining whether adidas has suffered a harm deserving of compensation – even if amount cannot be calculated with any certainty – no portion of an award can lack any compensatory component.  *See ALPO Petfoods, Inc.* v. *Ralston Purina Co.*, 913 F.2d 958, 969

(D.C. Cir. 1990) (vacating award of profits because "we doubt the wisdom of an approach to damages that permits courts to award profits for their sheer deterrent effect").

### 4.    The Jury's Profits Award Is Excessive Because it Bears No Relation to Payless' Actual Profits.

Even passing the obvious double counting it includes, under no definition is the jury's $137 million profits award "just compensation" to adidas.  Even adidas' own expert recognizes this figure is almost seven times Payless' actual profits of $19.7 million on its sales of these shoes determined in accordance with GAAP.  (Sickler, Tr. at 1563:3-6, 1603:22-1605:17).[12]

adidas does not attempt to justify the profits award as compensatory.  adidas presented no evidence that it lost any profits, so any disgorgement of Payless' profits is necessarily a financial windfall to adidas; an award utilizing a non-GAAP measure of accounting to boost the size of the award is even more so.  Rather than address the non-compensatory nature of the jury's $137 million profits award, adidas focuses on the deterrent impact of the enormous award and implicitly urges the Court to do what the Lanham Act says it should not – punish Payless. Finally, even if willfulness is found, the Court should employ its substantial discretion either not to award profits or to remit the award to an amount no greater than Payless' actual GAAP profits of $19.7 million.[13]  As an equitable matter, and consistent with the Lanham Act's compensatory purpose, this would be more than "just compensation."

---

[13]    adidas suggests that its expert was correct to exclude substantial items of cost when assessing its non-GAAP version of Payless' profits.  But these are costs that Payless actually incurred in operating its business, as everyone acknowledges, and their exclusion results in a profit rate for the infringing shoes that is multiples of Payless' profits on its other shoe sales.

Of course, the jury's separate award of $30.6 million as a royalty is, itself, more than 150% of Payless' actual profits.  If that award is allowed to stand, no further disgorgement of profits is appropriate since Payless will already have disgorged more than all of its profit.

5.    **The Lanham Act Grants the Court Broad Equitable Discretion to Adjust the Profits Award.**

Finally, even if the profits award were legally proper in every respect, the Court should still exercise its equitable powers to scale it back.  By its express language, the Lanham Act requires that a monetary award comport with "principles of equity."  Lanham Act § 35(a), 15 U.S.C.  § 1117(a).  The statute reserves this responsibility for the Court.  *Id.*  ("The court shall assess such profits and damages or cause the same to be assessed under its direction.").  As this Court observed, "[t]he statute grants [the Court] the discretion to consider the equities and circumstances of the case."  *Symantec Corp.* v. *CD Micro Inc.*, 286 F. Supp. 2d 1278, 1280 (D. Or. 2003); *see* 5 McCarthy § 30:59 at 30-137; *see also id.* § 30:89.  The Lanham Act gives this Court wide discretion to shape the final monetary award (if any) to reach a "just," non-punitive result.  *Id.*; *see also Watec Co., Ltd. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005) (remittitur appropriate in trademark case where damages award not supported by the evidence); *Southland Sod Farms*, 108 F.3d 1134, 1146 (9th Cir 1997); *Lindy Pen Co.* v. *Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *ALPO Petfoods, Inc. v. Ralston Purian Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) (vacating award of profits court stated "we doubt the wisdom of an approach to damages that permits courts to award profits for their sheer deterrent effect.").

Any jury award of Payless' profits to adidas is, in particular, an equitable remedy subject to the Court's review.  *See, e.g.*, *Faberge Inc. v. Saxony Prods., Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) ("The award of profits under the statute is made 'subject to the principles of equity.' Section 1117 'confers a wide scope of discretion upon the district judge in the fashioning of a remedy.'" (quoting *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968)); *Balance Dynamics Corp v. Schmitt Industries, Inc.*, 204 F.3d at  695  ("unless there

is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of

equity do not warrant an award of defendant's profits.") An award of profits is not automatic or

required, even where willful infringement is found.  *See Faberge, Inc. v. Saxony Prods., Inc.*,

605 F.2d at 429 (trial court did not error in refusing to award profits because "[w]illful

infringement may support an award of profits to the plaintiff, but it does not require one.");

*Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 934 (5th Cir. 1982) (affirming court's adjustment

of profit award to 30% of infringer's profits).  No matter what adidas now calls this remedy, it is

equitable and subject to the Court's discretion.  *See* McCarthy § 30:59 at 30-137 & n.9 ("It is

important to remember that the remedy of an accounting of profits has its historic roots in equity

jurisprudence.").

Even adidas acknowledges that both *Lindy Pen* and *Southland Sod* hold that Ninth Circuit

trademark law allows "the district court in its discretion to fashion relief, including monetary

relief, based on the totality of the circumstances."  (*See* adidas Opp. No. 2, at 15 (quoting

*Southland Sod Farms*, 108 F.3d at 1146).)  To the extent adidas argues generically in its

Opposition that the Court's post-trial review is circumscribed and that the Court is bound to

uphold the jury's verdict if at all possible, (*see* adidas Opp. No. 1, at 4-8), adidas fails to consider

the Court's role under the Lanham Act, which contemplates that the Court exercise its own

discretion and judgment in coming to an award it finds to be just and equitable.

### B.    The $30.6 Million Royalty Award is Duplicative, Speculative and Fails as a Matter of Law in Light of the Evidence in this Case.

Nothing in adidas' Opposition cures any of the following three fundamental errors with

the jury's $30.6 million royalty award for adidas' supposed "actual damages."  First, the award is

unduly speculative.  Even if a hypothetical royalty could be an appropriate measure of damage

absent actual confusion and where the plaintiff was unwilling ever to license a defendant, adidas'

hypothetical royalty fails because it is undisputed that the royalty rate exceeded Payless'

anticipated profits.  Second, adidas failed to prove at trial that it suffered any actual injury

whatsoever from Payless' shoe sales, so it is unwarranted.  Third, adidas conflates patent law

with trademark law – which rely on two different statutes – and offers no authority permitting a

hypothetical royalty to be awarded in a trademark case as a proxy for compensation where there

is not evidence that it reflects actual damages through lost licensing revenues or otherwise.

> **1.    The Jury's Award of $30 Million as a "Reasonable Royalty" Is Unduly Speculative.**

Payless does not argue that measuring actual damages based on a hypothetical royalty

calculation is always speculative.[14]  Rather, as applied *in this case*, adidas failed to provide the

jury with evidence to support a non-speculative measure of its actual damages.  *See M2 Software*

*Inc. v. Viacom*, 223 Fed. Appx. 653, 655 (9th Cir. 2007) (reversing royalty award because, under

facts presented, the royalty was "impermissibly speculative").

adidas' does not dispute that the 7.8% hypothetical royalty rate it presented to the jury

exceeded Payless' expected profit margin of about 5%.  adidas simply ignores that courts

consistently and repeatedly hold that royalty rates that exceed anticipated profit margins are

speculative on their face.  *Lindemann Maschinenfabrik v. American Hoist & Derrick Co*, 895

F.2d 1403, 1408 (Fed. Cir. 1990) (finding it "absurd" that a licensee would negotiate a license

---

[14]    adidas cites to *Playboy Enters., Inc. v. Baccarat Clothing Co*., 692 F.2d 1272 (9th Cir. 1982) for the proposition that the Ninth Circuit has confirmed the use of a reasonable royalty in trademark cases.  In *Playboy*, however, the Ninth Circuit does not even address the reasonable royalty, let alone determine that it is appropriate.  Rather, the Ninth Circuit reversed the district court's refusal to disgorge profits.  The Court need not decide this broader issue because the facts in this particular case demonstrate adidas' proffered "reasonable royalty" is unduly speculative.

for more than anticipated profits); *Micro Chemical, Inc. v. Lextron, Inc.*, 161 F. Supp.2d 1187, 1209 (D. Colo. 2001) ("[N]o reasonable person would enter into a license in which they had agreed to pay more than their expected profit."). The governing standard looks at what would be objectively reasonable, not what adidas might have sought. *Mackie v. Rieser,* 296 F.3d 909, 917 (9th Cir. 2002) (rejecting damages as unduly speculative and holding "the market value approach is an objective, and not a subjective analysis"); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) ("The question is not what the owner would have charged, but rather what is the fair market value.").

adidas cites to *Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327 (Fed. Cir. 2004) for the proposition that a reasonable royalty award may exceed an infringer's profit margin. Importantly, however, the court in *Golight* relied upon *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538 (Fed. Cir. 1995) in reaching its decision. In *Rite-Hite,* the dissenting opinion correctly noted that although the court had allowed some royalty awards that exceeded the infringer's actual net profits, it should only be done when there "was evidence that the infringer *actually anticipated* greater net profits." *Rite-Hite*, 56 F.3d at 1577. In fact, none of the cases relied upon by the *Golight* court support adidas' contention that a reasonable royalty award can exceed Payless' *anticipated* profits.

Moreover, the facts in *Golight* are starkly different than the ones at bar. In *Golight*, the court affirmed the reasonably royalty award because it found that Wal-Mart had provided "sparse" evidence supporting its anticipated profits, noting that Wal-Mart even failed to have an expert testify regarding a reasonable royalty. *Golight*, 355 F.3d at 1338. Unlike Wal-Mart, Payless presented substantial evidence that Payless' anticipated profit was 5%, and adidas did

not dispute this fact.  Accordingly, the royalty award here is entirely speculative and unreasonable in that it assumes Payless would have entered into a negotiation that would have resulted in loss of profits to Payless, which adidas' own expert admits is unreasonable.  Drews, Tr. (1439:1-12; 1442:18-1443:13); *See Hughes Tool Co. v. Dresser Indus., Inc*., 816 F.2d 1549, 1558 (Fed. Cir. 1987) (a "reasonable royalty" that exceeds anticipated profits is not reasonable at all, but is "*ipso facto*" arbitrary)

adidas cannot save its absurd position by arguing, as Mr. Drews did that adidas would have insisted, and Payless would have agreed that Payless *increase* the price of the accused shoes.  (Drews. Tr. 1446:2-5).  Drews admits that this necessary assumption would have altered the revenues subject to the royalty rate.  (*Id*. at 1443:24-1444:11)  Drews' speculative assumption that Payless would have sold a different number of shoes at a higher price renders his entire opinion speculative and insufficient to form a proper basis for any measure of adidas' actual damages.  *See McClaran v. Plastic Industries, Inc.*, 97 F.3d 347, 356-357, 361 (9th Cir. 1996) (reversing damages award based on royalty opinion predicated upon projected sales that did not occur).  This is especially so since he did not provide any evidence of the amount of the likely price increase, or its impact on the relevant revenues.  *See Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1224 (9th Cir. 1997) (award based on antitrust damages study that failed to adjust projections in impact on revenues and profits held unduly speculative).  Nor can his analysis be saved by a claim that the accused shoes would sell for "brand premium prices," since Mr. Drews failed to offer *any* qualitative analysis to support such a conclusion and this did not in fact happen.  *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 715 (9th Cir. 2004) (district court erred in allowing jury to consider brand premium revenues where

analysis was unsubstantiated).  Even if Drews' royalty rate could survive, which it cannot, the

jury application of that rate to Payless' actual revenues can only be speculative and arbitrary

because accepting Drews' opinion on the rate requires accepting that the revenue amount would

be different.[15]

> ### 2.    .adidas did not Prove it Suffered any Actual Injury, as it Must to Recover Damages.

The Opposition still points to no evidence offered at trial to support a finding that adidas

suffered any actual, concrete harm as a proximate result of any actions by Payless.  Absent such

evidence, the jury's "actual damages" award cannot stand.

> (a)    *adidas Must Prove Actual Injury to Recover Money Damages.*

adidas cannot rely on the surrogate measure of a reasonable royalty as reflective of its

damages without first providing sufficient evidence of the fact of its damage.  The Opposition

argues that actual damage is not required in order to be entitled to a monetary remedy under the

Lanham Act.  (*See* adidas Opp. No. 2, at 14-15 (citing *Southland Sod Farms v. Stover Seed Co.*,

108 F.3d 1134 (9th Cir 1997).)  As McCarthy notes, the Ninth Circuit, unlike other jurisdictions

does not require actual damage to take the form of "actual confusion" as a predicate for a money

---

[15] Finally, adidas continues to cite patent cases to support the "reasonable royalty" it presented to the jury, without addressing any of the key differences between the patent and trademark statutes discussed by Payless.  (*See* adidas Opp. No. 1 at 16-18 (citing *Golight, Inc.* v. *Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338-39 (Fed. Cir. 2004)).  The Patent Act – unlike the Lanham Act – by its express terms authorizes recovery of a "reasonable royalty" as adequate compensation for infringement, *irrespective* of the infringer's actual profits, licensing practices or otherwise.  *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but *in no event less than a reasonable royalty* for the use made of the invention by the infringer." (emphasis added)).  Unlike the Lanham Act, the Patent Act does *not* permit an award of profits and differs in terms of the availability of injunctive relief.  Patent law is distinct from trademark, and importing selective principles into a different statutory framework does not mesh

recovery under the Lanham Act. 5 McCarthy § 30.74 at 30-172. However, the Ninth Circuit still requires proof of actual injury to the trademark plaintiff to support any damages award.adidas selectively quotes *Southland Sod* to allege that *Lindy Pen* abrogated the "actual damage" requirement set forth by the Ninth Circuit in *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). This is wrong. *See Lindy Pen*, 982 F.2d at 1407 ("A plaintiff must prove both the fact and the amount of damage." (citing 2 McCarthy § 30:27, at 511 (2d ed. 1984)). In *Lindy Pen*, the Ninth Circuit held that "actual confusion" is not required for a recovery under the Lanham Act. *Lindy Pen*, 69 F.3d at 1410-1411. Noting that "trademark remedies are guided by tort principles," the Ninth Circuit held it would allow recovery not only just for proven lost sales but also for injury proven by damage to goodwill under the totality of the circumstances. *Id.* at 1407.

While *Southland Sod* follows the "totality of the circumstances" standard articulated in *Lindy Pen*, neither *Southland Sod* nor any other opinion in the Ninth Circuit thereafter has issued any monetary award absent evidence of actual injury, or stated that *Harper House* has been abrogated. *Southland Sod*, 108 F.3d at 1145-46. Moreover, to allow recovery absent proof of any harm would run counter to Congress' mandate that any remedy under the Lanham Act be compensatory. *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 662 (S.D. Cal. 1997) ("Because award can only compensate actual injuries, they cannot be speculative or punitive.").

   (b)  *adidas did not Prove at Trial That it Suffered any Actual Injury.*

adidas devotes the vast majority of its Opposition on this point to a discussion of basic

tenets of branding that are not disputed.  Yet adidas is unable to point to *a single piece of*

*evidence* in the record showing that adidas was harmed in any real, demonstrable way as a result

of Payless' sale of shoes.  (*See* adidas Opp. No. 2, at 3-8.)

At its core, the Lanham Act is concerned with the *impact* of alleged confusion – whether

pre-sale, post-sale or point of sale – on a consumer's decision to "purchase, or not purchase"

shoes.  *See Bosley Medical Institute v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("Trademark

infringement protects only against mistaken *purchasing decisions* and not against confusion

generally" (citation omitted) (emphasis added)); *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d

376, 382 (7th Cir. 1996).  adidas glosses over the critical distinction that the proof necessary to

recover damages under the Lanham Act is different from, and greater than, the proof necessary

to establish basic liability for infringement.  (*See* Payless Mem. No. 2, at 5.)  In order to recover

money damages adidas must demonstrate both the "fact and the amount of damage." *Lindy Pen*

*Co.*, 982 F.2d at 1410.  Moreover, of significance to adidas' claim for punitive damages,

discussed further *infra*, adidas cannot recover punitive damages without proof of actual damages.

adidas' Opposition offers four types of hypothetical harm that adidas could potentially

suffer on account of Payless' conduct:  injury to (i) "awareness and distinctiveness"; (ii)

"consumer associations"; (iii) "perceived quality"; and (iv) positive "emotional connections,

including [brand] loyalty." (*See* adidas Opp. No. 2 at 1, 6.)  Yet the record is devoid of any

evidence that any of these harms ever, in fact, materialized to adidas' detriment.  In particular:

- adidas offered no evidence that it ever actually suffered reduced brand awareness or
  distinctiveness over the past nine years, much less any reduced brand awareness or
  distinctiveness *caused by Payless*.  (*See* adidas Opp. No. 2, at 9 ("*if* a consumer is
  walking in front of a Payless store and mistakenly believes they have seen an adidas

shoe at the window, or *if* a consumer … comes across a newspaper insert… [they] *may* transfer over characteristics…[a]nd that *may* dilute the image of the adidas brand.") (quoting Trial, Tr. 1326:13-1327:3). The trial record shows that adidas' brand is as strong as it has ever been. (Joachimsthaler, Tr. at 521:3-6; 521:10-15, 522:6-21; Pl. Ex. 496-C (testimony that "the number one most widely recognized sports brand now, among 10- to 65-year olds, is adidas, which is amazing.").)

- adidas offered no evidence that consumers ever had a less favorable association with adidas due to Payless' shoe sales. (*See* adidas Opp. No. 2, at 7 (adidas tries to keep Superstar "fresh" and maintain its "coolness," but no evidence that Payless impeded these goals).)

- adidas offered no evidence to show consumers thought adidas shoes were of poor quality due to confusion between adidas and Payless shoes. (*See* adidas Opp. No. 2, at 11 ("*if* Payless shoes happen to not be of the same quality… [this] *may* taint the perceptions" (quoting Trial Tr. 1325:7-19).) There is no evidence in the record of how consumers perceive Payless' shoes in a post-sale context *at all*.

- adidas offered no evidence of reduced brand loyalty or diminished emotional connections with their shoes because of Payless. The record lacks evidence that consumers' brand loyalty to adidas decreased during the relevant period, and adidas' expert admitted he was unaware of the loss of a single member of the adidas brand community as a result of Payless' shoe sales. (Joachimsthaler, Tr. at 556:5-7, 558:12-15.)

Also missing from the record is any evidence of any lost adidas sales, lost profits, actual consumer confusion or decreased brand value. In short, at trial adidas offered no evidence of *any* of the usual indicia of trademark injury.

     (c)     *adidas' Claimed "General Confusion" Does Not Support Liability or an Award of Money Damages.*

No court has ever adopted adidas' argument that confusion alone is sufficient to establish liability and an entitlement to monetary recovery under the Lanham Act for initial interest and post-sale confusion claims. Despite adidas arguments to the contrary, "confusion generally" in either the initial interest or post-sale environment is simply not enough to form the basis of a Lanham Act violation. *Bosely Medical Institute, Inc. v. Kremer,* 403 F.3d 672, 677 (9th Cir.

2005) ("trademark infringement protects products only against mistaken purchasing decisions and not against confusion generally," (*quoting Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d at 582-83).

adidas offers a number of theories of injury without citing any authority that these theories have been adopted by any court anywhere.  adidas claims that it suffered trademark and trade dress injury because Payless' use of stripes causes a loss of awareness, distinctiveness and association.  But this is a principle of dilution law, not trademark and trade dress claims based upon confusion impacting a purchasing decision.  *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (discussing difference between two types of claims). To allow adidas to rely on these other contentions to form the basis of a claim of injury under the trademark and trade dress law would render the dilution statute and its unique requirements superfluous.

Courts facing this issue have refused to find any cognizable injury absent some proof of at least the potential for an adverse purchasing decision.  *Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360, 1364 (7th Cir. 1995) ("Either consumers are confused at the point of sale, or they become confused later and this carries over to the next time they are in the market for the product."); *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996) ("the Lanham Act is concerned with customer confusion when choosing to purchase, or not purchase, the items, not public confusion at viewing them from afar."); *Gibson Guitar Corp. v. Paul Reed Smith Guitars*, LP, 423 F.3d 539, 552-53 (6th Cir. 2005).  While perceived quality defects might, impact a later purchasing decision, adidas ignores the fact that such defects must be *perceptible* for this to happen.  *Big Dog Motorcycles v. Big Dog Holdings, Inc.*, 402 F. Supp.2d 1312, 1334

(D. Kan. 2005) ("Post-sale confusion arises in circumstances involving so-called knock-off product in which observers of the allegedly infringing products are confused to the injury of a trademark owner by the fact that the alleged infringer has . . . a perceived general poor quality").

Rather than offer evidence of any perceptible poor quality, adidas claimed Payless' alleged reputation for poor quality "tainted" adidas. No court, however, has recognized such an attenuated claim, and adidas offered no evidence that it, in fact, suffered from such a "taint."

### 3.    adidas Cannot Justify Using a "Reasonable Royalty" to Measure its Supposed Actual Damages in This Case.

The use of a "reasonable royalty" is not a proper mechanism for measuring the alleged harm to adidas as a result of Payless' conduct under the particular facts of this case. While a hypothetical reasonable royalty is a proper measure of compensation in a *patent* case because the statute authorizes it, it should not be used in a *trademark* case where the royalty fails in any way to reflect actual damages incurred from lost licensing revenue. The evidence is undisputed here that adidas would not have licensed to Payless, and therefore the royalty award is not a measure of actual lost licensing revenues.

adidas cites McCarthy to support the use of a hypothetical royalty that does not measure actual harm. (*See* adidas Opp. No. 1 at 9 (citing 5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4TH ed. 2006) §§ 30:85-87).) According to McCarthy, the only cases to contemplate the "reasonable royalty" measure of "actual damages" are cases (1) involving holdover franchisees, or (2) where there was no other practicable means to measure plaintiff's actual damages. *Id.* at § 30:85 ("Usually, when courts have awarded a royalty for past acts of infringement, it was for continued use of a mark after a license had ended and damages were measured by the royalty rate the parties had agreed on."); *see also Juicy Couture, Inc. v.*

*L'Oreal USA, Inc.*, 2006 WL 1359955 (S.D.N.Y. May 18, 2006); *Trovan, Ltd*. v. *Pfizer, Inc.*, 2000 WL 709149 (C.D. Cal. May 24, 2000).  Because adidas' witnesses testified that adidas would never license Payless, the Court should grant judgment as a matter of law for Payless.

### C.    The Punitive Damages Award Cannot Stand.

#### 1.    adidas Failed to Establish its Actual Damages, Required by Law as a Threshold Matter to Support any Award of Punitive Damages.

There is no dispute that the jury's punitive damage award rests solely on adidas' common law and state statutory claims, not its Lanham Act claims.  adidas does not dispute that as a threshold matter an award of punitive damages requires an award of an amount of actual damages.  *See, e.g.*, *Belleville v. Davis*, 262 Or. 387, 405 (1972) ("[A]n award of punitive damages is not proper in the absence of proof that a plaintiff is entitled to an award of actual damages.").  adidas conceded at trial that it sought Payless' profits only as disgorgement, and *not* as a measure of adidas' actual damages  (*See* Trial, Tr. at 102:3-22, Ex. 1.)  Nothing in the Opposition changes this result, as adidas offers no legal authority[17] to show that an award of

---

[17]    The Opposition attempts without success to distinguish *Go Medical Indus. v. Inmed Corp.*, 471 F.3d 1264 (Fed. Cir. 2006), cited by Payless.  (*See* adidas Opp., at 31 n. 26; Payless Mem. No. 1, at 26.)  In *Go Medical*, the Federal Circuit determined that the jury's award of a reasonable royalty was a surrogate measure of damages, *not* actual damages.  *Id*. at 1274 (affirming trial court's exercise of discretion under § 1117 to adjust "reasonable royalty" to zero because it was not an award of actual damages).  *Go Medical* is of no help to adidas.

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

profits under an unjust enrichment theory constitutes "actual damages" sufficient to support punitive damages.

Thus, the only arguable "actual damages" awarded to adidas come from its hypothetical royalty analysis. That royalty fails as a matter of fact and law for the reasons previously discussed. *See supra* § A. To the extent that the Court agrees and holds the royalty award fails, there is no basis in the record upon which to premise a proper punitive damages award.

Lastly, even if the reasonable royalty award could survive, adidas offers nothing to support a conclusion that, under either the common law or any statutory scheme of any jurisdiction, the amount of actual damages suffered could be determined from opinions on the results of a royalty negotiation all parties agree is *hypothetical* and *would not have occurred*. Moreover, adidas offers no authority to demonstrate that, under any state law, it even has a cognizable claim for compensatory injury arising from initial interest or post-sale confusion. *See Trovan Ltd. v. Pfizer, Inc.*, 2000 WL 709149 *5 (C.D. Cal. 2000) (unlikely that common law recognizes claim for "reverse confusion"). The royalty award, if proper at all, is exclusively a creature of the Lanham Act, not any state law. As a result, there is no basis for adidas to recover actual damages under state law, without which no punitive damages award is possible.

**2.  The Punitive Damages Award for Extra-Jurisdictional Conduct is Unconstitutional Under *State Farm.***

It is further undisputed that the jury awarded adidas over $137 million in punitive damages based on Payless' sales of accused shoe lots in *all 50 states*. Both the United States and Oregon Supreme Courts hold that States may not impose punitive damages under their laws for acts that occur outside their borders. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003); *Goddard v. Farmers Ins. Co.*, 179 P.3d 645, 659 (Or. 2008). A court may

award punitive damages for extra-jurisdictional conduct *only* by finding liability under the laws of the jurisdiction in which that conduct occurred. *State Farm*, 538 U.S. at 421-22. Because the jury's punitive damages verdict is based upon Payless' shoe sales in *all* fifty States, but was rendered – at best – under the laws of only a few States, it is unconstitutional.

adidas mischaracterizes this rule as a requirement that "adidas must file a separate lawsuit in each State whose statutory scheme allows punitive damages." (adidas Opp. No. 1, at 32.) This is incorrect: a plaintiff may file a single lawsuit, in Oregon for example, and seek punitive damages for proven violations of other states' laws where such states permit such a recovery. adidas did not follow this straightforward process, resulting in an infirm verdict.

The Opposition's next misguided argument is that *State Farm* does not apply because "Payless's wrongful acts – wherever they were committed – harmed adidas *in Oregon*." (adidas Opp. No. 1, at 33.) Again, *State Farm* holds that a State may not award punitive damages *pursuant to its own laws* for conduct outside its borders because doing so tramples the sovereignty of other states. adidas' contrary argument amounts to the strange contention that because it suffered harm in multiple jurisdictions, including Oregon, it may apply Oregon's punitive damages laws to Payless' conduct in *all* jurisdictions.

This is contrary to *State Farm*. In holding that basic principles of federalism bar one state from policing conduct that occurs in another state, the Supreme Court offered no caveats of the sort that adidas proposes. The loophole that adidas asks the Court to create would render *State Farm*'s holding on extraterritoriality ineffectual.

In response, adidas now claims for the first time in this case that its right to recover punitive damages is grounded *not* on the twelve statute statutes enumerated in its Third Amended

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

Complaint, but rather on "common law" unfair competition and trademark and trade dress infringement law "across all fifty States." [18] (adidas Opp. No. 1, at 26 n.20.) adidas asserts – in error and without support – that there are no "differences across the various States' standards governing such common-law punitive damages awards," (adidas Opp. No. 1, at 26), and speculates – despite the absence of a jury verdict in its favor on its common law claims – that the jury awarded punitive damages separately pursuant to the laws of each of the fifty states.

This argument lacks any merit. Even if adidas had pleaded and proved a common law claim under the laws of all fifty States, and even if the jury intended to base its punitive damages award on the law of states other than Oregon which it did not (as it conceded at trial, *see* Trial, Tr. 2626:13-2627:8; D.E. 847), nothing in the record would support any award of punitive damages on this basis. Different states' punitive damages laws differ as to both the plaintiff's burden of proof and the limits on recovery.[19] To comply with *State Farm*, any punitive damages award based on multiple states' common law or unfair competition laws require a jury finding that each individual State's requirements are met. The jury was not instructed as to any different

---

[18]    The Third Amended Complaint ¶¶ 78-82 does not even "clearly assert" that adidas' common law unfair competition actions are based upon the common law of all fifty states.

[19]    *Nearly half* of all states impose limits on recovery of punitive damages in civil actions, and each of these states has *different* statutory provisions governing recovery of punitive damages where they are even available. *See, e.g.*, Ala. Code § 6-11-21 (imposing punitive damages limit of "three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater."); Alaska Stat. § 09.17.020 (imposing similar punitive damages limits unless "the conduct . . . was motivated by financial gain and the adverse consequences of the conduct were actually known by the defendant or the person responsible for making policy decisions on behalf of the defendant"); Colo. Rev. Stat. §§ 13-64-302.5, 13-25-127(2) (setting burden of persuasion for punitive damages civil claims is "beyond a reasonable doubt" and limiting damages to actual damages absent "extenuating circumstances"). In the interest of space Payless does not offer a comprehensive list of all State punitive damages law here, but can do so if requested by the Court.

persuasive burden standards or damages limitations, and thus the punitive damages award for Payless' conduct in all fifty States is unconstitutional.

### 3.    The Punitive Damages Award Violates Due Process.

The jury's punitive damages award is also constitutionally excessive and thus violates federal due process. Rather than address this claim head on, the Opposition instead hides behind a number of meritless waiver arguments.

The Opposition first contends that Payless waived its constitutional due process challenge to the punitive damages award by failing to raise it in its initial Fed. R. Civ. P. 50(a) motion. (adidas Opp. No. 1, at 29.) This is wrong. A district court's authority to review a jury verdict for unconstitutional excess stems from its ability to order a new trial, which by its nature only arises *after* the jury delivers its verdict. *See Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1328-29 (11th Cir. 1999). Payless is hereby moving for a new trial under Rule 59 and "a motion for new trial does not have to be preceded by a Rule 50(a) motion prior to submission of the case to the jury." *Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003). adidas may not hide behind a meritless procedural waiver argument.

The Opposition's substantive discussion of *BMW of North America* v. *Gore*, 517 U.S. 559 (1996), (*see* adidas Opp. No. 1, at 29-32), is equally unpersuasive. Given that the jury awarded $137 million in punitive damages without *any* finding of actual harm to adidas, the resulting ratio of actual damages to punitive damages under the second *Gore* factor is infinite and, therefore, unconstitutional. The Opposition also trivializes the *Gore* reprehensibility factor by arguing that the jury's finding regarding Payless' willfulness, justifies a punitive damages award that both exceeded adidas' speculative calculations of its hypothetical lost royalties, and

was awarded *in addition* to disgorgement of $137 million of Payless' (supposed) profits. Because adidas already received compensatory damages of $167 million – far in excess of even adidas' claimed (let alone proven) "actual damages" – a finding of willfulness by the jury, even if proper, is insufficient under *Gore* and *Campell* to justify a further, punitive damages award.

> **D.    adidas Offers Little in its Oppositions to Suggest That the Jury's Enormous Verdict is Equitable.**

Taken as a whole, the jury's enormous $305 million award is confiscatory and cannot be justified under basic principles of equity and fairness. adidas' claim that Payless continues to "tout" its profitability notwithstanding the verdict omits the fact that Payless *also* said publicly that it did not include the impact of the verdict on its earnings.

Yet even if the Court were to assume the worst is true of Payless' conduct, it is still impossible to embrace the crippling award under extant caselaw. The award is one of the largest trademark verdicts ever delivered. No case located by any of the parties in over seven years of heated litigation has allowed an award of statutory "profits" that exceeded the defendant's actual profits by nearly a factor of seven; and then doubled the award as part of a punitive damages verdict; and then tacked on another 25% of the "profits" for a "royalty."

The Court should not allow such a verdict to stand given adidas' admitted lack of evidence of actual confusion; lack of evidence of any "lost profits" due to Payless' conduct; and, most important, lack of evidence of any actual, concrete injury to adidas. adidas further admitted that its brand is stronger than ever and its corporate performance is stronger than ever. Furthermore, the conduct for which Payless was found liable by the jury was, for at least some period of years, non-actionable as a matter of law while Payless had an Order of the Court

permitting it to sell the shoes that the jury later held were infringing.  This is nowhere near the kind of "willful infringement" found in much of the reported caselaw.

The award would represent a complete, inequitable windfall to adidas under these circumstances.  adidas never before contended that it had total dominion over all shoes with two, four or any other number of substantially parallel stripes running across the central portion of the shoe.  Now it does.  A protected trademark or trade dress respecting three stripes should not give adidas a monopoly over all striped shoes.  This would harm not only Payless, but also adidas' competitors and the consuming public at large.

### III.    CONCLUSION

For the foregoing reasons, Payless respectfully requests that the Court set aside the jury's

verdict and enter judgment in its favor as a matter of law or, in the alternative, either remit the

jury's award to zero, or at most, an amount no greater than $19.7 million, or order a new trial.

DATED: May 22, 2008                    SPILLANE SHAEFFER ARONOFF BANDLOW, LLP

                                        By ____/s/  John Shaeffer_____
                                            John Shaeffer (admitted pro hac vice)
                                            Telephone:  (310) 229-9300

                                        LATHROP & GAGE L.C.
                                            William A. Rudy (admitted pro hac vice)
                                            William R. Hansen (admitted pro hac vice)
                                            Phillip S. Lorenzo (admitted pro hac vice)
                                            Telephone: (816) 292-2000

                                        LANE POWELL PC
                                            Milo Petranovich, OSB No. 81337
                                            Kenneth R. Davis, II, OSB No. 97113
                                            Telephone: (503) 778-2100

                                        Attorneys for Defendant Payless ShoeSource, Inc.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2008, I caused to be served a copy of the foregoing

COMBINED REPLY MEMORANDUM IN SUPPORT OF PAYLESS'S MOTIONS 1 AND 2

on the following person(s) in the manner indicated below at the following address(es):

Stephen M. Feldman; sfeldman@perkinscoie.com                Counsel for plaintiffs
Thomas R. Johnson; trjohnson@perkinscoie.com
Perkins Coie LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128

Jerre B. Swann; jswann@kilpatrickstockton.com              Of counsel for plaintiffs
William H. Brewster; bbrewster@kilpatrickstockton.com
R. Charles Henn, Jr.; chenn@kilpatrickstockton.com
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309

☒      by CM/ECF

☐      by Electronic Mail

☐      by Facsimile Transmission

☐      by First Class Mail

☐      by Hand Delivery\

☐      by Overnight Delivery


                         /s/ John Shaeffer
                         An Attorney for Defendant